IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK MCDONALD, | ) | |
| | ) | |
| JOAN OLWEN GIBSON ANDERSON, | ) | |
| | ) | |
| ANN ANTHONY, INDIVIDUALLY, | ) | |
| AND ON BEHALF OF HER | ) | |
| MINOR CHILD, S.A., | ) | |
| | ) | |
| AVRIL JOAN ANTHONY, | ) | CLASS ACTION |
| | ) | |
| GARETH ANTHONY, | ) | |
| | ) | COMPLAINT |
| JENNIFER ANTHONY, ON BEHALF | ) | |
| OF THE ESTATE OF JOHN FREDERICK | ) | |
| ANTHONY, | ) | Civil Action No. _____ |
| | ) | |
| ROBERT JAMES ANTHONY, | ) | |
| | ) | |
| SARAH JANE ANTHONY, | ) | |
| | ) | |
| WILLIAM GEORGE ANTHONY, | ) | |
| | ) | |
| PHILIP JOHN MCALLEN ARMOUR, | ) | |
| | ) | |
| JULIAN ROBERT ARMSTRONG, | ) | |
| | ) | |
| TREVOR ARMSTRONG, | ) | |
| | ) | |
| RACHEL JULIE BAILEY, | ) | |
| | ) | |
| ZOE THERESA BARNES, | ) | |
| | ) | |
| PATRICIA MAUREEN BARRATT, | ) | |
| | ) | |
| GEMMA BERAZZAG, | ) | |
| | ) | |
| RAJAA BERAZZAG, | ) | |
| | ) | |
| EVE LYNNE BERESFORD, | ) | |
| | ) | |
| HEATHER BLACK, | ) | |
| | ) | |
| KATHLEEN FRANCES BLACK-ELLIOT, | ) | |

INDIVIDUALLY AND ON BEHALF OF THE )
ESTATE OF JOHN DAVID BLACK, )
　　　　　　　　　　　　　　　　　　　　　)
RUTH KEARNEY BLAIR, )
　　　　　　　　　　　　　　　　　　　　　)
ALBERT BLOOMER, )
　　　　　　　　　　　　　　　　　　　　　)
TIMOTHY KENNETH BLOOMFIELD, )
　　　　　　　　　　　　　　　　　　　　　)
JEFFERY DAVID BLUM, )
　　　　　　　　　　　　　　　　　　　　　)
ANGELA JOY BROOKS, )
　　　　　　　　　　　　　　　　　　　　　)
RONALD JOHN GEORGE BROOKS, )
　　　　　　　　　　　　　　　　　　　　　)
ANDREA BROWN, )
　　　　　　　　　　　　　　　　　　　　　)
MARY ELIZABETH BROWN, )
　　　　　　　　　　　　　　　　　　　　　)
ANDREW DOUGLAS CARROTHERS, )
　　　　　　　　　　　　　　　　　　　　　)
ANGELA ELIZABETH CARROTHERS, )
　　　　　　　　　　　　　　　　　　　　　)
DEREK RAYMOND CARROTHERS, )
　　　　　　　　　　　　　　　　　　　　　)
PHYLLIS ELIZABETH CARROTHERS, )
　　　　　　　　　　　　　　　　　　　　　)
DAVID GEOFFREY CASEY, )
　　　　　　　　　　　　　　　　　　　　　)
ELIZABETH CASEY, )
　　　　　　　　　　　　　　　　　　　　　)
MARGARET CASEY, INDIVIDUALLY AND )
ON BEHALF OF THE ESTATE OF )
THOMAS CASEY, )
　　　　　　　　　　　　　　　　　　　　　)
MARK THOMAS WILLIAM CASEY, )
　　　　　　　　　　　　　　　　　　　　　)
STEVEN CLAGUE, )
　　　　　　　　　　　　　　　　　　　　　)
MICHAEL ANDREW CLARK, )
　　　　　　　　　　　　　　　　　　　　　)
LINDA CLARKE, )
　　　　　　　　　　　　　　　　　　　　　)
MARIE COMERFORD, INDIVIDUALLY AND )
ON BEHALF OF THE ESTATE OF )
JONATHAN BALL, )

CLAIRE ELIZABETH COOPER,    )
                           )
ANDREW CORNES,             )
                           )
JEAN DARRAGH,              )
                           )
AMANDA JAYNE DELANEY,      )
                           )
MANYA DICKINSON,           )
                           )
ANNA DIXON,                )
                           )
WILLIAM JAMES DIXON,       )
                           )
SERENA DOHERTY,            )
                           )
DOREEN ELLIOTT,            )
                           )
JAMES ELLIOTT,             )
                           )
RAYMOND ELLIOTT,           )
                           )
STEPHEN ERNEST ELLIOTT,    )
                           )
ANGELA MARIE FISH,         )
                           )
GLADYS GAULT, INDIVIDUALLY AND    )
ON BEHALF OF THE ESTATE OF        )
SAMUEL GAULT,              )
                           )
KEITH SAMUEL GAULT,        )
                           )
STEPHEN JAMES KYLE GAULT,  )
                           )
ASHLEY ALEXANDRA GRAHAM,   )
INDIVIDUALLY AND ON BEHALF OF     )
THE ESTATE OF KENNETH GRAHAM,     )
                           )
DAVID KNOX GRAHAM,         )
                           )
MARY ELIZABETH GRAHAM,     )
                           )
SAMUEL JOHN GRAHAM,        )
                           )
BRYAN HAROLD HARRIS,       )

MAURICE JOSEPH HEALY,                    )
                                         )
BRIAN HORSFALL,                          )
                                         )
GAYNOR HORSFALL,                         )
                                         )
VANESSA HOWLETT,                         )
                                         )
JAMES CLARKE IRONS,                      )
                                         )
NOEL ROBERT IRONS, INDIVIDUALLY          )
AND ON BEHALF OF THE ESTATE OF           )
ROBERT IRONS,                            )
                                         )
SAMUEL IRONS,                            )
                                         )
WILLIAM IRONS,                           )
                                         )
JAMES STEWART KANE,                      )
                                         )
MICHELLE JOY KEERY, INDIVIDUALLY,        )
ON BEHALF OF THE ESTATE OF               )
GEORGE WILLIAMSON, AND ON BEHALF         )
OF THE ESTATE OF GILLIAN NOREEN          )
WILLIAMSON,                              )
                                         )
CHARLES JAMES MCCART LAVERTY,            )
                                         )
WINIFRED LAVERTY,                        )
                                         )
SARAH MARGARET LAWRENCE,                 )
                                         )
BARRY RONALD LAYCOCK,                    )
                                         )
LINDA JANE LEE,                          )
                                         )
MICHAEL JOHN LEE,                        )
                                         )
STEPHEN LEE,                             )
                                         )
SUSAN LEE,                               )
                                         )
VICTORIA LEE,                            )
                                         )
MARGARET STEWART MAGOWAN,                )

4

KAREN MCCALLUM,                                     )
                                                    )
STELLA PAMELA MCCARTNEY,                            )
                                                    )
RETA MCDONALD,                                      )
                                                    )
ALISON AGNES LOUISE MCGARRY,                        )
                                                    )
JAMES MCGARRY,                                      )
                                                    )
KAREN DENISE MCGARRY,                               )
                                                    )
LORNA MARGARET MCGARRY,                             )
INDIVIDUALLY AND ON BEHALF OF THE                   )
ESTATE OF JOHN SPENCE MCGARRY,                      )
                                                    )
MARK JOHN MCGARRY,                                  )
                                                    )
RONNIE MCGARRY,                                     )
                                                    )
AGNES JEAN MCKEE, INDIVIDUALLY                      )
AND ON BEHALF OF THE ESTATE OF                      )
NIGEL WILLIAM JOHN MCKEE,                           )
                                                    )
BRIAN MCKEE,                                        )
                                                    )
ISOBEL MCKEE,                                       )
                                                    )
DERMONT JAMES MCLEES,                               )
                                                    )
APRIL MORRISON,                                     )
                                                    )
DIANE LYN MORRISON,                                 )
                                                    )
EILEEN RAY MORRISON,                                )
                                                    )
ELIZABETH HAMILTON MORRISON,                        )
INDIVIDUALLY AND ON BEHALF OF                       )
THE ESTATE OF MICHAEL DONNELL                       )
MORRISON,                                           )
                                                    )
JAMES ALEXANDER MORRISON,                           )
                                                    )
JOANNE ISOBEL HEATHER MORRISON,                     )
                                                    )

LISA ELIZABETH RHONDA MORRISON,    )
)
MARCUS WINSTON MORRISON,    )
)
PHILIP STEPHEN MORRISON,    )
)
ABIGAIL LOUISE PARRY,    )
)
COLIN PARRY,    )
)
DOMINIC IEUAN PARRY,    )
)
WENDY ANN PARRY,    )
)
ADAM MICHAEL PUGH,    )
)
AILEEN JANET QUINTON,    )
)
CHRISTOPHER GEORGE QUINTON,    )
)
DEREK QUINTON,    )
)
IAN RICHARD QUINTON,    )
)
SUZANNE ELIZABETH RITCHIE,    )
)
JASON LEE ROBERTS,    )
)
STELLA MARY ROBINSON,    )
INDIVIDUALLY, ON BEHALF OF THE    )
ESTATE OF WILLIAM JOHN WESLEY    )
ARMSTRONG, AND ON BEHALF OF THE    )
ESTATE OF BERTHA MARY EVELYN    )
ARMSTRONG,    )
)
JOAN SALT,    )
)
LYNSEY HAZEL SOUTHWORTH,    )
)
SHARON LORRAINE SOUTHWORTH,    )
)
KAREN JEAN SALVESEN SYKES,    )
INDIVIDUALLY AND ON BEHALF OF THE    )
ESTATE OF KENNETH GERALD    )
SALVESEN,    )
)

KRAIG GERALD SALVESEN,                      )
                                            )
PETER STEWART SEFTON,                       )
INDIVIDUALLY, ON BEHALF OF THE              )
ESTATE OF JAMES SEFTON, AND ON              )
BEHALF OF THE ESTATE OF ELLEN               )
JANE SEFTON,                                )
                                            )
JULIAN SORFLEET,                            )
                                            )
MARGARET ELIZABETH VEITCH,                  )
                                            )
PAMELA WHITELY,                             )
                                            )
RACHEL LOUISE WILLIAMS,                     )
                                            )
NAHEED ZAMAN,                               )
                                            )
ROHI ZAMAN,                                 )
                                            )
SHAFI UZ ZAMAN,                             )
                                            )
SHIRAZ WASIM ZAMAN,                         )
                                            )
             Plaintiffs,                    )
                                            )
v.                                          )
                                            )
THE SOCIALIST PEOPLE'S LIBYAN               )
ARAB JAMAHIRIYA                             )
        Ministry of Foreign Affairs         )
        Tripoli, Libya                      )
                                            )
LIBYAN EXTERNAL SECURITY                    )
ORGANIZATION a/k/a JAMAHIRIYA               )
SECURITY ORGANIZATION                       )
        Ministry of Foreign Affairs         )
        Tripoli, Libya                      )
                                            )
COLONEL MUAMMAR QADHAFI                     )
        c/o LIBYAN EXTERNAL SECURITY        )
        ORGANIZATION a/k/a Jamahiriya       )
        Security Organization               )
        Ministry of Foreign Affairs         )
        Tripoli, Libya                      )
                                            )

ABDULLAH SENOUSSI                        )
    c/o LIBYAN EXTERNAL SECURITY      )
    ORGANIZATION a/k/a Jamahiriya     )
    Security Organization             )
    Ministry of Foreign Affairs       )
    Tripoli, Libya                    )
                                      )
MUSA KUSA                                )
    c/o LIBYAN EXTERNAL SECURITY      )
    ORGANIZATION a/k/a Jamahiriya     )
    Security Organization             )
    Ministry of Foreign Affairs       )
    Tripoli, Libya                    )
                                      )
NASSER ALI ASHOUR                        )
    c/o LIBYAN EXTERNAL SECURITY      )
    ORGANIZATION a/k/a Jamahiriya     )
    Security Organization             )
    Ministry of Foreign Affairs       )
    Tripoli, Libya                    )
                                      )
KHALIFA AHMED BAZELYA                    )
    c/o LIBYAN EXTERNAL SECURITY      )
    ORGANIZATION a/k/a Jamahiriya     )
    Security Organization             )
    Ministry of Foreign Affairs       )
    Tripoli, Libya                    )
                                      )
       Defendants.               )
                                      )

---

## CLASS ACTION COMPLAINT

Between December 1969 and July 1997, the Provisional Irish Republican Army ("PIRA") engaged in a campaign of murder in the form of shootings, bombings, and other acts of violence against civilian targets in the United Kingdom, including Northern Ireland. The PIRA was established in December of 1969 when the Irish Republican Army split into several different factions.

The PIRA announced a cease-fire on August 31, 1994 as part of the peace process between the PIRA's political wing, Sinn Fein, and the British Government. The PIRA resumed its armed campaign on February 9, 1996, citing the lack of progress in the peace process. After the election of a Labour Party government in the United Kingdom, a number of developments occurred leading to the resumption of the PIRA cease-fire on July 20, 1997, commonly known as the "Good Friday Agreement" ("GFA"). The PIRA later argued that the GFA "document clearly falls short of presenting a solid basis for a lasting settlement." In the years following the GFA, the PIRA made clear that its cease-fire remained in place; however, critics of the PIRA continued to allege that it remained involved in paramilitary activity of various kinds. For a period following the GFA, the PIRA refused to de-commission its weapons – an act which it considered to be a surrender to the British Government.

On October 23, 2001, the PIRA announced that it had begun a process of disarming itself. On July 28, 2005, the PIRA formally ordered an end to its armed campaign and instructing all PIRA units to disarm themselves. On September 26, 2005, the Independent International Commission on Decommissioning (IICD) announced that the PIRA had completed the decommissioning of all of its arms. From 1969 through 1997, it is estimated that the PIRA murdered in excess of 1,700 people.

The PIRA obtained support from Defendants The Socialist People's Libyan Arab Jamahiriya ("Libya"), Colonel Muammar Qadhafi ("Qadhafi"), Abdullah Senoussi ("Senoussi"), Musa Kusa ("Kusa"), Nasser Ali Ashour ("Ashour"), and Khalifa Ahmed Bazelya ("Bazelya") in the form of the provision of ammunition, arms, finances, explosives, explosive components, military and explosives training, bases of operation within the territorial boundaries of Libya, public support, other material support and encouragement. Libya utilized the PIRA as a method

of enforcing its foreign policy objectives of confronting Great Britain and the United States. Libya further utilized its relationship with the PIRA in order to target Libyan dissidents in the British Isles. Plaintiffs, through their undersigned attorneys, bring this Class Action Complaint against Libya seeking damages resulting from the attacks committed by the PIRA that were a foreseeable consequence of the aid and support provided by Libya to the PIRA dating from 1972, which the PIRA continued to utilize until its cease-fire agreement in 1997. Plaintiffs, as Class Members and Class Representatives, through their undersigned attorneys, do hereby bring this Class Action Complaint seeking damages arising from the PIRA's campaign of terrorist attacks and state as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction arises pursuant to 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), 1350 and 1367. Jurisdiction also arises based on defendants' violations of 28 U.S.C. §§ 1605(a)(2) and 1605(a)(7) (the "Foreign Sovereign Immunities Act") and the Torture Victim Protection Act ("TVPA"), Pub.L. 102-256, 106 Stat. 73 (reprinted at 28 U.S.C. § 1350 note).

2.      Venue in this district is appropriate pursuant to 28 U.S.C. §§ 1391(d) and 1391(f)(4).

3.      As herein alleged, actions for wrongful death, personal injury and related torts perpetrated by Libya through its agencies and instrumentalities, and through its officials, employees and agents, fall within the exception to jurisdictional immunity provided by 28 U.S.C. § 1605(a)(7).

4.      As herein alleged, Libya's sale of arms, ammunitions, explosives, explosive components, and other such items to the PIRA constituted "commercial activity" as that term has

been interpreted by the Courts that had a direct effect in the United States, falls within the exception to jurisdictional immunity provided by 28 U.S.C. § 1605(a)(2).

## PARTIES

### PLAINTIFFS – CLASS ALLEGATIONS

**I.    THE AMERICAN PLAINTIFFS**

5.    The United States national Plaintiffs specifically named below (the "American Class Representatives") bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all similarly situated persons and entities defined as follows:

> **The following persons shall be members of the class: (1) all legal representatives (including personal representatives, executors, estate administrators, and/or trustees) entitled to bring a legal action on behalf of any United States national or United States permanent-resident alien who died as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997; (2) all United States nationals or United States permanent-resident aliens who suffered physical injury as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997; (3) all survivors, including spouses, children, parents, or siblings of a United States national or United States permanent-resident alien who died as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997; and (4) the spouse and/or minor children of a United States national or United States permanent-resident alien who suffered physical injury as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997.**

6.    All members of the Class defined in the preceding paragraph are hereinafter referred to collectively as either the "American Class" or the "American Plaintiffs."

**II.    THE ALIEN PLAINTIFFS**

7.    The alien national Plaintiffs specifically named below (the "Alien Class Representatives") bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil

Procedure on behalf of themselves and all similarly situated persons and entities defined as follows:

> **The following persons shall be members of the class: (1) all legal representatives (including personal representatives, executors, estate administrators, and/or trustees) entitled to bring a legal action on behalf of any non-United States national or permanent-resident alien who died as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was arguably obtained by the PIRA from Libya during the time period from 1987 up to and including July 20, 1997; (2) all non-United States nationals or permanent-resident aliens who suffered physical injury as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was arguably obtained by the PIRA from Libya during the time period from 1987 up to and including July 20, 1997; (3) all survivors, including spouses, children, parents, or siblings of a non-United States national or permanent-resident alien who died as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was arguably obtained by the PIRA from Libya during the time period from 1987 up to and including July 20, 1997; and (4) the spouse and/or minor children of a non-United States national or permanent-resident alien who suffered physical injury as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was arguably obtained by the PIRA from Libya during the time period from 1987 up to and including July 20, 1997; but excluding (5) all non-United States nationals or permanent-resident aliens, and all spouses, children, parents and siblings of such individuals who were engaged in military operations on behalf of the Government of the United Kingdom against the PIRA when these individuals were either killed or physically injured as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was arguably obtained by the PIRA from Libya during the time period from 1987 up to and including July 20, 1997.**

8.    All members of the Class defined in the preceding paragraph are hereinafter referred to collectively as either the "Alien Class" or the "Alien Plaintiffs."

## III.    NUMEROSITY, COMMONALITY, TYPICALITY, ADEQUACY, AND EFFICIENCY OF CLASS ALLEGATIONS AND CLASS REPRESENTATIVES

9.    <u>Numerosity</u>: The members of the American Class and the Alien Class are so numerous that their joinder would be impracticable in that:

(a) The two classes include victims (including Estates) and survivors of PIRA attacks that number approximately in excess of 6,000 individuals;

(b) It would be highly impractical and a waste of judicial resources for each of the approximately 6,000 individuals to be individually represented in separate actions or a single action; and

(c) Each of the putative Class members for both the American Class and the Alien Class seek to recover damages based upon the common conduct of the Defendants.

10.    Commonality of Factual and Legal Questions:    Common questions of law and fact exist as to all members of both the American Class and the Alien Class. These common legal and factual questions include, but are not limited to, the following:

(d) Whether damages alleged by both the American Class and the Alien Class members were proximately caused by the conduct of the Defendants;

(e) Whether the Defendants are liable to both the American Class and the Alien Class members for damages for wrongful death, battery, intentional infliction of emotional distress, and loss of consortium;

(f) Whether the Defendants are liable to the American Class members for violations of the Flatow Amendment to the Foreign Sovereign Immunities Act;

(g) Whether the Defendants are liable to the Alien Class members for violations of the law of nations giving rise to jurisdiction pursuant to the Alien Tort Statute;

(h)    Whether the Defendants are liable to both the American Class and the Alien Class members for violations of the Foreign Sovereign Immunities Act and the Torture Victim Protection Act;

(i)    Whether the Defendants are liable to both the American Class and the Alien Class members for punitive damages; and

(j)    What is the proper method of calculating damages for members of both the American Class and the Alien Class.

11.    Typicality:    The claims of the American Class Representatives and the Alien Class Representatives are typical of the claims of all members of both the American Class and the Alien Class in that:

(k)    The American Class Representatives, the Alien Class Representatives, and all other members of both the American Class and the Alien Class suffered damages as the result of common conduct and acts of the Defendants;

(l)    Defendants used identical instruments, methods and plans to inflict harm upon the American Class Representatives, the Alien Class Representatives, and all other members of both the American Class and the Alien Class;

(m)    The method used to compute compensatory damages will be identical for the Named Plaintiffs and all other members of their respective Classes; and

(n)    Punitive damages should be awarded against the Defendants for singular acts that impacted the American Class Representatives, the Alien Class Representatives, and all other members of both the American Class and the Alien Class.

14

12.    <u>Adequacy of American Class Representatives and Alien Class Representatives</u>:
The Named Plaintiffs are adequate representatives of the Class in that:

(o)    The American Class Representatives, the Alien Class Representatives, and all other members of both the American Class and the Alien Class have a unity in interest in bringing this action against the Defendants;

(p)    The American Class Representatives and the Alien Class Representatives have made provision for adequate financial resources to be available for the conduct of this litigation in order to ensure that the interests of the members of both the American Class and the Alien Class will not be harmed; and

(q)    Members of both the American Class and the Alien Class will be adequately represented by the American Class Representatives, the Alien Class Representatives, and their Counsel who are experienced in class action litigation.

13.    <u>Predominance of Common Issues and Efficiency of Class Treatment</u>: The common issues of fact and law enumerated above predominate over any individual factual or legal issues, and a Class Action is a superior method for the fair and efficient adjudication of those issues in that:

(r)    Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the burden and expense to all parties and to the court system;

(s)    By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court; and

(t)     The claims of the American Class Representatives, the Alien Class Representatives, and each Class Plaintiff as set forth above shall be governed by either federal law or substantially identical state law.

## IV.    AMERICAN PLAINTIFFS – AMERICAN CLASS REPRESENTATIVES

14.     **Plaintiff Mark McDonald**, born August 30, 1955, is a United States national residing in Bellvue, Colorado. He was injured when a PIRA bomb placed in an automobile near the Harrods department store in Knightsbridge, London, England was detonated on December 17, 1993. He was thrown to the pavement as a result of blast and underwent ten surgeries in the following ten weeks to address the injuries that he sustained as a result of the bombing. He had many pieces of shrapnel lodged in his body, including a large piece in his left hip. His vision was impaired as a result of blood loss. He lost about 80% of his left hamstring and lost muscle and bone from his left hip and shoulder. He still has shrapnel in his shoulder. He has had extensive physical therapy during and after his time in hospital. His eardrums were blown out so he had problems hearing. It was four months before he could work at any productive level. When he returned to work, it was for one or two hours a day, and he then gradually increased the amount of time in increments. He lost about 40 pounds while he was in the hospital. It took him several years following the bombing to be able to walk properly. He still lacks full sensation in those parts of his body that were hit by the blast.

15.     **Plaintiff Karen Jean Salvesen Sykes** brings a claim on behalf of the **Estate of Kenneth Gerald Salvesen**, a United States national born October 1, 1952, who was killed instantly when a bomb in a vehicle parked next to Harrods department store in Knightsbridge, London, England was detonated on December 17, 1983. The PIRA was responsible for the

attack on Mr. Salvesen. At the time of his death, Mr. Kenneth Salvesen was employed as a management consultant with the Boston Consulting Group.

16.     **Plaintiff Karen Jean Salvesen Sykes**, born July 13, 1959, is a United States national residing in Boston, Massachusetts, United States. Ms. Sykes was the wife of the deceased Kenneth Gerald Salvesen. Ms. Sykes discovered her husband had been killed as she and her son were preparing to board a flight from Chicago to England for a pre-planned trip to see Mr. Salvesen for a family holiday. She was told that Mr. Salvesen had suffered significant head injuries and burns, and she was not allowed to see his body despite repeated requests. As a result of Mr. Salvesen's death, Ms. Sykes stopped attending her medical school classes for five months and later had to rearrange her entire educational track and job aspirations in order to provide some stability for her son. Mr. Salvesen had been the sole financial provider for the family, and therefore Ms. Sykes suffered severe cash flow constraints after his death. The emotional toll was equally devastating. Ms. Sykes lost all motivation and suffered from nightmares, panic attacks, acute anxiety, depression and agoraphobia.

17.     **Plaintiff Kraig Gerald Salvesen**, born on June 27, 1979, is an American national residing in Boston, Massachusetts, United States. Mr. Salvesen is the son of the deceased Kenneth Gerald Salvesen.

18.     **Plaintiff Michael Andrew Clark**, born October 23, 1947, is an American national residing in Waterside, County Londonderry, Northern Ireland who has witnessed multiple separate PIRA attacks. Mr. Clark claims that in July 1971 in Londonderry, he was targeted by a PIRA gunman who believed him to be a British soldier. The gunman was perched on the roof of a bank as Mr. Clark was walking down the street. Although no shots were fired, Mr. Clark still becomes very anxious and fearful any time he approaches the bank. One month

later Mr. Clark was in the proximity of the post office near the Guildhall when a vehicle bomb was detonated nearby. The bomb severely damaged the post office and nearby cars and shattered windows in the surrounding area. The PIRA was responsible for the attack. In June 1972, Mr. Clark witnessed two separate PIRA attacks on Abercorn Road in Londonderry. The first attack was a gun battle between the PIRA and the British army, and in the second attack, a PIRA gunman opened fire at an army checkpoint. In July 1973, Mr. Clark was nearby when a PIRA bomb planted in a clothing store on Strand Road in Londonderry was detonated. Other than personally experiencing five PIRA attacks, Mr. Clark has also witnessed the anguish two of his friends, Mr. Fletcher and Mr. Hoffman, have suffered as a result of being injured in a PIRA bomb blast in Londonderry. Mr. Fletcher received 208 stitches, surgery on his knee and plastic surgery. Mr. Hoffman lost all hearing in one ear. The culmination of these five attacks, along with witnessing the pain and suffering his friends have endured due to PIRA attacks, has made Mr. Clark extremely anxious and depressed. He has been seen by a number of psychologists and psychiatrists in the United States who have prescribed various types of anti-depressants for him. Mr. Clark's experiences with the attacks compel him to stay at home whenever possible, because he feels more secure there. He is also less inclined to socialize, drinks more heavily now and has experienced problems sleeping at night and changes in his personality.

## V.    ALIEN PLAINTIFFS – ALIEN CLASS REPRESENTATIVES

### November 8, 1987 Enniskillen Bombing

19.    **Plaintiff Christopher George Quinton**, born September 21, 1952, is a British national residing in Warsaw, Poland. His mother, Georgina Alberta Quinton, was killed on November 8, 1987 when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen, Northern Ireland.

Mr. Quinton was nearby when the bombing occurred and arrived on scene approximately 20 minutes later. He saw his brother, Derek, who told him that their mother was missing. Mr. Quinton proceeded to the local hospital to try and locate her there. After hours of searching, her body was identified among the dead. He found it difficult to concentrate at work thereafter because his work was in close proximity to the bombing location. His mother was not alive to see him earn his LL.B. and LL.M. degrees. He continues to suffer emotionally from the death of his mother.

20.    **Plaintiff Aileen Janet Quinton**, born March 25, 1958, is a British national residing in London, England. Her mother, Georgina Alberta Quinton, was killed on November 8, 1987 when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen, Northern Ireland. Ms. Quinton has taken prescription anti-depressants at various intervals since the bombing. She has also been diagnosed with significant neurological disorders. She continues to suffer emotional injury from the death of her mother.

21.    **Plaintiff Ian Richard Quinton,** born October 22, 1953, is a British national residing in Belfast, Ireland. Mr. Quinton's mother, Georgina Alberta Quinton, was killed by a PIRA bomb containing Semtex in Enniskillen on November 8, 1987. Mr. Quinton, a schizophrenic, was financially dependent on his mother at the time of the attack. The loss of his mother was an emotionally crippling event for Mr. Quinton and served to exacerbate his previously existing mental illness requiring him to check into a hospital for six months and continue with psychological therapy. He continues to suffer emotionally from the loss of his mother.

22.    **Plaintiff Derek Quinton**, born November 26, 1950, is a British national residing in Enniskillen, County Fermanagh, Northern Ireland. Mr. Quinton's mother, Georgina Alberta Quinton, was killed by a PIRA bomb containing Semtex in Enniskillen on November 8, 1987. Mr. Quinton was nearby when the attack occurred and rushed immediately to the scene to find his mother. He was later able to identify her body in a temporary morgue that had been set up in an army garage. As the oldest child in the family, Mr. Quinton has had to assume a majority of the responsibilities his mother once fulfilled, including providing accommodations for his siblings after the attack. Mr. Quinton is also very sensitive to loud noises.

23.    **Plaintiff Anna Dixon** is a British national. Ms. Dixon was injured when a PIRA bomb containing Semtex was detonated in Enniskillen town on November 8, 1987. The bombing resulted in 11 casualties, numerous injuries – including Ms. Dixon's husband and daughter Serena Doherty – and extensive property damage. Ms. Dixon received medical treatment for upper body injuries she suffered at the scene of the attack after medics attended to the casualties. The bombing has impacted Ms. Dixon both mentally and physically, and doctors have informed her that she faces long-term recovery in both of these areas. Not only was Ms. Dixon diagnosed with post-traumatic stress disorder, but she was also forced to endure seeing her husband and daughter in pain as a result of the attack. Furthermore, the attack resulted in long-term absences from work for Ms. Dixon which dealt a blow to the family's financial situation as her husband and daughter are dependent on her for their financial welfare.

24.    **Plaintiff William James Dixon** is a British national. Mr. Dixon was injured when a PIRA bomb containing Semtex was detonated in Enniskillen town on November 8, 1987. The bombing resulted in 11 casualties, numerous injuries – including Mr. Dixon's wife and daughter Serena Doherty – and extensive property damage. Mr. Dixon suffered extensive

20

injuries including fractured ribs, a fractured skull, permanent nerve damage, a fractured hip, a fractured nose and severe emotional trauma. As the sole financer of the family, his life has been severely altered as a result of the attack; he suffers from mental, physical, psychological and emotional side effects. Aside from the constant physical pain, Mr. Dixon is no longer able to work or feel comfortable in a public environment and remains disengaged from the everyday activities that were part of his life before the attack.

25.     **Plaintiff Serena Doherty**, born January 18, 1971, is a British national residing in Ballyrobert, Northern Ireland. Ms. Doherty was injured when a PIRA bomb containing Semtex was detonated in Enniskillen town on November 8, 1987. She received medical treatment for injuries she suffered at the scene of the attack and was also taken to the hospital. Ms. Doherty was diagnosed with post-traumatic stress disorder and is now unable to perform normal daily tasks. The attack not only resulted in Ms. Doherty's absence from school, but it has also had a significant emotional impact on Ms. Doherty.

26.     **Plaintiff Suzanne Elizabeth Ritchie,** born July 1, 1964, is a British national residing in Enniskillen, Northern Ireland. Ms. Ritchie's mother, Ann Dixon, father, James Dixon, and sister, Serena Doherty, were all injured on November 8, 1987 when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen, Northern Ireland. Ms. Ritchie witnessed the attack and later described the ghastly aftermath of the bomb as "like being in a horror movie." Ms. Ritchie has suffered severe emotional and financial burdens as a result of the attack.

27.     **Plaintiff Ruth Kearney Blair**, born December 30, 1951, is a British national residing in Brookeborough, County Fermanagh, Northern Ireland. Ms. Blair's parents, William and Agnes Mullan, were killed on November 8, 1987 when a bomb containing Semtex was

placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen, Northern Ireland. She went to the scene to try and find them. Her husband later identified her parents' bodies at a makeshift morgue for the victims of the bombing. As a result of the bombing, she has been diagnosed with post-traumatic stress disorder. She has withdrawn from public events and has become embittered with perceived encroachment of PIRA loyalty within her place of employment. She continues to suffer emotionally from the loss of her parents and the lack of closure regarding the bombing.

28. **Plaintiff Joan Olwen Gibson Anderson**, born on May 22, 1950, is a British national residing in Glen Cove, New York, United States. Ms. Anderson's parents, William and Agnes Mullan, were killed on November 8, 1987 when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen, Northern Ireland. Ms. Anderson discovered her parents had been killed when her brother-in-law called her after the attack. Several days after the explosion, the family asked to see the remains of the bodies, but doctors were strongly against viewing them as they were badly bruised and swollen. As a result of the attack and the death of both of her parents, Ms. Anderson was forced to miss approximately 60 days of work. Furthermore, because she was living in the United States with no close relatives or friends nearby, her only source of support was expensive international phone calls to her sisters in Northern Ireland. Ms. Anderson has suffered a constant state of physical and emotional pain, and her grief and depression have caused her to lose interest in socializing and in bettering herself in terms of her career. She is currently in therapy and taking medication for depression.

29. **Plaintiff Margaret Elizabeth Veitch,** born April 26, 1947, is a British national residing in Enniskillen, Northern Ireland. Ms. Veitch's parents, William and Agnes Mullan, were

killed on November 8, 1987 when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen, Northern Ireland. Ms. Veitch has suffered severe emotional trauma since the bombing. Her shop is located just down the street from the site of the bombing and she lost a considerable amount of business as a result of the mental anguish that she experienced everyday upon her arrival at work. She also misses her father's advice, encouragement and companionship. She and her siblings were forced to sell their parents' house shortly after the attack. The sale was a source of huge distress for the whole family, as they no longer have a place where they all can gather and feel at home. Moreover, Ms. Veitch and her sister were forced to take on financial responsibility for their aunt, who had been living with their parents. Ms. Veitch and her late husband became socially reclusive after the attack, to the point that they stopped attending church. Ms. Veitch was diagnosed with general depression and post-traumatic stress disorder. She briefly sought help from a professional counselor immediately following the attack; she is currently seeing a cognitive therapist and is taking Prozac. More than anything else, Ms. Veitch regrets that her father was unable to live long enough to witness the eventual success of her business.

30.    **Plaintiff Gladys Gault** brings a claim on behalf of the **Estate of Samuel Gault**, born July 18, 1938, who was a British national killed on November 8, 1987 when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen, Northern Ireland.

31.    **Plaintiff Gladys Gault** is a British national residing in Enniskillen, County Fermanagh, Northern Ireland. Ms. Gault is the wife of the deceased Samuel Gault, a British national who was killed on November 8, 1987 when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in

Enniskillen, Northern Ireland.    Two of her children were also injured in the attack.  The death of her husband as a result of the attack caused Ms. Gault to miss days of work and has also made it impossible for her to perform normal daily tasks.  Ms. Gault and her son relied on Mr. Gault as the sole financial provider for the family; therefore his death has reduced the family's income dramatically.  Ms. Gault has also suffered emotional injury as she now has to be both a mother and father to her son.

32.    **Plaintiff Keith Samuel Gault**, born July 15, 1962, is a British national residing in Enniskillen, Northern Ireland.  Mr. Gault was injured on November 8, 1987 when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen, Northern Ireland.  After the bombing, he located his brother, Stephen Gault, amidst the rubble and took him to safety.  He returned to the scene to find the body of his father, Samuel Gault, who had been killed due to severe trauma to his head. Mr. Gault has suffered from depression, psoriasis, arthritis, hypertension, and post-traumatic stress disorder as a result of the bombing.  He was unable to work again after the bombing due to the emotional effects that it had upon him.  He does not sleep well and has become a recluse.

33.    **Plaintiff Stephen James Kyle Gault**, born October 20, 1969, is a British national residing in County Fermanagh, Northern Ireland.  Mr. Gault was injured on November 8, 1987 when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen, Northern Ireland.  His father, Samuel Gault, died in the attack.  Mr. Gault received stitches to his head and required surgery on his right hand.  As a result of the attack, he has developed psoriasis, arthritis, and he has been diagnosed with post-traumatic stress disorder and depression.  He has lost most of the use of his

right hand.  He has obtained extensive psychological evaluation and treatment following the attack. He experiences mood swings and describes himself as reclusive.

34.    **Plaintiff Stella Mary Robinson** brings a claim on behalf of the **Estate of William John Wesley Armstrong**, a British national born August 17, 1925, and the **Estate of Bertha Mary Evelyn Armstrong**, a British national, both of whom were killed when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen on November 8, 1987.

35.    **Plaintiff Stella Mary Robinson,** born July 5, 1955, is a British national residing in Enniskillen, Northern Ireland. Mrs. Robinson's sister, Julian Armstrong, was injured, and her parents, William and Bertha Armstrong, were killed, when a bomb containing Semtex was placed by the PIRA in a building adjacent to the Enniskillen war memorial on Remembrance Day in Enniskillen on November 8, 1987. Ms. Robinson had to quit her job as a child-minder as a result of the attack, as she was no longer fit to look after children on account of her grief. She was also too emotional to be in public and burdened with filling the gap at the head of the family. Although she is now working as a secretary, she still suffers emotionally and feels as if the heart of her family has been depleted.

36.    **Plaintiff Julian Robert Armstrong**, born May 26, 1971, is a British national residing in Kilkeel, County Down, Northern Ireland who was also injured in the Remembrance Day attack that claimed the life of his parents. Mr. Armstrong had incurred a number of cuts and bruises on his face and legs and was taken to the hospital by one of the soldiers at the scene of the attack.  He was treated for shock, received eight stitches on his forehead and had to wear a neck brace for several days. As a result of his injuries, Mr. Armstrong missed a month of school,

but even after returning, he was unable to study for a few months due to the emotional trauma he suffered.

37.    **Plaintiff Pamela Whiteley**, born September 26, 1956, is a British national residing in Broughshane, County Antrim, Northern Ireland and brings a claim for her deceased parents William and Bertha Armstrong. After the bombing, Ms. Whiteley received a phone call from her sister informing her that her parents were missing and her brother was injured. She wanted to see her parents' bodies once they were found but was advised not to do so due to the severity of their injuries. As a result of her parents' death, Ms. Whiteley had to assist and support her sister and brothers emotionally and provide the practical help her parents would have provided for her brothers who were living on their own.

38.    **Plaintiff Trevor Armstrong**, born June 19, 1958, is a British national residing in Enniskillen, Northern Ireland. Mr. Armstrong is the son of deceased William Armstrong. Mr. Trevor Armstrong was living with his father at the time of the attack, and his father was the sole financial supporter of the family.

**June 15, 1988 Lisburn Bombing**

39.    **Plaintiff Andrea Brown**, born May 29, 1970, is a British national residing in Moira, County Armagh, Northern Ireland. On June 15, 1988, the PIRA booby-trapped a civilian minibus with a bomb containing Semtex that was detonated causing injury to Andrea Brown. Ms. Brown suffered an irreparable spinal injury that has rendered her disabled and unable to work to this day. She has been diagnosed with post-traumatic stress disorder and continues to be on medication. She requires daily care which is provided by her mother, Plaintiff Mary Elizabeth Brown, and her daughter, Jade Brown.

40.    **Plaintiff Mary Elizabeth Brown**, born February 5, 1940, is a British national residing in Moira, County Armagh, Northern Ireland.  Ms. Brown is the mother of Plaintiff Andrea Brown who was injured when the PIRA booby-trapped a civilian minibus with a bomb containing Semtex.  She was nearby when the bomb was detonated and saw firsthand the devastation that occurred as a result of the bombing.  She has served as caretaker for her daughter whose spinal injury from the bombing rendered her disabled. She spends between four and eight hours a day caring for her daughter whose suffering she views daily.

**September 12, 1988 Crawfordsburn Bombing**

41.    **Plaintiff Timothy Kenneth Bloomfield**, born March 28, 1970, is a British national residing in County Down, Northern Ireland.   On September 12, 1988, the PIRA detonated four separate bombs containing Semtex that were further packed with AK-47 rifle bullets to increase the deadly effect at the Bloomfield residence in Crawfordsburn, County Down, Northern Ireland.  Mr. Bloomfield's father, Sir Timothy Kenneth Bloomfield, was the Head of the Northern Ireland Civil Service at the time of the attack.  Mr. Bloomfield suffered severe shock and emotional trauma as a result of the bombing which have followed him throughout his life.  He has attended psychotherapy sessions for over ten years as a result of the emotional trauma he suffered as a result of the bombing, and he has withdrawn from society as a result.

**May 27, 1989 Starbane Bombing**

42.    **Plaintiff Kathleen Frances Black-Elliot,** brings a claim on behalf of the **Estate of John David Black**, her late husband, who died as a result of a PIRA bomb containing Semtex that was detonated at the couple's home in Starbane, Northern Ireland, on May 27, 1989.  Mr.

Black died from the injuries he sustained – including severe disfigurement, spinal fractures, and a lacerated kidney – on June 27, 1989.

43.    **Plaintiff Kathleen Frances Black-Elliot**, born August 29, 1959, is a British national residing in Starbane, Northern Ireland.  Her husband, John David Black, was killed as a result of a PIRA bomb containing Semtex that was detonated at the couple's home in Starbane, Northern Ireland on May 27, 1989.  Mr. Black died as a result of his injuries on June 27, 1989.  Mr. Black was the primary provider for Ms. Black-Elliot, their child, and Mr. Black's parents at the time of his death. Ms. Black-Elliot has suffered emotional trauma as the result of her husband's death, as she was in the house at the time of the attack. The sight of the explosion and her husband's crippled body thereafter are etched into her memory and will forever extract an emotional toll on her psychological well-being. Moreover, she also lost an aunt in the Enniskillen War Memorial bombing of November 8, 1987.

44.    **Plaintiff Jean Darragh,** is a British national. Mrs. Darragh's brother, John David Black, was killed as a result of a PIRA bomb containing Semtex that was detonated at the couple's home in Starbane, Northern Ireland on May 27, 1989.  The loss of her brother was a tremendous source of financial and emotional stress for Mrs. Darragh and her family.

45.    **Plaintiff Heather Black,** is a British national. Ms. Black's father, John David Black, was killed as a result of a PIRA bomb containing Semtex that was detonated at the couple's home in Starbane, Northern Ireland on May 27, 1989.  Ms. Black was only thirteen month old at the time of the attack. As a result of the PIRA, she was forced to grow up without the benefit of father's wisdom, compassion, companionship and financial support.

**October 8, 1989 Lisburn Bombing**

46.    Plaintiff **Bryan Harold Harris**, born August 25, 1961, is a British national residing in Hillsborough, County Down, Northern Ireland. His father, Alwyn William Harris, was killed on October 8, 1989, when a bomb containing Semtex placed in the car in which he was traveling was detonated. Mr. Harris' mother, Anne J. Harris, was also in the car at the time of the bombing. She suffered deafness in one ear and burns on her face and forehead. Mr. Harris heard about the bombing on the radio and traveled to the scene where he saw his father's body among the wreckage. He has suffered from post-traumatic stress disorder, hypertension, and anxiety as a result of the death of his father. He looks after his mother as much as he can. He has shown a marked lack of interest in his work since the bombing. He continues to suffer emotionally from the loss of his father and the impact that loss had upon his mother.

**April 27, 1990 Kilkeel Bombing**

47.    Plaintiff **Ashley Alexandra Graham** brings a claim on behalf of the **Estate of Kenneth Graham** who was killed immediately at the family's home in Kilkeel, County Down, Northern Ireland when a bomb containing Semtex on his car was detonated on April 27, 1990.

48.    Plaintiff **Ashley Alexandra Graham**, born May 19, 1979, is a British national residing in Kilkeel, County Down, Northern Ireland, and the daughter of the deceased Kenneth Graham who was killed when a bomb containing Semtex on his car was detonated on April 27, 1990. Ms. Graham and her sister relied on Mr. Graham's income to maintain the household, and after his death, Ms. Graham claims their inheritance was not dealt with correctly and fairly by Mr. Graham's family, and she did not receive any of the money to which she was entitled. This caused extreme financial difficulties for her. Like her sister, Ms. Graham also feels as if she has lost her chance of being her father's successor in the family's firm. Ms. Graham has also

suffered emotional trauma as the result of Mr. Graham's death and is attending weekly therapy sessions

49.    **Plaintiff Manya Dickinson**, born July 9, 1976, is a British national residing in Kilkeel, County Down, Northern Ireland, and the daughter of the deceased Kenneth Graham who was killed when a bomb containing Semtex on his car was detonated on April 27, 1990. Ms. Dickinson and her sister relied on Mr. Graham's income to maintain the household, and after his death, Ms. Dickinson claims their inheritance was not dealt with correctly and fairly by Mr. Graham's family. This caused extreme financial difficulties for them. Ms. Dickinson also lost any possibility of playing a prominent roll in the family firm after Mr. Graham's death. Ms. Dickinson has also suffered emotional trauma as the result of Mr. Graham's death, including increased levels of stress which have led to illness and health problems. She is still attending weekly therapy sessions.

50.    **Plaintiff Mary Elizabeth Graham**, born April 7, 1923, is a British national residing in Kilkeel, County Down, Northern Ireland, and the mother of the deceased Kenneth Graham. Her minister informed her that her son had been killed. With her husband being ill, Ms. Graham regarded her son as the anchor of the family. She feels as though her son's death contributed to her husband's death a year later due to the added stress he had to endure on top of his illness. After her son's death, Ms. Graham experienced significant difficulty in performing her normal duties due to the emotional trauma she suffered. Her financial situation was also impacted by her son's death, because she depended on income from the family business he managed for financial support.

51.    **Plaintiff David Knox Graham**, born July 12, 1959, is a British national residing in Newcastle, County Down, Northern Ireland, and the brother of the deceased Kenneth Graham.

Mr. Graham discovered his brother had been killed when he received a phone call from police. His brother's death has significantly impacted Mr. Graham's job performance. He missed 20 days of work, and once back on the job, found it difficult to perform his normal occupational tasks. Furthermore, Mr. Graham was employed by his brother, who was the owner of the business, and his brother's death resulted in financial losses for the business which affected Mr. Graham's salary. Mr. Graham's responsibilities at work also increased substantially due to the fact that he replaced his brother as manager of the business after he was killed. Mr. Graham now suffers from insomnia as a result of the stress from not being prepared to take on these new duties.

52.    **Plaintiff Samuel John Graham**, born December 25, 1946, is a British national residing in Kilkeel, County Down, Northern Ireland, and the brother of the deceased Kenneth Graham. Mr. Graham's neighbor, who heard the bomb explode, informed him about the attack. When he arrived to the scene, he saw his brother had been blown out of the car and had lost his legs and an arm. Like his brother David Graham, Mr. John Graham was also employed by his brother, and his job performance was similarly severely affected by his brother's death. Mr. Graham's responsibilities at work also increased substantially due to the fact that he, along with his brother, had to run the family's business after the attack. The business suffered severe losses due to the lack of experience of the two brothers which caused Mr. Graham to experience significant financial hardship. Mr. Graham also suffers from emotional trauma as a result of the gruesome way his brother was killed.

53.    **Plaintiff Stella Pamela McCarthey**, born March 21, 1948, is a British national residing in Kilkeel, County Down, Northern Ireland, and the sister of the deceased Kenneth Graham. Ms. McCarthey fainted when a neighbor informed her about the attack. She had

always relied on her brother for emotional support, and when he was killed, she had no desire to do anything but comfort the other members of her family. As a result of her brother's death, Ms. McCarthey quit her job due to emotional trauma and is fearful of local travel.

**May 21, 1990 Bombing**

54.    **Plaintiff Dermont James McLees,** born January 24, 1961, is a British national residing in Ballymena, Ireland. Mr. McLees was injured by a PIRA Semtex bomb on May 21, 1990. He has since been diagnosed with Post Traumatic Stress Disorder and Dysthmia. He had to undergo cognitive therapy from March 2003 until February 2004 and is still taking anti-depressants and sleeping pills. Additionally, he is constantly afraid and hyper vigilant. He still suffers from flashbacks of the attack and does not sleep at night. As a result, it is very hard for Mr. McLees to trust anyone; he describes himself as socially withdrawn.

**June 6, 1990 Ballgomartin Road Bombing**

55.    **Plaintiffs Peter Stewart Sefton** brings a claim on behalf of the **Estate of James Sefton**, a British national born February 25, 1925. As Mr. Sefton and his wife Ellen Sefton were driving down Ballygomartin Road in Belfast on June 6, 1990, a bomb containing Semtex strapped underneath their vehicle was detonated. The PIRA was responsible for the attack. Mr. Sefton died as a result of the explosion an hour after being admitted to the hospital. He had lost one of his legs and suffered from burns covering his lower body. Mr. Sefton was a retired police officer at the time of his death.

56.    **Plaintiff Peter Stewart Sefton** brings a claim on behalf of the **Estate of Ellen Jane Sefton**, a British national born March 11, 1924. Ms. Sefton died of injuries sustained from the explosion of the Seftons' vehicle 36 hours after being admitted to the hospital. During those 36 hours, Ms. Sefton had to endure the pain of a severe head injury and the loss of an eye.

57.    **Plaintiff Peter Stewart Sefton**, born December 20, 1949, is a British national residing in Temple Patrick, Northern Ireland. He is the son of the deceased James Garrick Sefton and Ellen Jane Sefton. Mr. Sefton identified his father at the morgue approximately two hours after his death and identified his mother the next day. The death of his parents had a significant emotional impact on Mr. Sefton. He was diagnosed with severe post-traumatic stress disorder, which led to matrimonial difficulties, and he had difficulty performing his occupational duties, which resulted in a reduced income. Mr. Sefton also became less sociable. He is still attending therapy sessions and taking medication for his condition.

58.    **Plaintiff Margaret Stewart Magowan**, born January 7, 1952, is a British national residing in Belfast, Northern Ireland. She is the daughter of the deceased James Garrick Sefton and Ellen Jane Sefton. Ms. Magowan has suffered deep emotional stress and panic attacks as a result of the death of her parents. She was unable to perform her usual daily tasks for several months after the attack and had great difficulty sleeping due to nightmares. Maintaining her parents' home for several months after their death was also particularly stressful for her. Ms. Magowan also became very withdrawn and began suffering from paranoia.

**April 6, 1991 Ballycastle Car Bombing**

59.    **Plaintiff Lorna Margaret McGarry** brings a claim on behalf of the **Estate of John Spence McGarry**, a British national born October 23, 1944, who was killed when a PIRA booby-trap bomb containing Semtex was detonated under the car in which he was traveling in Ballycastle, County Antrim, Northern Ireland on April 6, 1991. Mr. McGarry's body was so badly mutilated that he was only identifiable through dental records. PIRA member Gerard Butler was convicted to life imprisonment in June 1993 for his role in the attack. Two additional PIRA members were also convicted for their respective roles in the attack.

33

60.    **Plaintiff Lorna Margaret McGarry**, born September 30, 1946, is a British national residing in County Londonderry, Northern Ireland. Ms. McGarry is the wife of the deceased John Spence McGarry who was killed when a PIRA booby-trap bomb containing Semtex was detonated under the car in which he was traveling in Ballycastle, County Antrim, Northern Ireland on April 6, 1991. As a result of the bombing, Ms. McGarry is afraid to go out. She even moved from Northern Ireland to England to get away from this fear. She has been unable to work since the bombing. She continues to suffer emotionally from the loss of her husband.

61.    **Plaintiff Mark John McGarry**, born July 2, 1971, is a British national residing in Ballymena, County Antrim, Northern Ireland. Mr. McGarry's father, John Spence McGarry, was killed when a PIRA booby-trap bomb containing Semtex was detonated under the car in which he was traveling, Ballycastle, County Antrim, Northern Ireland on April 6, 1991. Mr. McGarry was informed by the police approximately two hours later of the bombing. Prior to the bombing, Mr. McGarry was a student. After the bombing, he abandoned his degree program out of grief, out of a desire to be with his family, and to get a job to help maintain the household due to the loss of the primary financial provider. He has suffered from depression, and feels wary of strangers and public gatherings. He continues to suffer emotionally from the loss of his father.

62.    **Plaintiff Alison Agnes Louise McGarry**, born November 2, 1973, is a British national residing in County Londonderry, Northern Ireland. Ms. McGarry's father, John Spence McGarry, was killed when a PIRA booby-trap bomb containing Semtex was detonated under the car in which he was traveling in Ballycastle, County Antrim, Northern Ireland on April 6, 1991. As a result of the bombing, Ms. McGarry fell behind in her schoolwork and has become

detached and withdrawn in social settings. She lacks confidence and finds it difficult to relate to others. She continues to suffer emotionally from the loss of her father.

63.    **Plaintiff Karen Denise McGarry**, born April 11, 1977, is a British national residing in Edinburgh, United Kingdom. Ms. McGarry's father, John Spence McGarry, was killed when a PIRA booby-trap bomb containing Semtex was detonated under the car in which he was traveling in Ballycastle, County Antrim, Northern Ireland on April 6, 1991. Ms. McGarry was in her third year of secondary school at the time of the bombing. She found it difficult to return to school following the bombing due to the public nature of the attack. She has moved away from Northern Ireland as a result of the attack and does not plan to return to live. Life stresses become insurmountable when coupled with her feelings of loss. She continues to suffer emotionally from the loss of her father.

64.    **Plaintiff Ronnie McGarry**, born March 4, 1933, is a British national residing in County Antrim, Northern Ireland. Mr. McGarry's brother, John Spence McGarry, was killed when a PIRA booby-trap bomb containing Semtex was detonated under the car in which he was traveling in Ballycastle, County Antrim, Northern Ireland on April 6, 1991. Mr. McGarry went to the scene of the attack the following day. After the bombing, Mr. McGarry has experienced depression and a lack of motivation. He has dispensed with attempts to achieve promotions at work. He continues to suffer emotionally from the loss of his brother.

65.    **Plaintiff James McGarry**, born May 17, 1940, is a British national residing in County Down, Northern Ireland. Mr. McGarry's brother, John Spence McGarry, was killed when a PIRA booby-trap bomb containing Semtex was detonated under the car in which he was traveling in Ballycastle, County Antrim, Northern Ireland on April 6, 1991. Mr. McGarry went to the scene of the attack the following day. Mr. McGarry has experienced depression and lack

of a desire for promotion at work. He continues to suffer emotionally from the loss of his brother.

**May 17, 1991 Lisbellan Bombing**

66.    **Plaintiff Phyllis Elizabeth Carrothers**, born October 7, 1956, is a British national residing in Enniskillen, Northern Ireland. Her husband, Douglas Carrothers, was killed when a PIRA bomb containing Semtex was detonated beneath his automobile near the couple's home in Lisbellan, County Fermanagh, Northern Ireland on May 17, 1991. Ms. Carrothers was informed by the police at her place of work that her husband had been the victim of an attack. It was only after she arrived at the hospital that she realized he had been killed. As a result of the bombing, Ms. Carrothers was forced to abandon her studies toward a college degree as she needed to take care of the couple's children and become the primary breadwinner for the family. She has been diagnosed with depression and has taken anti-depressants to ease the symptoms of her depression. She continues to suffer emotionally and financially as a result of the loss of her husband.

67.    **Plaintiff Andrew Douglas Carrothers**, born December 5, 1976, is a British national. His father, Douglas Carrothers, was killed when a PIRA bomb containing Semtex was detonated beneath his automobile near the family home in Lisbellan, County Fermanagh, Northern Ireland on May 17, 1991. Mr. Carrothers was notified of the bombing while he was at school. He was never able to say goodbye to his father because he was killed immediately by the bomb. After the bombing, Mr. Carrothers lacked confidence and felt insecure. He continues to experience flashbacks and was deprived of having a father in his life. He continues to suffer emotionally as a result of the loss of his father.

68.    **Plaintiff Angela Elizabeth Carrothers**, born December 17, 1980, is a British national. Her father, Douglas Carrothers, was killed when a PIRA bomb containing Semtex was detonated beneath his automobile near the family home in Lisbellan, County Fermanagh, Northern Ireland on May 17, 1991. She will never forget her father waving to her approximately two minutes prior to the bomb's detonation. She was 50-70 meters away from the car when it exploded. She continues to experience flashbacks and was deprived of having a father in her life. She continues to suffer emotionally from the loss of her father.

69.    **Plaintiff Derek Raymond Carrothers**, born December 28, 1977, is a British national. His father, Douglas Carrothers, was killed when a PIRA bomb containing Semtex was detonated beneath his automobile near the family home in Lisbellan, County Fermanagh, Northern Ireland on May 17, 1991. After the bombing, Mr. Carrothers lacked confidence and felt insecure. He continues to experience flashbacks and was deprived of having a father in his life. He continues to suffer emotionally as a result of the loss of his father.

**January 17, 1992 Teebane Cross Roads Bombing**

70.    **Plaintiff Noel Roberts Irons** brings a claim on behalf of the **Estate of Robert Irons**, a British national born January 25, 1930, who was killed when a bus in which he was traveling was blown up by a roadside bomb containing Semtex placed by the PIRA's East Tyrone Group at the Teebane Cross Roads between Omagh and Cookstown.

71.    **Plaintiff Noel Robert Irons**, born August 19, 1963, is a British national residing in County Londonderry, Northern Ireland. On January 17, 1992, his father, Robert Irons, was killed when a bus in which he was traveling was blown up by a roadside bomb containing Semtex placed by the PIRA's East Tyrone Group at the Teebane Cross Roads between Omagh and Cookstown. Mr. Irons has suffered from depression and his marriage suffered as a result of

his emotional distress and also the toll of attempting to help his mother recover from her loss. He continues to suffer emotionally from the loss of his father.

72.    **Plaintiff James Clarke Irons**, born March 6, 1942, is a British national residing in Ballymena, Northern Ireland. On January 17, 1992, his brother, Robert Irons, was killed when a bus in which he was traveling was blown up by a roadside bomb containing Semtex placed by the PIRA's East Tyrone Group at the Teebane Cross Roads between Omagh and Cookstown. Due to the onset of post-traumatic stress disorder, Mr. Irons was forced to take early retirement in September 1996 from a lecturing position in engineering a local university. He continues to suffer emotionally from the loss of his brother.

73.    **Plaintiff Samuel Irons,** is a British national. Mr. Irons' brother, Robert Irons, a British national born January 25, 1930, was killed when a bus in which he was traveling was blown up by a roadside bomb containing Semtex placed by the PIRA's East Tyrone Group at the Teebane Cross Roads between Omagh and Cookstown. Mr. Irons was unable to cope with the pressures of life after the attack and is still haunted by the awful tragedy of his brother's death.

74.    **Plaintiff William Irons,** is a British national. Mr. Irons' brother, Robert Irons, a British national born January 25, 1930, was killed when a bus in which he was traveling was blown up by a roadside bomb containing Semtex placed by the PIRA's East Tyrone Group at the Teebane Cross Roads between Omagh and Cookstown. Mr. Irons was unable to cope with the pressures of life after the attack and is still haunted by the awful tragedy of his brother's death.

75.    **Plaintiff Isobel McKee,** is a British national. Mrs. Isobel's brother, Robert Irons, a British national born January 25, 1930, was killed when a bus in which he was traveling was blown up by a roadside bomb containing Semtex placed by the PIRA's East Tyrone Group at the

Teebane Cross Roads between Omagh and Cookstown. Mrs. Isobel was unable to cope with the pressures of life after the attack and is still haunted by the awful tragedy of her brother's death.

76.    **Plaintiff Reta McDonald,** is a British national. Mrs. McDonald's brother, Robert Irons, a British national born January 25, 1930, was killed when a bus in which he was traveling was blown up by a roadside bomb containing Semtex placed by the PIRA's East Tyrone Group at the Teebane Cross Roads between Omagh and Cookstown. Mrs. McDonald was unable to cope with the pressures of life after the attack and is still haunted by the awful tragedy of her brother's death.

77.    **Plaintiff Agnes Jean McKee** brings a claim on behalf of the **Estate of Nigel William John McKee**, a British national born March 31, 1967, who was killed when a bus in which he was traveling was blown up by a roadside bomb containing Semtex placed by the PIRA's East Tyrone Group at the Teebane Cross Roads between Omagh and Cookstown. The PIRA was responsible for the attack. At the time of his death, Mr. McKee was employed by Carl Construction as a lorry driver.

78.    **Plaintiff Agnes Jean McKee**, born October 17, 1940, is a British national residing in Ballymena, County Antrim, Northern Ireland, and the mother of the deceased Nigel McKee. Ms. McKee discovered her son had been killed while listening to a local radio station and was unable to go see her son's body at the morgue, because she was advised that the sight would be too gruesome. As Ms. McKee was already a widow, the death of her only son Nigel McKee was especially hard for her due to the fact that she relied on Mr. McKee for her sole financial support and also for practical and emotional support.

79.    **Plaintiff Linda Clarke**, born May 31, 1967, is a British national residing in Randalstown, Northern Ireland. Ms. Clarke is the sister of the Nigel McKee who was killed

when a bus in which he was traveling was blown up by a roadside bomb containing Semtex placed by the PIRA's East Tyrone Group at the Teebane Cross Roads between Omagh and Cookstown. Ms. Clarke discovered her brother had been killed while listening to a local radio station. The death of her brother has not only caused Ms. Clarke to miss days of work and have a reduced work schedule when she returned to her job, but as Ms. Clarke's father was already deceased, the result of Mr. McKee's death is the loss of the family's sole financial support. Not only did Ms. Clarke depend on her brother for financial support, but Mr. McKee did and would have continued to support Ms. Clarke's mother, Plaintiff Agnes McKee. Ms. Clarke continues to suffer emotionally from the loss of her brother.

**February 28, 1992 London Bridge Station Bombing**

80.    **Plaintiff Zoe Theresa Barnes**, born July 10, 1961, is a British national residing in King's Lynn, Norfolk, United Kingdom.   Ms. Barnes was injured when a PIRA bomb containing Semtex prematurely detonated in a restroom adjoining the London Bridge Train Station in London and caused damage to the train car on which Ms. Barnes was seated.  Ms. Barnes has been diagnosed with post-traumatic stress disorder and has received extensive psychological evaluation and medical assistance since the bombing to try and cope with the shell shock that she experienced.  Her emotional distress continues to this day.

**March 10, 1992 St. Mary Axe Bombing**

81.    **Plaintiff Jeffery David Blum,** born February 14, 1953, is a British national residing in Middlesex, England. Mr. Blum was injured when a PIRA vehicle bomb containing Semtex detonated at St. Mary Axe, London on March 10, 1992. As a result of the attack, Mr. Blum's head and right arm were severely disfigured, his skull and right hand bones were fractured, three of his teeth were knocked out and he still has glass pieces inside his body. He

had to undergo surgery to repair his right arm and remove pieces of glass from his brain. He also

no longer enjoys the full use of his right hand. Mr. Blum missed roughly eight months of work,

as did his wife, since she had to look after him full time in the month following the attack. As a

result, his family had to spend almost all of his savings to support themselves. Mr. Blum can no

longer participate in any the sports that he previously enjoyed.

**April 10, 1992 Baltic Exchange Bombing**

82.    **Plaintiff Ronald John George Brooks,** born June 28, 1936, is a British national

now residing in Tiptree, England. Mr. Brooks was injured in a PIRA bombing of the Baltic

Exchange on April 10, 1992. Mr. Brooks was buried under the rubble after the explosion and he

had to undergo two surgeries to remove all the glass from his body. Additionally, his ear was

severed in the attack. Although the doctor's were able to sow it back on, his hearing has been

permanently damaged and he is no longer able to engage in manual labor for extended periods of

time. Mr. Brooks is still plagued with survivor's guilt, as one of his good friends did not survive

the attack. He also suffers from paranoia and has lost interest in the day to day aspects of his life.

He is no longer involved in the lives of his grandchildren As a result of his injuries, Mr. Brooks'

wife had to leave her job to tend to and care for her husband. Mr. Brooks missed roughly ten

months of work after the attack. He retired after briefly returning to his profession, the attack left

him unable to cope with the challenges of his job.

83.    **Plaintiff Angela Joy Brooks,** born September 27, 1938, is a British national now

residing in Tiptree, England. Mrs. Brooks' husband, Plaintiff Ronald John George Brooks, was

injured in a PIRA bombing of the Baltic Exchange on April 10, 1992. Mrs. Brooks had to give

up her evening job, and eventually her day job, in order to care for her husband. The quality of

her life has since declined dramatically; her husband required constant supervision and attention.

Mrs. Brooks took anti-depressants in the period after the attack and has also had to seek professional counseling to help her cope with the situation.

84.    **Plaintiff Vanessa Howlett,** born March 15, 1962, is a British national. Ms. Howlett's father, Plaintiff Ronald John George Brooks, who was injured in a PIRA bombing of the Baltic Exchange on April 10, 1992. Mrs. Howlett's life has come under severe strain since the attack. She is currently suffering from post-traumatic stress disorder and is attending weekly counseling sessions in addition to taking anti-depressants. The PIRA bombing has also had an impact on her career, after the attack she was no longer able to work as a nurse in the intensive care unit. The constant memory of her father's serious injuries drained her ability to provide the necessary care to her patients.

85.    **Plaintiff Rachel Julie Bailey,** born May 2, 1966, is a British national residing. Ms. Bailey is the daughter of Plaintiff Ronald John George Brooks, who was injured in a PIRA bombing of the Baltic Exchange on April 10, 1992. Much like her sister, the attack had a significant impact on Mrs. Bailey's career, as she lost her ability to complete the routine tasks required of a nurse as a resulting of her sorrow, grief and shock for her father. She briefly sought professional counseling during the period immediately following the attack.

86.    **Plaintiff Margaret Casey** brings a claim on behalf of the **Estate of Thomas Casey,** born April 29, 1942, who was killed in a PIRA bombing of the Baltic Exchange on April 10, 1992.

87.    **Plaintiff Margaret Casey,** born June 13, 1948, is a British national residing in Essex County, England. Mrs. Casey's husband, Thomas Casey, was killed in a PIRA bombing of the Baltic Exchange on April 10, 1992. Mr. Casey was the primary financial advisor for his wife and four children. Mrs. Casey worked full time before the attack; however, she was unable to

continue working after her husband's death because she need to devote all of her time to her children.

88.    **Plaintiff Mark Thomas William Casey,** born March 25, 1975, is a British national residing in Hornchurch, England. Mr. Casey's father, Thomas Casey, was killed in a PIRA bombing of the Baltic Exchange on April 10, 1992. Mr. Casey was permanently scarred by the sight of his father after the attack. Thomas Casey's face was partially disfigured from the bombing; the memory of seeing his father's badly damaged corpse in the casket is seared into Mr. Casey's memory and is a constant source of pain. Mr. Casey was unable to work after his father's death, which drained all of his self-confidence and resulted in the re-emergence and exacerbation of a childhood stutter. He has also the primary financial supporter of his mother and sisters.

89.    **Plaintiff Sarah Margaret Lawrence,** born June, 25, 1973, is a British national residing in Essex County, England. Mrs. Lawrence's father, Thomas Casey, was killed in a PIRA bombing of the Baltic Exchange on April 10, 1992. Mrs. Lawrence was 18 years old and a mother of two at the time of her father's death. The attack left her emotionally traumatized at a time when she was in dire need of parental support. She is still haunted by the prospect that her father may have suffered during the final moments of his life.

90.    **Plaintiff David Geoffrey Casey,** born May 31, 1981, is a British national. Mr. Casey's father, Thomas Casey, was killed in a PIRA bombing of the Baltic Exchange on April 10, 1992.

91.    **Plaintiff Patricia Maureen Barratt** is a British national. Mrs. Barratt's brother, Thomas Casey, was killed in a PIRA bombing of the Baltic Exchange on April 10, 1992.

92.    **Plaintiff Elizabeth Casey** is a British national. Ms. Casey's father, Thomas Casey, was killed in a PIRA bombing of the Baltic Exchange on April 10, 1992.

**February 4, 1993 Crossmaglen Bombing**

93.    **Plaintiff Charles James McCart Laverty,** born September 9, 1946, is a British national residing in Northern Ireland. Mr. Laverty was injured by a PIRA motor bomb in Crossmaglen on February 4, 1993. Mr. Laverty was severely wounded in the bombing. Immediately following the attack, Mr. Laverty had to undergo major abdominal surgery and his leg required a skin graft. Mr. Laverty is no longer able to work and his wife had to quit her job to provide the full time care that he required. The situation has been a source of tremendous stress for their family, they have four children and neither parent is capable of working full time. The attack has also resulted in severe negative emotional consequences. Due to his limited ability to move; Mr. Laverty is unable to take an active role in raising his children.

94.    **Plaintiff Winifred Laverty,** born April 6, 1946, is a British national residing in Northern Ireland. Mrs. Laverty's husband, Plaintiff Charles James McCart Laverty, was injured by a PIRA motor bomb in Crossmaglen on February 4, 1993. As a result of her husband's injuries, described in the previous paragraph, Mrs. Laverty had to leave her job and drop out of school.

**March 20, 1993 Warrington Bombing**

95.    **Plaintiff Colin Parry**, born November 27, 1946, is a British national residing in Warrington, England.  Mr. Parry's son, Timothy Andrew Parry, born September 1, 1980, was killed as a result of the detonation of a PIRA bomb containing Semtex that had been placed inside a cast-iron litter container in Warrington, England on March 20, 1993.  Timothy Parry died from his injuries on March 25, 1993.  Mr. Parry and his wife went to the hospital following

the attack where they waited for three hours before being asked by a surgeon to identify personal items belonging to their son who had been in the operating room while they waited. Some time after the bombing, Mr. Parry left his job to be self-employed at a much lower rate of pay and to devote more time to establish a charity as a memorial to the two children who died as a result of the bombing. Mr. Parry has endured surgery for angina believed to be related to the bombing and its emotional aftermath. Mr. Parry has been treated for depression and post-traumatic stress disorder.

96. **Plaintiff Wendy Ann Parry**, born April 6, 1957, is a British national residing in Warrington, England. Ms. Parry's son, Timothy Andrew Parry, born September 1, 1980, was killed as a result of the detonation of a PIRA bomb containing Semtex that had been placed inside a cast-iron litter container in Warrington, England on March 20, 1993. Timothy Parry died from his injuries on March 25, 1993. Ms. Parry and her husband went to the hospital following the attack where they waited for three hours before being asked by a surgeon to identify personal items belonging to their son who had been in the operating room while they waited. After the attack, Ms. Parry felt the need to leave her job at the school her son had attended. She has had to cope with the loss of her son in addition to changes in behavior of her other children as a result of the bombing. She now works as a fundraiser for the charity established by her husband in memory of the two children killed in the Warrington bombing. She continues to suffer emotionally from the loss of her son.

97. **Plaintiff Dominic Ieuan Parry**, born October 12, 1978, is a British national residing in Warrington, England. Mr. Parry's brother, Timothy Andrew Parry, born September 1, 1980, was killed as a result of the detonation of a PIRA bomb containing Semtex that had been placed inside a cast-iron litter container in Warrington, England on March 20, 1993. Timothy

Parry died from his injuries on March 25, 1993. Mr. Parry visited his brother in the hospital the day before and the day that he died. His brother was heavily bandaged and on a ventilator. After his brother's death, Mr. Parry stopped taking his studies seriously and began behaving in various self-destructive ways including smoking and the use of drugs. He experiences mood swings and depression and has struggled to settle into any type of sustainable career. He continues to suffer emotionally from the loss of his brother.

98.     **Plaintiff Abigail Louise Parry**, born October 12, 1981, is a British national residing in Warrington, England. Ms. Parry's brother, Timothy Andrew Parry, born September 1, 1980, was killed as a result of the detonation of a PIRA bomb containing Semtex that had been placed inside a cast-iron litter container in Warrington, England on March 20, 1993. Timothy Parry died from his injuries on March 25, 1993. Ms. Parry visited her brother in the hospital the day before and the day that he died. Her brother was heavily bandaged and on a ventilator. As a result of her brother's death, Ms. Parry keeps people at arms length and does not wish to travel away from her family for fear that something will happen to them while she is gone.

99.     **Plaintiff Gaynor Horsfall**, born July 5, 1948, is a British national residing in Manchester, England. She was injured when a bomb containing Semtex that had been placed inside a cast-iron litter container exploded in Warrington, England on March 20, 1993. She was immediately transported to the hospital where she was released the following day. She suffered shrapnel wounds to her throat and lower abdomen and still retains scars from these wounds. She has been diagnosed with post-traumatic stress disorder as a result of the bombing. The stress has also negatively impacted her marriage.

100.     **Plaintiff Brian Horsfall**, born February 6, 1947, is a British national residing in Manchester, England. He is the husband of Plaintiff Gaynor Horsfall. Mr. Horsfall witnessed

the Warrington bomb explosion and the injuries to his wife first hand as he was only a short distance away. He saw his wife holding her throat with blood sifting through her fingers. When he tried to go to the hospital to find his wife, he had difficulty doing so and was devastated by the scene there. He missed approximately ten days of work caring for his wife. He continues to suffer memories from that day.

101. **Plaintiff Joan Salt**, born June 30, 1939, is a British national residing in Manchester, England. On March 20, 1993, her daughter, Bronwen Elizabeth Ann Vickers, was injured in the Warrington bomb explosion. Ms. Vickers' left leg was amputated as a result of her injuries and she lost her right knee cap as a result of the bombing. Fifteen months after the bombing, Ms. Vickers died as a result of malignant melanoma. After the bombing, Ms. Salt waited at the hospital as her daughter underwent 10.5 hours of surgery. Ms. Salt missed significant periods of work after her daughter was injured in the bombing. She continues to suffer emotionally from the injuries and subsequent death of her daughter.

102. **Plaintiff Andrew Cornes**, born April 24, 1975, is a British national residing in Warrington, England. On March 20, 1993, Mr. Cornes was injured as a result of the Warrington bomb explosion. Mr. Cornes suffered a laceration to his lower left leg. He also had shrapnel wounds to his leg, buttocks, lower back, and head. He underwent surgery for these ailments approximately 12 hours after arriving at the hospital in Warrington. He has had two surgeries and underwent extensive physical therapy; however, he remains self-conscious about scarring on his leg and the emotional trauma has not gone away. He is reminded of the event when thunderstorms pass or when he hears about other bombings.

103. **Plaintiff Stephen Lee,** born May 25, 1971, is a British national residing in Warrington, England. Mr. Lee was severely injured as a result of the detonation of a PIRA bomb

containing Semtex that had been placed inside a cast-iron litter container in Warrington, England on March 20, 1993.  Mr. Lee was forced to undergo surgery for shrapnel wounds in his back and on his left leg and he continues to suffer from the shakes and chronic panic attacks. He has been forced to drive whenever he leaves his house, as he often is struck with intense feelings of anxiety while he is out in public and does not feel safe unless he can leave within a moment's notice.

104.     **Plaintiff Steven Clague,** born August 28, 1971, is a British national residing in Warrington, England. Mr. Clague was injured as a result of the detonation of a PIRA bomb containing Semtex that had been placed inside a cast-iron litter container in Warrington, England on March 20, 1993. Mr. Clague suffered extensive injuries to his arms and legs, including a severed right tricep, nerve damage on his right arm, and one-inch shrapnel wounds on his left arm and left leg. As a result, Mr. Clague was forced to have four different operations on his arm and his left leg required an eventual skin graft. He still suffers from arthritis in his right arm and he was also diagnosed with post traumatic stress disorder. He has been in therapy for roughly five years, and missed roughly eight years of work due to the attack. He is still suffering from chronic panic attacks and he takes anti-depressants on a daily basis. Additionally, his wife also suffered a concussion in the bombing.

105.     **Plaintiff Adam Michael Pugh,** born March 7, 1990, is a British national residing in Cheshire, England.  Mr. Pugh was injured as a result of the detonation of a PIRA bomb containing Semtex that had been placed inside a cast-iron litter container in Warrington, England on March 20, 1993.  Mr. Pugh has suffered severe emotional trauma as a result of the attack and his childhood has been significantly disrupted. He no longer feels comfortable in crowded places and is frightened of loud noises. He is consistently plagued by night terrors and he is still not yet

able to perform trivial, day to day functions. Furthermore, his mother, Angela Fish, was injured in the bombing.

106. **Plaintiff Angela Marie Fish,** born October 10, 1966, is a British national residing in Cheshire, England. Ms. Fish was injured as a result of the detonation of a PIRA bomb containing Semtex that had been placed inside a cast-iron litter container in Warrington, England on March 20, 1993. Ms. Fish suffered severe burns on both of her legs. Additionally, her son, Plaintiff Adam Michael Pugh, described in the previous paragraph, was also emotionally traumatized by the bombing.

107. **Plaintiff Rachel Louise Williams**, born April 25, 1979, is a British national. Ms. Williams was injured as a result of the detonation of a PIRA bomb containing Semtex that had been placed inside a cast-iron litter container in Warrington, England on March 20, 1993. She suffered a shoulder injury after being thrown against a wall when the bomb exploded. While her physical injury was short term, doctors have told Ms. Williams that the emotional injuries resulting from the attack will affect her for the rest of her life. Ms. Williams has been diagnosed with bipolar disorder and manic depression and regularly suffers from stress, anxiety and panic attacks.

108. **Plaintiff Jason Lee Roberts,** born April 11, 1973, is a British national residing in Warrington, England. He was injured when an IRA bomb containing Semtex that had been placed inside a cast-iron litter container exploded in Warrington, England on March 20, 1993. As a result of the bombing, Mr. Roberts had to undergo surgery to remove metal from his right ankle, right foot and left leg. The doctors have told him that it is unlikely that he will ever regain any feeling in his foot or ankle. He has been unable to work since 2001, when his injuries forced

him to seek additional medical treatment, and he had to abandon his hopes of playing professional football. Moreover, Mr. Roberts is plagued with feelings of self-pity and insecurity.

109.    **Plaintiff Lynsey Hazel Southworth**, born March 21, 1982, is a British national residing in Warrington, England who sustained injuries to her legs as a result of the Warrington bomb explosion. She received medical treatment on the scene 30 minutes after the attack and was taken to the hospital where she stayed for six days. The attack not only caused Ms. Southworth to miss ten days of school, but it also ruined her aspiration of becoming a model due to large scars that remain on her legs. After the attack, Ms. Southworth found it difficult to go shopping at the town center where the bombing occurred.

110.    **Plaintiff Sharon Lorraine Southworth,** born July 27, 1961, is a British national. Mrs. Southworth's daughter, Lynsey Hazel Southworth, was injured when an IRA bomb containing Semtex that had been placed inside a cast-iron litter container exploded in Warrington, England on March 20, 1993. Mrs. Southworth was four month pregnant at the time of the attack, which was a tremendous source of emotional stress and anguish for her and her family.

111.    **Plaintiff Marie Comerford** brings a claim on behalf of the **Estate of Jonathon Ball**, who was killed when an IRA bomb containing Semtex that had been placed inside a cast-iron litter container exploded in Warrington, England on March 20, 1993. Ms. Comerford suffered severe emotional stress when she had to identify the body of her son at the morgue the day after the attack occurred.

112.    **Plaintiff Marie Comerford**, born May 30, 1955, is a British national residing in Warrington, England. She suffered emotional injuries as a result of the Warrington bomb explosion which took the life of her son. Ms. Comerford was nearby when the attack occurred.

As a result of the bombing, she is fearful of going back to the town center in Warrington, England. Ms. Comerford has been diagnosed with depression and is taking medication for her condition.

113. **Plaintiff Claire Elizabeth Cooper**, born April 26, 1978, is a British national residing in Warrington, England who sustained physical and psychological injuries when the bomb was detonated at the town center in Warrington, England. Ms. Cooper was taken to the hospital due to the swelling and bruising of the right side of her chest caused by shrapnel punctures. She initially experienced deafness and still currently suffers from hearing problems. Her psychological injuries include anxiety when leaving home and fear of loud noises.

**May 22, 1993 Portadown Bombing**

114. **Plaintiff James Stewart Kane,** born December 17, 1961, is a British national residing in Portadown, Northern Ireland. Mr. Kane was injured by a PIRA Semtex car bomb on May 22, 1993, in Portadown, Ireland that killed six people. Mr. Kane suffered a broken fibula and Tibia on his left leg as a result of the attack. He also missed eleven month of work and had to cancel his dream to trip to Sri Lanka.

**October 23, 1993 Shankill Road, Belfast Bombing**

115. **Plaintiff Raymond Elliott**, born May 8, 1943, is a British national residing in Belfast, Northern Ireland. Mr. Elliott was approximately 50 yards away when a PIRA bomb containing Semtex was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Mr. Elliott immediately went to provide first aid. He climbed through the rubble and saw what looked like a slaughterhouse with human body parts strewn about. As a result of the bombing, Mr. Elliott has suffered severe post-traumatic stress disorder and has been in the care of doctors for psychological treatment ever since the bombing. He recognizes that he is a different person

since that day and that his family is concerned that he will harm himself if he is left alone. His wife looks after him daily. He continues to suffer severely as a result of the bombing.

116.    **Plaintiff Doreen Elliott**, born August 3, 1943, is a British national residing in Belfast, Northern Ireland. Ms. Elliott is the wife of Raymond Elliott who was injured when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Two PIRA members were implicated in the bombing: Sean Kelly who was later sentenced to life imprisonment for his role in the bombing, and Thomas Begley who was killed in the bombing. Ms. Elliott has seen a total change in her husband who now requires almost total care due to the results of post-traumatic stress disorder on Raymond Elliott. Ms. Elliott claims that life since the bombing has required that she provide total care for her husband while he now treats her poorly and no longer trusts her as a result of emotional disorders resulting from the bombing.

117.    **Plaintiff Stephen Ernest Elliott**, born March 18, 1965, is a British national residing in Portadown, Northern Ireland. Mr. Elliott is the son of Raymond Elliott who was injured when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Mr. Elliott was nearby when the bomb blast occurred and went to the scene to help. Mr. Elliott described the scene as chaotic with bodies being passed out of the wreckage. Mr. Elliott has seen the change in his father from a mild and kind man to an aggressive, angry and depressed man who no longer resembles the father he once knew.

118.    **Plaintiff James Elliott**, born May 23, 1962, is a British national residing in Belfast, Northern Ireland. Mr. Elliott is the son of Raymond Elliott who was injured when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. At the time of the bomb blast, Mr. Elliott was in a shop

approximately 100 yards away.  He immediately came to the scene where he witnessed the destruction of the shop and people covered in blood.  Mr. Elliott was an accomplished boxer at the time of the bombing, and his father had helped him train.  After the bombing, his father no longer had any interest in the sport, so James abandoned the sport.  Mr. Elliott has seen the change in his father from a mild and kind man to an aggressive, angry and depressed man who no longer resembles the father he once knew.

119.    **Plaintiff Eileen Ray Morrison**, born May 19, 1966, is a British national residing in Belfast, Northern Ireland.  Ms. Morrison is the daughter of Raymond Elliott who was injured when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993.  Ms. Morrison heard the bomb blast having driven past the location minutes earlier.  Prior to the bombing, Ms. Morrison's father would help her with her children as she was a single mother.  After the bombing, she states that he was emotionally dead and no longer wanted anything to do with his family.  She has suffered a breakdown as a result of the bombing.  She suffers from chronic depression and stress and continues to seek therapy.

120.    **Plaintiff Elizabeth Hamilton Morrison** brings a claim on behalf of the **Estate of Michael Donnell Morrison**.  Michael Donnell Morrison was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993.

121.    **Plaintiff Elizabeth Hamilton Morrison**, born April 12, 1935, is a British national residing in Belfast, Northern Ireland.  Ms. Morrison is the mother of Michael Donnell Morrison, born August 9, 1966, who was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993.  Ms. Morrison received a call shortly after the bombing and went to the scene.  Also killed in the bombing were

Ms. Morrison's daughter-in-law, Evlyn Baird, and her granddaughter, Michelle Baird. Ms. Morrison has experienced bouts of depression and bad nerves as result of the bombing. She continues to suffer from the loss of her son, his wife, and her granddaughter.

122. **Plaintiff James Alexander Morrison**, born March 5, 1959, is a British national residing in Belfast, Northern Ireland. Mr. Morrison is the brother of Michael Donnell Morrison, born August 9, 1966, who was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Mr. Morrison received a phone call after the accident requesting that he go to the morgue to identify his brother's body. He then traveled to the site of the bombing and saw the destruction caused by the bomb. Mr. Morrison's sister-in-law, Evlyn Baird, and his niece, Michelle Baird, were also killed in the bombing. Mr. Morrison has sought counseling due to flashbacks of seeing his brother's body at the morgue. He has resorted to drinking to ease his pain and has developed hypertension as a result of the bombing. He continues to suffer from the loss of his brother.

123. **Plaintiff Marcus Winston Morrison**, born April 12, 1970, is a British national residing in Belfast, Northern Ireland. Mr. Morrison is the brother of Michael Donnell Morrison, born August 9, 1966, who was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. At the time of the bombing, Mr. Morrison's car had broken down as he was on his way to Shankill Road. When he heard the blast, he went to the site of the bombing. He is haunted by flashbacks of seeing his brother in the morgue. Mr. Morrison's sister-in-law, Evlyn Baird, and his niece, Michelle Baird, were also killed in the bombing. Mr. Morrison has been diagnosed with depression and finds it difficult to perform daily tasks as a result. He continues to suffer from the loss of his brother.

124.    **Plaintiff Joanne Isobel Heather Morrison**, born January 6, 1961, is a British national residing in Belfast, Northern Ireland. Ms. Morrison is the sister of Michael Donnell Morrison, born August 9, 1966, who was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Ms. Morrison was walking up Shankill Road at the time of the bombing and witnessed the carnage at the scene of the bombing. Ms. Morrison's sister-in-law, Evlyn Baird, and her niece, Michelle Baird, were also killed in the bombing. Ms. Morrison has been diagnosed with depression and post-traumatic stress disorder. She continues to receive treatment and is taking medication. She has also turned to alcohol to ease some of the pain from the loss of her brother. She continues to suffer from the loss of her brother.

125.    **Plaintiff Lisa Elizabeth Rhonda Morrison**, born September 17, 1974, is a British national residing in Belfast, Northern Ireland. Ms. Morrison is the sister of Michael Donnell Morrison, born August 9, 1966, who was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Ms. Morrison went to the scene of the attack soon after it occurred. Ms. Morrison's sister-in-law, Evlyn Baird, and her niece, Michelle Baird, were also killed in the bombing. She has battled depression as a result of the bombing and takes medication for the depression. She continues to suffer from the loss of her brother.

126.    **Plaintiff April Morrison**, born April 1, 1958, is a British national residing in Belfast, Northern Ireland. Ms. Morrison is the sister of Michael Donnell Morrison, born August 9, 1966, who was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Ms. Morrison's sister-in-law, Evlyn

Baird, and her niece, Michelle Baird, were also killed in the bombing. She battles depression as a result of the bombing. She continues to suffer from the loss of her brother.

127.  **Plaintiff Philip Stephen Morrison**, born November 3, 1972, is a British national residing in Belfast, Northern Ireland. Mr. Morrison is the brother of Michael Donnell Morrison, born August 9, 1966, who was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Mr. Morrison's sister-in-law, Evlyn Baird, and his niece, Michelle Baird, were also killed in the bombing. He continues to suffer from the loss of his brother.

128.  **Plaintiff Diane Lyn Morrison** is a British national. Ms. Morrison is the sister of Michael Donnell Morrison, born August 9, 1966, who was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Ms. Morrison's sister-in-law, Evlyn Baird, and her neice, Michelle Baird, were also killed in the bombing. She continues to suffer from the loss of her brother.

129.  **Plaintiff Albert Bloomer**, born March 17, 1948, is a British national residing in Belfast, Northern Ireland. Mr. Bloomer is the brother-in-law of Michael Donnell Morrison, born August 9, 1966, who was killed when a bomb containing Semtex placed by the PIRA was detonated in a shop on Shankill Road in Belfast on October 23, 1993. Mr. Bloomer was walking up Shankill Road at the time of the bombing and witnessed the carnage at the scene of the bombing. He also went to the hospital morgue to identify his brother-in-law. Mr. Bloomer suffers from flashbacks and has resorted to drinking to ease his pain and loss. He continues to suffer from the loss of his brother-in-law.

130.  **Plaintiff Brian McKee**, born May 21, 1955, is a British national residing in Belfast, County Antrim, Northern Ireland. Mr. McKee is the husband of deceased Wilma

McKee, a British national born April 18, 1955, who was killed as a result of the detonation of a bomb containing Semtex placed by the PIRA in a shop on Shankill Road in Belfast on October 23, 1993. Mr. McKee rushed to the scene of the attack immediately after the bombing where he saw many dead bodies and witnessed massive panic and fear. Ms. McKee was rushed to the hospital's intensive care unit, but Mr. McKee was told by a doctor that nothing could be done to save her life. As a result of Ms. McKee's death, Mr. McKee has had to take on her household duties and the responsibility of raising their two sons on his own. He has also suffered emotional damages including severe depression due to living without the company of his wife and worrying about how his two sons are going to manage without their mother.

131.    **Plaintiff Philip John McAllen Armour**, born May 21, 1955, is a British national residing in Belfast, Northern Ireland. Mr. Armour is the father of deceased Wilma McKee who died at the hospital as a result of the detonation of a bomb containing Semtex placed by the PIRA in a shop on Shankill Road in Belfast on October 23, 1993. He continues to suffer emotionally from the loss of his daughter.

132.    **Plaintiff Michelle Joy Keery** brings a claim on behalf of the **Estate of George Williamson**, born July 1930, who died at a hospital as a result of the detonation of a bomb containing Semtex placed by the PIRA in a shop on Shankill Road in Belfast on October 23, 1993. At the time of his death, Mr. Williamson was employed by Hygenie Plus as a van driver.

133.    **Plaintiff Michelle Joy Keery** brings a claim on behalf of the **Estate of Gillian Noreen Williamson**, born May 11, 1946, who was killed as a result of the detonation of a bomb containing Semtex placed by the PIRA in a shop on Shankill Road in Belfast on October 23, 1993. At the time of her death, Ms. Williamson was employed by Lisburn Health Center.

134.   **Plaintiff Michelle Joy Keery**, born January 27, 1967, is a British national residing in Ballyrowey, County Down, Northern Ireland.  Ms. Keery is the daughter of the deceased George Williamson and the deceased Gillian Noreen Williamson.  She was informed by police that her father had been injured in the explosion and was taken to the hospital, but when she arrived to see him, he had already died.  Her mother's body was not immediately found after the explosion.  As a result of the death of both of her parents, Ms. Keery has been diagnosed with chronic post-traumatic stress disorder and depression.  Due to illness caused by her stress, Ms. Keery was forced to retire early from work and has been on medication for the past 13 years.  She has also attended therapy sessions for the past 10 years, and doctors have informed her that her condition is unlikely to change in the future.  Ms. Keery has also lost all desire to socialize.

**May 13, 1994 Lurgan Car Bombing**

135.   **Plaintiff Jennifer Anthony** brings a claim on behalf of the **Estate of John Frederick Anthony** who was killed when a bomb containing Semtex that had been placed under his car was detonated.  Mr. Anthony, born April 6, 1956, was killed in Lurgan, County Armagh, Northern Ireland.  The PIRA was responsible for the attack on Mr. Anthony and his family.  At the time of his death, Mr. Anthony was employed by the Police Authority for Northern Ireland in an administrative capacity.  Mr. Anthony was pronounced dead on the scene.

136.   **Plaintiff Ann Anthony** also brings this claim on behalf of her minor child, **S.A.**, a British national who was injured in the Skoda automobile on May 13, 1994, when the bomb containing Semtex that killed her father was detonated.  As a result of the bombing, S.A. was thrown from the vehicle and suffered shrapnel injuries to her head and legs with shrapnel being embedded very close to her brain and elsewhere within her body.  Following the bombing, she

laid in a coma. She also suffered two broken legs in addition to other trauma associated with witnessing her father's death and the injuries sustained by her mother and brother. She was three years old at the time of the bombing.

137. **Plaintiff Ann Anthony**, born May 15, 1963, is a British national residing in Lurgan, County Armagh, Northern Ireland. Ms. Anthony was injured when the car in which she was traveling with her husband and two children exploded as the result of a booby-trap bomb containing Semtex placed under the automobile by the PIRA. As a result of the bombing, Ms. Anthony suffered shrapnel injuries in her elbow. Her hearing in her right ear was also compromised. She was hospitalized for four days. In addition to her physical injuries, Ms. Anthony has sought psychological treatment for her bereavement at the loss of her husband. She was also forced to endure the pain and suffering of watching as her daughter, S.A., laid in a comatose state following the bombing with shrapnel embedded close to her brain. She lost her job and has had the sole responsibility of caring for her two children as a result of the death of her husband. As a result of the bombing, she has been unable to work.

138. **Plaintiff Gareth Anthony**, born March 22, 1985, is a British national residing in Lurgan, County Armagh, Northern Ireland. In the bombing of May 13, 1994, Mr. Anthony, a passenger in the automobile, suffered shrapnel injuries to his face and legs in addition to other trauma associated with witnessing his father's death and the injuries sustained by his mother and sister. He was nine years old at the time of the bombing.

139. **Plaintiff Sarah Jane Anthony**, born May 31, 1931, is a British national residing in Lurgan, County Armagh, Nothern Ireland, and was the mother of the deceased John Frederick Anthony. She heard the explosion and her grandson Gareth came to her house with his face covered in blood and shrapnel. The police would not let her near the car that contained her son's

body. Also injured in the attack were her daughter-in-law, Ann Anthony, and her grandchildren, Gareth Anthony and S.A., a minor child. She has continued to mourn for her son. She takes prescription medication to help her sleep as a result of the bombing. She continues to suffer emotionally from the loss of her son and the injuries sustained by her daughter-in-law and grandchildren.

140.    **Plaintiff Karen McCallum**, born February 24, 1963, is a British national residing in Lurgan, County Armagh, Nothern Ireland, and was the sister of the deceased John Frederick Anthony. Ms. McCallum was informed of her brother's death by her mother who telephoned her at work. Ms. McCallum was unable to work for approximately five or six months following the attack due to an increase in her blood pressure as a result of the loss of her brother. She attended multiple therapy sessions to cope with the loss of her brother.

141.    **Plaintiff William George Anthony**, born April 6, 1956, is a British national residing in Lurgan, County Armagh, Northern Ireland, and was the twin brother of the deceased John Frederick Anthony. Mr. Anthony missed approximately one to two weeks of work as he served as the family liaison with the doctors attending to his niece, S.A.'s, injuries. He had lost his brother and felt he needed to be with his niece in his brother's place. As a further result of his brother's death, Mr. Anthony serves as the financial trustee for his niece and nephew. He finds it difficult to speak of his emotions as a result of his brother's death.

142.    **Plaintiff Robert James Anthony**, born June 22, 1950, is a British national residing in Lurgan, County Armagh, Northern Ireland, and was the brother of the deceased John Frederick Anthony. He was informed of his brother's death by his wife who was in close proximity to the blast. Mr. Anthony's health has deteriorated as a result of his brother's death including high blood pressure, angina, and diabetes related to the stress of his brother's death.

Mr. Anthony has also changed jobs for fear that his prior position with the security forces might result in his being killed like his brother.

143.    **Plaintiff Amanda Jayne Delaney**, born September 10, 1968, is a British national resident in Essex in England, and was the sister of the deceased John Frederick Anthony. She heard the bomb detonate, and her nephew, Plaintiff Gareth Anthony, came to her house covered in blood and shrapnel and told her what happened. As a qualified nurse, Ms. Delaney went to the scene only to see her brother's mutilated body within the exploded automobile. As a nurse, she was traumatized by the smell of burned flesh from the bombing. She continues to suffer from the loss of her brother.

144.    **Plaintiff Avril Joan Anthony**, born March 12, 1972, is a British national resident in Lurgan, County Armagh, Northern Ireland, and was the sister of the deceased John Frederick Anthony. She heard the bomb detonate, and her nephew, Plaintiff Gareth Anthony, came to her house covered in blood and shrapnel and told her what happened. Following the bombing, she missed approximately one month of work. She continues to suffer from the loss of her brother.

**February 9, 1996 London Docklands Bombing**

145.    **Plaintiff Gemma Berazzag**, born March 13, 1958, is a British national residing in London, England. On February 9, 1996, her husband, Zaoui Berazzag, and two of her children, Farid Berazzag and Layla Berazzag, were injured when a PIRA bomb containing Semtex was detonated in the London Docklands area on February 2, 1996. Ms. Berazzag heard the explosion and ran to the scene and witnessed what she called total devastation. She went to the hospital where she was initially told that her husband was dead and where her children were being operated upon. Her husband suffered brain damage from a head injury resulting in his loss of eyesight. He also experienced a back injury. He now struggles to walk, suffers strokes, is in

constant pain, and his condition will only deteriorate. Ms. Berazzag provides total care for her husband as a result of the bombing. Farid and Layla Berazzag both experienced shrapnel injuries, but they have been able to recover. Ms. Berazzag is unable to work outside the home due to her care for her husband. Her dream of returning to Morocco to live has been shattered. She has been diagnosed with post-traumatic stress disorder and depression, and she is currently takes anti-depressant medication. Her suffering continues as her husband is no longer the same man he was before the bombing.

146.    **Plaintiff Rajaa Berazzag**, born October 1, 1986, is a British national residing in London, England. On February 9, 1996, her father, Zaoui Berazzag, and her two siblings, Farid Berazzag and Layla Berazzag, were injured when a PIRA bomb containing Semtex was detonated in the London Docklands area on February 2, 1996. Ms. Berazzag's childhood was taken from her. Her father required 24-hour care after his injuries and, when she was able to do so, Ms. Berazzag was required to work outside the home to provide for the family because her father could not work, and her mother had to stay home with her father. She continues to suffer emotionally from the effect the bombing had upon her family.

147.    **Plaintiff Maurice Joseph Healy**, born January 27, 1943, is a British national residing in London, England. Mr. Healy was injured when a PIRA bomb containing Semtex was detonated in the London Docklands area on February 9, 1996. Mr. Healy was somewhat trapped in the disaster area, so he attempted to help others escape danger including Farid Berazzag and Zaoui Berazzag. Mr. Healy suffered internal head injuries, shrapnel wounds to his upper body, and impairment in his hearing which continues to this day. He has been diagnosed with depression and post-traumatic stress disorder and missed work for approximately one and a half

years. He claims his family has not been the same since the bombing based on his emotional problems resulting from the bombing.

**June 15, 1996 Manchester City Centre Bombing**

148.    **Plaintiff Shafi Uz Zaman**, born July 9, 1946, is a British national residing in Manchester, England. He was injured when a bomb containing Semtex placed by the PIRA was detonated in the City Centre in Manchester, England. Mr. Zaman received treatment approximately 30 minutes after the bomb blast. He suffered severe facial scarring from flying glass and debris, tendon and nerve damage to his index finger, causing it not to function properly, and other injuries to his head, back, leg, and hand from flying glass and debris. He received approximately 50-60 stitches to his head, face, and back, and some of the glass was never able to be removed. He was self-employed and has been unable to go back to work. He continues to suffer emotionally from the attack.

149.    **Plaintiff Naheed Zaman**, born July 16, 1948, is a British national and resident of Manchester, England. She is the wife of Plaintiff Shafi Zaman who was injured as a result of the PIRA's bombing of the Manchester City Centre on June 15, 1996. Ms. Zaman traveled to the hospital, when she saw her husband, his face was covered with blood. Because he could not mentally bear the thought of working in the City Centre, Shafi Zaman was forced to sell his business located in the City Centre, so Plaintiff Naheed Zaman no longer had a source of income. Though she now runs her own business because her husband is still not mentally or physically able to do so, she has suffered emotional injury as she is always worried that something else is going to happen.

150.    **Plaintiff Rohi Zaman**, born August 25, 1982, is a British national and resident of Manchester, England. She is the daughter of Plaintiff Shafi Zaman who was injured as a result

of the PIRA's bombing of the Manchester City Centre on June 15, 1996. She learned of her father's injuries when she saw pictures on him on Britain's Sky News. Because her father was forced to sell his business following the bombing, her family was without any source of income for nearly one year until her mother was able to locate her own business.

151.    **Plaintiff Shiraz Wasim Zaman**, born June 3, 1979, is a British national and resident of Manchester, England. Because his father was forced to sell his business following the bombing, his family was without any source of income for nearly one year until his mother was able to locate her own business.

152.    **Plaintiff Michael John Lee,** born March 26, 1952, is a British national residing in Wolverhampton, England. Mr. Lee's daughters Linda Jane Lee and Victoria Lee, were injured when a bomb containing Semtex placed by the PIRA was detonated in the City Centre in Manchester, England on June 15, 1996. Although they only suffered minor physical injuries in the bombing, both his daughters have suffered severe psychological anguish since the incident. As a result, Mr. Lee has been burdened with the task of serving as both primary caregiver and financial supporter of his wife and daughters. Mr. Lee's concerns for his family have impaired his ability to focus on his job and he was forced to drop of night school. He has since been diagnosed with depression and he and his family have been forced to seek counseling; the overall effect of which has put a strain on his marriage.

153.    **Plaintiff Linda Jane Lee** is a British national residing in Wolverhampton, England. She, and her sister, Victoria Lee, were injured when a bomb containing Semtex placed by the PIRA was detonated in the City Centre in Manchester, England on June 15, 1996. Ms. Lee sustained cuts on her legs, but suffered serious psychological injury requiring counseling.

154.    **Plaintiff Victoria Lee** is a British national residing in Wolver-Hampton, England who sustained severe psychological trauma requiring therapy as a result of the bombing on June 15, 1996.

155.    **Plaintiff Susan Lee** is a British national and brings a claim as the mother of Linda Lee and Victoria Lee.    Ms. Lee has also suffered severe psychological trauma as a result of her daughters' injuries from the attack.

156.    **Plaintiff Julian Sorfleet**, born in November 6, 1967, is a British national.  Mr. Sorfleet was injured when a bomb containing Semtex placed by the PIRA was detonated in the City Centre in Manchester, England on June 15, 1996.  He suffered hearing loss in his left ear and torn back and shoulder muscles as a result of the June 15, 1996 attack.  Mr. Sorfleet was diagnosed with depression and took medication for the condition for ten years.  He also attended therapy sessions for two years and experienced problems socializing due to anxiety over the possibility of future attacks.  Mr. Sorfleet missed a total of six months of work and was later fired due to mental health problems that were triggered by the attack.

157.    **Plaintiff Barry Ronald Laycock**, born July 27, 1939, is a British national residing in Mirfield, England.  Mr. Laycock was injured when a bomb containing Semtex placed by the PIRA was detonated in the City Centre in Manchester, England on June 15, 1996.  He suffered injuries to his lower back causing difficulty in walking and standing due to spasms associated with his back pains.  His condition will only worsen.  He has been diagnosed with post-traumatic stress disorder as a result of the bombing and has been medicated for this disorder since the bombing.  He has been unable to work since the bombing, and he suffers nightmares and flashbacks regularly.

158.    **Plaintiff Eve Lynne Beresford,** born October 10, 1943, is a British national residing in Carnforth, Lancashire. Mrs. Beresford was injured by a PIRA bomb containing on June 15, 1996 in Manchester, England. Her private residences, and all of her possessions, were destroyed in the attack. Moreover, both her knees were shattered when she was thrown to the pavement by the blast of the bomb. Her doctors have told her that she will eventually need knee replacement surgery but she will never regain full use of her legs. She can walk only short distances, on crutches, before she is overcome by an unbearable pain in her legs. She has lost her independence and was also diagnosed with Post Traumatic Stress Disorder. She has recently started seeing a psychotherapist and has missed out on roughly thirteen years of work. Since the accident, she has become emotionally withdrawn, socially isolated and has spent almost all of her savings. Her mother and brother, both of whom were financially dependent upon her, have also suffered as a result of this bombing. More specifically, Mrs. Beresford was unable to pay for a cataracts operation for her mother.

## DEFENDANTS

### I.    THE SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA

159.    Defendant The Socialist People's Libyan Arab Jamahiriya ("Libya") is a foreign state within the meaning of 28 U.S.C. § 1391(f) located on the Mediterranean coast of North Africa.

160.    Libya has been designated since 1979 as a foreign state that sponsors terrorism within the meaning of the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and the Foreign Assistance Act of 1961, 22 U.S.C. § 2371(b). Libya has long organized, instigated, assisted and participated in terrorist acts in other States and has provided material aid and

assistance in the perpetration of such activities by others, including the PIRA, particularly activities directed against the United States and other targets in Western nations. Libya has also been found to be liable as a state sponsor of international terrorism under 28 U.S.C. § 1605(a)(7) in various cases before this Court.

161.    Moreover, as a result of the extensive financial and technological assistance and aid that Libya provided to the PIRA, the PIRA had the opportunity to use its resources to procure weapons from third and fourth parties to a degree that otherwise would have been impossible, thus rendering Libya not simply another terrorist donor but rather an operational necessity within the PIRA. Therefore, Libya's culpability extends not only to the PIRA attacks that involved weapons and explosives it received directly from Libya, or attacks that were directly financed by money given to the PIRA by Libya, but also to all of the attacks carried out by the PIRA during the time window specified in this Complaint.

162.    To carry out its policy of support for terrorist insurgent groups, such as the PIRA, Libya has used government organizations including intelligence ministries, the military, special groups and various types of covert entities which are part of the government and are directly answerable to, and receive instructions from, the regime in power.

163.    Officials within the Libyan Government have also played an integral role in equipping and supporting the PIRA through the facilitation of the sales of ammunition, arms, explosives, and explosive components. The Libyan Government has also provided the PIRA with military training, a base of operations within the territory of Libya, financial support, public support, and encouragement.

## II.    LIBYAN EXTERNAL SECURITY ORGANIZATION A/K/A JAMAHIRIYA SECURITY ORGANIZATION

164.    Defendant Libyan External Security Organization, a/k/a Jamahiriya Security Organization (the "JSO"), is the Libyan intelligence service through which Libya conducted acts of extrajudicial killing, aircraft sabotage and other acts of terrorism, including the acts described herein.

165.    The JSO provided overt assistance to the PIRA through its leadership and through its individual agents and officers including, but not limited to, Defendants Abdullah Senoussi, Musa Kusa, Nasser Ali Ashour, and Khalifa Ahmed Bazelya.

### III.    COLONEL MUAMMAR QADHAFI

166.    Defendant Colonel Muammar Qadhafi ("Qadhafi") has served as the leader of Libya since 1969 when he led a successful coup d'état against the prior government.  Qadhafi holds no public office or title; however, he is referred to by the phrases "Brotherly Leader and Guide of the Revolution" and "Guide of the First of September Great Revolution of the Socialist People's Libyan Arab Jamahiriya."

167.    Qadhafi has been intimately involved in the Libyan policy of arming such paramilitary groups as the PIRA thus making it possible for these groups to engage in acts of terrorism against Western targets including both the American and Alien Plaintiffs in this action.

168.    Qadhafi has publicly announced Libya's involvement in the provision of support both militarily and financially to the PIRA.

### IV.    ABDULLAH SENOUSSI

169.    Defendant Abdullah Senoussi ("Senoussi") is the brother-in-law of Defendant Qadhafi.

170.    At all relevant times, Senoussi served as the *de facto* leader of Libyan intelligence, as head of external operations of the Libyan special forces, in command of all

Libyan embassies worldwide and their personnel, was answerable only to Defendant Qadhafi, and without whose knowledge and approval, the sale by Libya to the PIRA of arms, ammunition, and explosives including, but not limited to, Semtex, would not have occurred.

171.    Written charges were filed against Senoussi in France for his involvement in the bombing of UTA Flight 772 en route from Brazzaville in the Congo to Paris. Senoussi was later convicted, *in absentia*, for his role in the bombing of UTA Flight 772 resulting in the deaths of 170 individuals aboard.

172.    Defendant Nasser Ali Ashour, who dealt directly with PIRA leadership in establishing the sale and provision of arms, ammunition, and explosives including, but not limited to, Semtex, was answerable directly to Senoussi.

## V.    MUSA KUSA

173.    Defendant Musa Kusa ("Kusa") previously served as the Secretary of the Libyan People's Bureau in London.

174.    On June 13, 1980, Kusa was declared *persona non grata* after he claimed, during an interview from the embassy steps, that he approved the recent assassination of two Libyan exiles and that the Libyan government was "seriously thinking of cooperating with the IRA if the British Government continues to support those Libyans who are hiding here."

175.    Prior to his expulsion from Britain, Kusa orchestrated a brutal wave of assassinations directed at Libyan dissidents in Europe and Beirut. More specifically, Kusa approved the killing of a BBC World Service Journalist, Mohamed Mustafa Ramadan, outside Regent's Park Mosque and a Libyan lawyer named Mahmud Abu Salem Nafa.

176.    The Department of State's annual report, Patterns of Global Terrorism, outlines Kusa's role Libya's terrorist support infrastructure:

The Anti-Imperialism Center (AIC) -- also known as Mathaba -- is used by the Libyan Government to support terrorist networks and thus plays an important role in Gadhafi's terrorism strategy. Established in 1982 to support 'liberation and revolutionary groups,' the AIC has sponsored a number of stridently anti-Western conferences in Tripoli. At the same time, the AIC's mission is to identify and recruit revolutionaries for ideological and military training in Libya. During their training at AIC camps individuals are selected for advanced training, including in weapons and explosives, and indoctrination. The AIC is headed by Musa Kusa, a Gadhafi confidant who is also Libya's Deputy Foreign Minister. With representatives in many Libyan embassies worldwide, the AIC runs its own independent clandestine operations and disburses payments to terrorist, insurgent, and subversive groups.

177.    Defendant Kusa is also wanted in France for his connection to the downing of a French DC-20 of the UTA airline in 1989. One-hundred and seventy passengers were killed in the attack.

## VI.    NASSER ALI ASHOUR

178.    Defendant Nasser Ali Ashour ("Ashour") has served as a top member in the office of Libyan Intelligence.

179.    Ashour has been intimately involved in the Libyan policy of arming such paramilitary groups as the PIRA thus making it possible for these groups to engage in acts of terrorism against Western targets including both the American and Alien Plaintiffs in this action.

180.    In November 1989, French Investigative Judge Jean-Louis Bruguiere issued an international arrest warrant through the International Police Commission (Interpol) for Ashour citing his involvement with five PIRA members who were caught smuggling weapons aboard the *Eksund* ship on February 27, 1987. Irish and French officials traced the weapons back to Ashour and several other high-ranking individuals within the Libyan Government.

181.    Ashour was actively involved in assisting and paying smugglers of weapons into Ireland on behalf of the PIRA. On multiple occasions, he was aboard the ships sent from Libya to transport the weapons and explosives to the smugglers' boats.

## VII.    KHALIFA AHMED BAZELYA

182.    Defendant Khalifa Ahmed Bazelya ("Bazelya") was the former head of the Libyan interest section in Great Britain.

183.    Bazelya was intimately aware of, and involved in, the transfer of material support and resources to the PIRA which he claimed often took place in airports in Tripoli or elsewhere with the exchange of identical suitcases.

184.    In the early 1980s, Bazelya served as the Libyan cultural attaché in London during which time he developed extensive contacts in Ireland including with the PIRA.

185.    Bazelya was expelled from London in 1995 after a Libyan dissident was killed and Bazelya was implicated in involvement in the murder.

186.    Bazelya was also involved, while in London, in an alleged plot to recruit a Libyan nuclear scientist on orders from Defendant Kusa.

## FACTS OF THE CASE

187.    Beginning in 1972, Defendant Libya established contacts with the PIRA which, in the subsequent twenty-five (25) years, grew into a support apparatus provided by Libya to the PIRA.

188.    Upon information and belief, between 1972 and 1997, Libya provided support to the PIRA in the form of finances, a base in Tripoli, military and explosives training, arms, explosives, explosive components, public support, and encouragement.

189.    By 1972, the means and objectives of the PIRA terrorist campaign were well known throughout the world based on the publicity surrounding the terrorist atrocities it carried out indiscriminately against both civilian and military targets and the PIRA's public acceptance

of responsibility for such attacks. The Defendants knew the means and objectives of the PIRA when they provided support for its terrorist campaign and knew that death, personal injury, in addition to other torts committed against civilians were the foreseeable results of such support.

190.   Upon information and belief, this Libyan support was provided to the PIRA in order to advance Libya's foreign-policy objectives of armed confrontation with both the United States and the United Kingdom. Libyan leader Mu'ammar Qadhafi admitted as much in a speech at the Arab League Conference that Al-Arabia TV broadcast on March 23, 2005:

> Libya supported the IRA with weapons for Ireland's independence. Of course, it is a terrorist organization, but it never had a bad reputation and international claims were never leveled against it. Ireland had been fighting for 300 years, but we've never heard of global terrorism there.

191.   Similarly, in 1995, Khalifa Bazelya, the former head of the Libyan interest section in Britain, provided a detailed account of the process by which Libya would finance the PIRA:

> Contacts took place in airports by means of prearranged exchanges of identical briefcases in the airport café or transit lounge at Tripoli...the Libyan briefcases contained "financial support".

192.   In 1991, The Department of State's annual report, *Patterns of Global Terrorism*, stated that, "The Libyans have supported terrorist groups in Europe, particularly the Provisional Irish Republican Army (PIRA), which Colonel Qadhafi has called popular national liberation movement."

## I.    The 1970s

### A.    Arms Shipments from Libya to the PIRA

193.   During the 1970s, Libya provided multiple shiploads of weapons to the PIRA including rifles, pistols, ammunition, TNT, grenades, anti-tank mines, fuses, and rocket-propelled grenades (RPGs).  Though at least one shipment was intercepted by Irish authorities,

the volume of military supplies from Libya to the PIRA in the 1970s was measured in multiple tons.

194.    In addition, Libya provided tens of millions of dollars of financial support to the PIRA during this same time period.

195.    Beginning in 1972, the PIRA stationed an envoy in Tripoli, Libya, who obtained quasi-ambassadorial status within Libya.

196.    Libya began transporting weapons to the PIRA in 1972, starting with two cargos containing an estimated 500 rifles, 500 pistols, 40,000 rounds of ammunition, an unknown amount of gelignite and TNT, as well as assorted grenades, anti-tank mines, fuses and other equipment. The methods of transport for these shipments included boats and airplanes.

197.    On March 28, 1973, the Irish Navy intercepted *Claudia*, a vessel belonging to a company under the ownership of a West German arms smuggler named Gunther Leinhauaer, as she attempted to land a cargo of weapons on the Irish coast. Joe Cahill, a former commander of the PIRA's Belfast division, was aboard the ship, along with five tons of weaponry. Leinhauaer later admitted that he had coordinated with Cahill to purchase arms for the PIRA from Defendant Qadhafi. Six Irish nationals were detained during the incident.

198.    The Irish Navy confiscated 250 rifles, 246 bayonets, 243 pistols, 850 magazines, 100 anti-tank missiles, 500 grenades, gelignite, TNT, primers, electric fuses and 20,000 rounds of ammunition.

199.    Experts estimate that Libya smuggled a further seven tons of weapons to the PIRA in the 1970s in addition to the monetary support provided by Libya to the PIRA.

**B.    Libyan Statements of involvement with and in support of the PIRA**

200.    Defendant Qadhafi openly supported and justified the tactics of the PIRA throughout the 1970s.

201.    On June 11, 1972, at a ceremony commemorating the U.S. evacuation of the Wheelus base, Defendant Qadhafi said:

> We support the revolutionaries of Ireland, who oppose Britain and who are motivated by nationalism and religion. The Libyan Arab Republic has stood by the revolutionaries of Ireland. It maintains strong links with the revolutionaries. There are arms and there is support for the revolutionaries of Ireland….we have decided to move to the offensive. We have decided to fight Britain and to drive a thorn in her side so as to make life difficult for Britain…She will pay a double price. She will pay dearly. We will give her blows of one for one received.

202.    Qadhafi also stated in June 1972 that "If the United States and Britain choose to fight us in the Middle East, then Libya will fight them on their own lands. Libya is sending arms, money and volunteers to Ireland against British occupation forces."

203.    At a press conference in Paris in November of 1973, Defendant Qadhafi said that Libya would continue in its aid of the PIRA because they were "little people fighting for their liberty against a great state."

204.    On April 20, 1973, Defendant Qadhafi confirmed his earlier statement that Libya had provided assistance to the "Irish Guerrillas" in Northern Ireland.

205.    After the PIRA carried out bombings in London, the connection between the PIRA and Libya was made clear by a statement issued in *Al Fajr Al Jadid*, an Arabic daily produced by the official Libyan news agency which read:

> these bombs which are convulsing Britain and breaking its spirit are bombs of the Libyan people, some of whom are still being killed by the minefields sown by Britain and for whom Britain has refused to give us maps and which Britain has refused to help us remove. Therefore we have sent bombs to the Irish Revolutionary so that Britain will pay the price of her past deeds after we have liquidated her presence from our land.

206.   In an interview with Time Magazine in April of 1979, Defendant Qadhafi declared that "we don't consider the Irish fight for freedom to be terrorism."

## II.    THE 1980's

### A.    The Fletcher Incident

207.   Libya's belligerent behavior in the 1980s, and its support for the PIRA, was at least partially fueled by its growing contempt for the United States. In 1981, U.S. planes downed a Libyan jet. More importantly, Defendant Qadhafi's daughter was killed in 1986 when the United States launched a retaliatory bombing campaign on Tripoli. The American jets involved in the attack took off from British soil, prompting Qadhafi to increase his level of support for the PIRA as a means of exacting revenge on then-British Prime Minister Margaret Thatcher.

208.   On April 17, 1984, Yvonne Fletcher, a British police officer, was shot and killed while patrolling a peaceful, anti-Qadhafi, protest outside of the Libyan's People's Bureau in London. The shots were fired from inside the Bureau.

209.   Britain broke off all diplomatic ties with Libya on April 22, 1984. In response, the Voice of the Arab Homeland issued the following broadcast:

> The people's committee will form an alliance with the secret IRA in view of the fact that it champions the cause of liberating Ireland and liberating the Irish nation from tyranny of British colonialism. The people's committee will open branches for the secret IRA in all Libyan towns, and if Britain tried to use any means to pressure Libyan Arabs, the revolutionary committee will enable the IRA to do whatever it wishes in Britain and retaliate twice as strongly.

### B.    Libyan material assistance to the PIRA

210.   Libya continued its arms sales to the PIRA throughout the 1980's. Experts estimate that Libya provided the PIRA roughly between one-hundred and twenty and one-hundred and fifty tons of ammunition between 1983 and 1987.

211.    At some point between 1984 and 1985, Joe Cahill, a former commander of the PIRA's Belfast division, invited Defendant Nasser Ali Ashour, a high-ranking Libyan intelligence official, to Ireland to coordinate the details of a weapons deal. While in Ireland, Ashour promised to give the PIRA $10 million in cash and 300 tons of ammunition to use against Great Britain.

212.    An internal French report on the debriefing of arms smuggler Adrian Hopkins, written by the Directorate General of the National Police, details the Libyan/PIRA smuggling operation. Hopkins admitted to aiding in five different smuggling voyages during the 1980s.

213.    The first smuggling voyage took place in August 1985 using the *Casamara*, a 65-foot shipping boat. Hopkins and Defendant Ashour met in Malta to pick up the Libyan weapons that were transported by Ashour from Libya to Malta. The boat was loaded with roughly seven tons of weapons, including one-thousand AK-47 rifles, ten DMZK .5 anti-aircraft machine guns, one million rounds of ammunition and one million mortar shells. These items were delivered by Hopkins to the PIRA in Ireland.

214.    In October of 1985, the *Casamara* delivered another shipment of Libyan weapons to Clogga Strand, a small town in East Ireland. The vessel arrived carrying roughly ten tons of weapons, including one hundred AK-47 rifles, ten machine guns and seventy boxes of ammunition. Defendant Ashour was on board the vessel when it was loaded by Libyans at a meeting point approximately ten miles west of Malta. The cargo was successfully smuggled to Ireland and into the hands of the PIRA.

215.    In November 1985, Irish police found illicit arms and ammunition on a Libyan airline at the Dublin airport.

216.    On January 26, 1986, officials of the Irish Republic uncovered weapons stashed in Silgo and Roscommon Counties, including rifles and ammunition from Libya. At least one box, containing Yugoslavian ammunition, was marked "Libyan Armed Forces."

217.    On July 10, 1986, Hopkins once again arrived in Malta aboard a ship named the *Kula* and met with Defendant Ashour. Hopkins admits loading approximately fourteen tons of Libyan weapons, including Semtex and at least two surface-to-air missiles on the *Kula* and smuggling these items to Ireland on behalf of the PIRA. As with the previous shipments, the PIRA successfully received and stored the weapons.

218.    In October 1986, the *Kula*, later renamed the *Villa*, arrived off Malta and was loaded with roughly eighty tons of Libyan weapons, including seventeen rifles, two handguns, seven RPG rocket launchers, ten SAM missiles, grenades and a large quantity of Semtex. Defendant Ashour was on board and oversaw the loading of the weapons. The cargo was successfully smuggled into Ireland and then received and stored by the PIRA.

219.    During his debriefing, Hopkins also disclosed that roughly twelve members of the PIRA traveled to Libya to receive weaponry and military training in November and December of 1986. It is further alleged that other known PIRA terrorists, such as Tommy McMahan who was convicted of killing Lord Louis Mountbatton, were trained in Libya since the commencement of the Libya/PIRA relationship in the 1970s.

220.    On October 27, 1987, French custom officers detained a Panama registered ship named the *Eksund*, with five Irish nationals on board. The ship was carrying one hundred twenty tons of weapons and ammunitions, including surface-to-air missiles, rocket-propelled grenades, machine guns, assault rifles, and explosives including Semtex. The weapons were eventually traced back to Libya. Defendant Ashour once again oversaw the loading of the weapons as

detailed by Hopkins who, by this time was the *Eksund*'s skipper. Hopkins later confessed that the weapons had been loaded by the Libyan Navy in Tripoli on the 13th and 14th of October, 1987. Gabriel Cleary, James Doherty and James Coll, all PIRA members, eventually received five-year sentences for their smuggling attempts. Moreover, authorities implicated Defendant Ashour, among other Libyan intelligence agents, of being complicit in the smuggling. The French Court blamed Libya for assisting the PIRA in obtaining the cargo aboard the *Eksund*.

221.    On November 23, 1987, the Irish police force uncovered two large bunkers of Libyan weapons.

222.    In 1987, Libya provided shelter and weapons training to PIRA operatives.

223.    In late January 1988, officials discovered a large stash of Libyan weapons at a Five Fingers stand in Malin, Donegal, including one hundred AKMs from Romania, two rocket-propelled grenades, thirteen warheads, twenty hand grenades, fifteen AK-47 rifles, and one hundred pounds of Semtex.

224.    In a September 5, 1988 article in the *New York Times*, it was reported that "Libya was the main source for four shipments of arms that landed in the Irish Republic since last year, including 1,000 Kalashnikov assault rifles, five machine guns, 20 surface-to-air missiles and a large quantity of Semtex."

### C.    Libyan Statements of involvement with and support of the PIRA

225.    On November 3, 1980, the Voice of the Arab Homeland, the mouth piece of the Libyan government, elaborated on the rationale underlying Libya's support of the PIRA:

> [I]t permits us to achieve three objectives simultaneously. It helps us to entrench ourselves in the line of support for all liberation movements. It helps us to prove to the whole world that the Arab revolution is capable of moving from a position of defense to that of attack. Finally, it helps us to pay Britain back for a small part of the harm it caused and causes to our Arab nation.

226.    On May 2, 1984, Defendant Qadhafi expressed his support for the PIRA:

We do not consider the IRA a terrorist army: they have a just cause, the independence of their country…This is a just cause and we are not ashamed of supporting it and with all the means we have…

227. Although Qadhafi asserted that Libya had abstained from providing material assistance to the PIRA in order the establish good relations with Britain, he codified his position by adding, "we shall deal with these colonists (PIRA) on a reciprocal basis particularly with regard to that issue, because Britain is now protecting terrorists among the stray dogs (Qadhafi Libyan opponents)."

228. Qadhafi concluded the interview by admitting that Libya cooperated with the PIRA in the 1970s and offering a thinly-veiled threat to Britain, "we cooperated with them (PIRA) in the early 1970s before we stopped giving them material support. If Britain was able to cooperate with masked terrorists and stray dogs escaping the law, how can we not meet or recognize noble strugglers like the leaders of the IRA. At any rate, we consider their cause just and we can support it the best we can."

229. On October 28, 1986, in an interview on Irish television, Defendant Qadhafi called for "all Irish youth in the North and South or Ireland to participate in the struggle for the liberation of Ulster."

230. In March 1987, Defendant Qadhafi told *The Observer* that he had increased arms supplies to the PIRA in response to the U.S. bombing campaign that occurred the previous year.

## III.    PIRA BOMBINGS AND LIBYAN DISTRIBUTION OF SEMTEX

231. According to former Czechoslovakian leader Vaclav Havel, the Communist government in Czechoslovakia that preceded him in power had provided approximately 1,000 tons of the explosive Semtex – an easily-controlled and hard to detect explosive agent – to Libya.

232. Libya has provided Semtex to terrorists and terrorist organizations throughout the globe. More specifically, Libya has provided multiple tons of Semtex to the PIRA, some of

which is still being held by militant Irish factions, such as the Real Irish Republican Army ("RIRA"), with the intent to use it to kill innocent civilians.

233.    The Independent International Commission on Decommissioning (IICD) calculated the amount of Semtex decommissioned by the PIRA against the amount known to been provided to the PIRA by Libya in order to attempt to verify that all of the Semtex had been decommissioned.

234.    In his book, "Inside Terrorism," Bruce Hoffman of the Rand Corporation estimates that Libya provided the PIRA with "some five to ten tons of Semtex-H plastic explosive."

235.    On September 25, 2001, at the Woodrow Wilson School of Public and International Affairs, John Bruton T.D. stated, "Virtually every IRA bomb since 1986 has incorporated this Libyan supplied material (Semtex). Much of that material remains intact in large illegal bunkers in different parts of Ireland." From 1981 through 1982 and from 1986 through 1987, Bruton served as the Irish Minister for Finance. From 1982 through 1983, he served as Irish Minister for Industry and Energy. From 1983 through 1986, he served as the Irish Minister for Trade, Commerce and Tourism. From 1994 through 1997, Bruton served in the position of Taoiseach, or Prime Minister of Ireland.

236.    As one British Army general stated, emphasizing the dangerous prevalence of Semtex, "The IRA's secret weapon isn't the SAM missiles. The thing that has made the single biggest difference to them is the semtex. It's impossible to over-emphasize the flexibility it has given to them. Semtex is so easy, and so little of it has such a devastating effect."

**A.    Chronicle of Significant PIRA Semtex Bombings**

237.    The following incidents represent many, though not all, of the PIRA's bombings where Semtex was used as an explosive agent. Upon information and belief, the Semtex used in these bombings was supplied to the PIRA solely by Libya.

238.    Libyan Semtex was used in the Enniskillen bomb November 8, 1987, which killed eleven. The bomb was placed in a building adjacent to the Enniskillen war memorial on Remembrance Day, and no warning was given prior to its detonation.

239.    On June 15, 1988, Libyan Semtex was used in a PIRA booby-trap bomb that was detonated after a fun run in the Northern Irish town of Lisburn. Six individuals were killed and dozens were injured.

240.    On August 20, 1988, a PIRA bomb containing Libyan Semtex is detonated beneath a bus on Ballygawley Road killing eight soldiers.

241.    On September 12, 1988, the PIRA targeted the home of Sir Timothy Kenneth Bloomfield, Head of the Northern Ireland Civil Service, with four bombs containing Semtex packed with AK-47 rifle bullets in Crawfordsburn, County Down, Northern Ireland.

242.    On June 19, 1989, the PIRA detonated a bomb containing Libyan Semtex in the British Quebec Barracks located in Osnabruck, Germany injuring 30 individuals. Leonard Joseph Hardy, a PIRA member, was convicted in 2006 for his role in the bombing.

243.    On October 8, 1989, the PIRA detonated a bomb near Lisburn in Northern Ireland containing Libyan Semtex in an automobile killing Alwyn William Harris and injuring his wife who was also a passenger in the vehicle.

244.    On November 15, 1989, the PIRA detonated a bomb containing Libyan Semtex in an automobile killing Robert J. Glover.

245.    On November 2, 1991, a Bomb containing Semtex was detonated by the PIRA at the Musgrave Park Hospital in Belfast, killing two and wounding five individuals.

246.    On January 17, 1992, a bus was blown up by a Semtex roadside bomb placed by the PIRA's East Tyrone Group at the Teebane Cross Roads between Omagh and Cookstown in Northern Ireland resulting in eight deaths.

247.    On February 28, 1992, a PIRA bomb exploded in the London Bridge Station in London. It is believed that Semtex was the explosive component of this bomb.

248.    On April 10, 1992, a 45-kg bomb was detonated outside the Baltic Exchange in the financial district of London, killing three people and injuring more than ninety others. The PIRA claimed responsibility for the bombing. It is widely accepted that approximately 100 pounds of Semtex was used in the attack.

249.    The PIRA claimed responsibility for fourteen bombings during the month of October 1992. Upon information and belief, the explosive component of these bombs was Semtex provided to the PIRA from Libya.

250.    On March 20, 1993, a Bomb containing Semtex placed in a litter container by the PIRA was detonated in Warrington, England killing two children.

251.    On April 24, 1993, a bomb was detonated near Bishopsgate in London, killing one person and injuring more than forty others. The PIRA claimed responsibility for the bomb, which was estimated to have contained thirty-five pounds of Semtex.

252.    In July 1993, PIRA member Robert Fryers was arrested at a bus stop in London with a bomb containing 2.5 kg of Semtex. He was later sentenced to twenty-five years imprisonment.

253.    On October 23, 1993, the PIRA detonated a Bomb containing Semtex in a fish and chips shop on Shankill Road in Belfast. Ten people were killed in the blast.

254.    On May 13, 1994, the PIRA detonated a Bomb containing Semtex in the car of John Frederick Anthony in Lurgan, Northern Ireland, killing Anthony and wounding his wife and two children.

255.    On February 9, 1996, the PIRA broke a cease-fire with the British and detonated a Bomb containing Semtex in the Docklands/Canary Wharf district of London. Two individuals were killed, and millions of dollars of damage was incurred as a result of the bombing.

256.    On April 25, 1996, police reported that they had found a bomb planted on the Hammersmith Bridge in London. The bomb contained 14 kg of Semtex. The PIRA subsequently claimed responsibility for the bomb.

257.    Irish police raided a PIRA weapons factory in County Laois in June of 1996, recovering a large haul of weapons and explosives, including Semtex.

258.    On June 15, 1996, the PIRA bombed a shopping district in Manchester. The PIRA claimed responsibility for the bombing. The bomb was believed to have contained approximately 1.5 tons of fertilizer and Semtex.

259.    On September 23, 1996, police raided a north London warehouse on the grounds that it was being used as a PIRA storage unit. Police discovered 10 tons of made fertilizer explosives packed into boxes, as well as car bombs and Semtex.

### B.    Chronicle of Significant Non-Semtex PIRA Bombings

260.    The PIRA was prolific in carrying out bombings containing Semtex supplied by Libya; however, it was also prolific at carrying out bombings not containing Semtex but nonetheless aided by the material support or resources provided to it by Libya.

261.    On July 21, 1972, the PIRA detonated 22 bombs killing nine and seriously injuring 130 individuals in a campaign commonly known as "Bloody Sunday."

262.    On February 4, 1974, the PIRA placed a bomb aboard a coach carrying British army personnel, their wives, and their families as the coach was traveling near Birkenshaw in England.  Twelve people are killed as a result of the bombing.

263.    On June 17, 1974, the PIRA detonated a bomb in the Houses of Parliament in London causing extensive damage and injuring eleven individuals.

264.    On July 17, 1974, a PIRA bomb was detonated at the Tower of London that was packed with tourists from the United Kingdom and abroad.

265.    On October 5, 1974, a PIRA bomb exploded in a pub in the town of Guildford in England that was allegedly frequented by off-duty and unarmed soldiers.  Five people were killed and 182 were injured.

266.    On November 21, 1974, two PIRA bombs are detonated in pubs in Birmingham, England killing 19 people.

267.    On September 5, 1975, the London Hilton was bombed by the PIRA resulting in two people being killed and 63 individuals injured.

268.    On October 29, 1975, the PIRA detonated a bomb close to the U.S. Embassy in London resulting in 18 injuries.

269.    On August 27, 1979, a PIRA bomb kills Earl Mountbatten of Burma, the British Queen's first cousin, members of his family and a local child off the Irish coast. On the same day the PIRA kill 18 British soldiers at Narrow Water, near Newry, County Down; in an attack described by the British government as "a classic guerrilla attack", they first plant one bomb, which kills six, and then begin firing with sniper rifles at soldiers, driving them to cover at a

nearby gate where a second bomb explodes, killing 12 others. During an Irish visit, Pope John Paul II calls for the PIRA campaign of violence to come to an end.

270. On October 10, 1981, a PIRA bomb is detonated on the Ebury Bridge Road in London killing two and injuring 39 individuals.

271. On July 20, 1982, the PIRA detonated a bomb in Hyde Park in London killing two members of the Household Cavalry performing ceremonial duties in the park. An additional seven horses of cavalry were also killed.

272. On December 17, 1983, the PIRA detonated a bomb near the Harrods department store in the Knightsbridge area of London killing six and wounding approximately 90 others.

273. On October 12, 1984, the PIRA detonated a bomb at the Grand Hotel in Brighton, England in a failed attempt to assassinate members of the British cabinet. Prime Minister Margaret Thatcher narrowly escapes. Five people are killed, and one woman permanently disabled. In its claims of responsibility, the PIRA stated, "Today we were unlucky, but remember we only have to be lucky once. You will have to be lucky always."

274. On September 22, 1989, ten Royal Marine bandsmen are killed and 22 injured in the PIRA bombing of their base in Deal in Kent, England.

275. On July 20, 1990, the PIRA detonated a bomb at the London Stock Exchange causing massive property damage.

276. On February 18, 1991, a PIRA bomb exploded in a litter bin at Victoria Rail Station in London, killing one man and injuring 38.

277. On February 18, 1996, an improvised explosive device detonates prematurely on a bus traveling in central London, killing Edward O'Brien, the PIRA operative transporting the device and injuring eight others.

## COUNT I: CIVIL CONSPIRACY

278.    Paragraphs 1 through 277 hereof are incorporated herein by reference.

279.    Defendants Libya, LESO, Qadhafi, Senoussi, Kusa, Ashour, Bazelya, and, upon information and belief, others whose identities presently are unknown, did knowingly and willfully conspire and agree to commit the following offenses:

(a)    the deliberate and wrongful death of both the American Plaintiff decedents and the Alien Plaintiff decedents as set forth in paragraphs 282 through 285 herein;

(b)    battery upon the American Plaintiff victims be they injured or killed as a result of the battery and the Alien Plaintiff victims be they injured or killed as a result of the battery as set forth in paragraphs 286 through 290 herein;

(c)    intentional infliction of emotional distress on the American Plaintiff victims be they injured or killed as a result of the acts giving rise to the injury or death and the Alien Plaintiff victims be they injured or killed as a result of the acts giving rise to the injury or death as set forth in paragraphs 291 through 294 herein;

(d)    intentional infliction of emotional distress on the American Plaintiff survivors and the Alien Plaintiff survivors as set forth in paragraphs 295 through 298 herein;

(e)    loss of consortium as to the American Plaintiff survivors and the Alien Plaintiff survivors as set forth in paragraphs 299 through 302 herein;

(f)    violation of the Torture Victim Protection Act ("TVPA") as set forth in paragraphs 303 through 306 herein;

(g)    violation of the Flatow Amendment as set forth in paragraphs 307 through 311 herein; and

(h)     violation of the law of nations regarding aiding and abetting, complicity and/or reckless disregard for the commission of crimes against humanity as to the Alien Plaintiff survivors as set forth in paragraphs 312 through 324 herein.

280.    The objects of this conspiracy were the provision of finances, arms, ammunition, explosive materials including, but not limited to, Semtex, training, training facilities, and a base of operations for PIRA military activists in furtherance of the PIRA's campaign of violence against British and American targets during the 1980s and 1990s. The direct and foreseeable results of this conspiracy were the wrongful deaths and injuries suffered by the American Plaintiffs and the Alien Plaintiffs in attacks carried out by the PIRA.

281.    If the evidence develops that all defendants were acting pursuant to the actual or apparent authority or color of law of Libya, the defendants are liable for conspiring to commit the aforementioned offenses with others whose identities are unknown at this time. If one or more defendants were acting without such authority, all defendants are similarly liable for conspiring to commit the aforementioned offenses among themselves as well as with others whose identities are unknown at this time.

**WHEREFORE**, the American Class Plaintiffs and the Alien Class Plaintiffs demand judgment in their favor against the Defendants in an amount to be determined by a jury, not less than the statutory amount of $75,000, plus interest, costs, fees and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate and deter Defendants.

## COUNT II: WRONGFUL DEATH

282.    Paragraphs 1 through ___ hereof are incorporated herein by reference.

283.    Defendants' actions, for which they are jointly and severally liable, caused the deliberate and wrongful death of the American Plaintiff decedents and the Alien Plaintiff

decedents (whose Estates are represented as Plaintiffs herein) by providing to the PIRA the finances, ammunition, arms, and explosives including, but not limited to, Semtex, that were used to carry out the acts giving rise to the deaths of the aforementioned Plaintiffs during the 1980s and 1990s.

284.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff decedents and the Alien Plaintiff decedents (whose Estates are represented as Plaintiffs herein) do hereby assert a cause of action for wrongful death against Defendants Libya, LESO, Qadhafi, Senoussi, Kusa, Ashour, and Bazelya in their official capacities and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

285.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff decedents and the Alien Plaintiff decedents (whose Estates are represented as Plaintiffs herein) do hereby assert a cause of action for wrongful death against Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, in their individual capacities and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

**WHEREFORE**, the American Class Plaintiffs and the Alien Class Plaintiffs demand judgment in their favor against the Defendants in an amount to be determined by a jury, not less

than the statutory amount of $75,000, plus interest, costs, fees and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate and deter Defendants.

## COUNT III: BATTERY

286.    Paragraphs 1 through 277 hereof are incorporated herein by reference.

287.    Defendants' actions, for which they are jointly and severally liable, caused the deliberate battery against the American Plaintiff victims and the Alien Plaintiff victims (including decedents of both classes whose Estates are represented as Plaintiffs herein) by providing to the PIRA the finances, ammunition, arms, and explosives including, but not limited to, Semtex, that were used to carry out the acts giving rise to the battery against the aforementioned Plaintiffs during the 1980s and 1990s.

288.    As a direct and proximate result of Defendants' acts, Plaintiffs suffered injury.

289.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff victims and the Alien Plaintiff victims (including decedents from both classes whose Estates are represented as Plaintiffs herein) do hereby assert a cause of action for battery against Defendants Libya, LESO, Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, in their official capacities and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

290.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff victims and the Alien Plaintiff victims (including decedents from both classes whose Estates are represented as Plaintiffs herein) do hereby assert a cause of action for battery against Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, in their individual capacities

and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

**WHEREFORE,** the American Class Plaintiffs and the Alien Class Plaintiffs demand judgment in their favor against the Defendants in an amount to be determined by a jury, not less than the statutory amount of $75,000, plus interest, costs, fees and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate and deter Defendants

### COUNT IV: INTENTIONAL
### INFLICTION OF EMOTIONAL DISTRESS ON VICTIMS

291.    Paragraphs 1 through 277 hereof are incorporated herein by reference.

292.    The defendants, through their extreme and outrageous conduct, for which they are jointly and severally liable, intentionally or, at the least, recklessly, caused the American Plaintiff victims and the Alien Plaintiff victims (including decedents of both classes whose Estates are represented as Plaintiffs herein) to suffer extreme emotional distress.

293.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff victims and the Alien Plaintiff victims (including decedents from both classes whose Estates are represented as Plaintiffs herein) do hereby assert a cause of action for intentional infliction of emotional distress against Defendants Libya, LESO, Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, in their official capacities and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

294.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff victims and the Alien Plaintiff victims (including decedents from both classes whose Estates are represented as Plaintiffs herein) do hereby assert a cause of action for intentional infliction of emotional distress against Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, in their individual capacities and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

**WHEREFORE**, the American Class victim Plaintiffs and the Alien Class victim Plaintiffs demand judgment in their favor against the Defendants in an amount to be determined by a jury, not less than the statutory amount of $75,000, plus interest, costs, fees and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate and deter Defendants.

<u>**COUNT V: INTENTIONAL**</u>
<u>**INFLICTION OF EMOTIONAL DISTRESS ON SURVIVORS**</u>

295.    Paragraphs 1 through 277 hereof are incorporated herein by reference.

296.    The defendants, through their extreme and outrageous conduct, for which they are jointly and severally liable, intentionally or, at the very least, recklessly, caused the American Plaintiff survivors and/or heirs and the Alien Plaintiff survivors and/or heirs to suffer extreme emotional distress.

297.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff survivors and/or heirs and the Alien Plaintiff survivors and/or heirs do hereby assert a cause of action for intentional infliction of emotional distress against Defendants Libya,

LESO, Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, in their official capacities and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

298.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff survivors and/or heirs and the Alien Plaintiff survivors and/or heirs do hereby assert a cause of action for intentional infliction of emotional distress against Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, in their individual capacities and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

**WHEREFORE**, the American Class survivor and/or heir Plaintiffs and the Alien Class survivor and/or heir Plaintiffs demand judgment in their favor against the Defendants in an amount to be determined by a jury, not less than the statutory amount of $75,000, plus interest, costs, fees and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate and deter Defendants

## COUNT VI: LOSS OF CONSORTIUM

299.    Paragraphs 1 through 277 hereof are incorporated herein by reference.

300.    As a result of the defendants' willful acts, for which they are jointly and severally liable, the American Plaintiff survivors and/or heirs and the Alien Plaintiff survivors and/or heirs

have been deprived of the assistance, society and consortium of their loved ones, all of which has been to their great loss and detriment.

301.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff survivors and/or heirs and the Alien Plaintiff survivors and/or heirs do hereby assert a cause of action for loss of consortium against Defendants Libya, LESO, Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, in their official capacities and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

302.    Under applicable federal, state, foreign statutory and/or common law, the American Plaintiff survivors and/or heirs and the Alien Plaintiff survivors and/or heirs do hereby assert a cause of action for loss of consortium against Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, in their individual capacities and in connection with the willful, wrongful, intentional and reckless acts of the PIRA acting with the explicit support of the Libyan defendants who also engaged in commercial activity with the PIRA through the sale of arms, ammunition, and explosives, including by not limited to, Semtex, which were used to perpetrate the acts giving rise to this claim.

**WHEREFORE**, the American Class survivor and/or heir Plaintiffs and the Alien Class survivor and/or heir Plaintiffs demand judgment in their favor against the Defendants in an amount to be determined by a jury, not less than the statutory amount of $75,000, plus interest, costs, fees and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate and deter Defendants

## COUNT VII: TORTURE VICTIM PROTECTION ACT (TVPA), 28 U.S.C. § 1350, note

303.    Paragraphs 1 through 277 hereof are incorporated herein by reference.

304.    The Torture Victim Protection Act (TVPA) provides a cause of action to a decedent's representative, or to any person who may be a claimant in an action for wrongful death, for "extrajudicial killing" perpetrated by any individual acting under the actual or apparent authority or color of law of any foreign nation.  The Presidential Signing Statement notes that this Act was intended to signify America's continuing commitment to advancing respect for and protection of human rights worldwide.

305.    Libya, through its agents acting under its actual or apparent authority or under color of law, provided material support to the PIRA in connection with its extrajudicial killing of the American Plaintiff decedents and the Alien Plaintiff decedents (whose Estates are represented herein as Plaintiffs) in violation of 18 U.S.C. § 2339A.

306.    Pursuant to the TVPA, and the federal-question jurisdiction conferred therein, the American Plaintiff decedents, the Alien Plaintiff decedents (whose Estates are represented herein as Plaintiffs), the American Plaintiff survivors and/or heirs, and the Alien Plaintiff survivors and/or heirs do hereby assert a cause of action for extrajudicial killing as that term is defined in the TVPA against Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya who acted under the actual or apparent authority or color of law of Libya by providing the arms, ammunition, and explosives including, but not limited to, Semtex to the PIRA which foreseeably used these items to perpetrate the acts giving rise to this claim.

**WHEREFORE,** the American Class decedent and survivor and/or heir Plaintiffs and the Alien Class decedent and survivor and/or heir Plaintiffs demand judgment in their favor against the Defendants in an amount to be determined by a jury, not less than the statutory amount of

$75,000, plus interest, costs, fees and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate and deter Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya from committing further acts of extrajudicial killing in violation of the Torture Victim Protection Act.

### COUNT VIII: FLATOW AMENDMENT, 28 U.S.C. § 1605, note

307.    Paragraphs 1 through 277 hereof are incorporated herein by reference.

308.    The Flatow Amendment, 28 U.S.C. § 1605, note, provides that:

an official, employee, or agent of a foreign state designated as a state sponsor of terrorism designated under section 6(j) of the Export Administration Act of 1979 while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7) of title 28, United States Code, for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7).

309.    Libya was designated by the United States in 1979 as a state sponsor of terrorism under § 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and § 630A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371.  It remains on the list to this day.

310.    Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya were acting within the scope of their office, employment, or agency vis-à-vis Libya when they engaged in the provision of ammunition, arms, and explosives including, but not limited to, Semtex to the PIRA which proximately caused the personal injury or death of the American Plaintiff victims (including decedents whose Estates are represented as Plaintiffs herein).

311.    Pursuant to the Flatow Amendment, the American Plaintiffs, including their survivors, do hereby assert claims for money damages, including economic damages, solatium, pain and suffering, and punitive damages against Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya.

**WHEREFORE**, the American Class Plaintiffs demand judgment in their favor against the Defendants in an amount to be determined by a jury, not less than the statutory amount of $75,000, plus interest, costs, fees and such other monetary and equitable relief as this Honorable Court deems appropriate including economic damages, solatium, pain and suffering, and punitive damages against Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya.

**COUNT IX:**
**AIDING AND ABETTING, INTENTIONALLY FACILITATING, AND/OR**
**RECKLESSLY DISREGARDING CRIMES AGAINST HUMANITY**
**IN VIOLATION OF THE LAW OF NATIONS**

312.    Paragraphs 1 through 277 hereof are incorporated herein by reference.

313.    The PIRA bombings utilizing Semtex as the primary explosive ingredient against the Alien Plaintiffs and the unarmed British population constitute crimes against humanity in violation of the law of nations.

314.    Strong condemnation of crimes against humanity rests on a clear and definite norm of international law which is universally accepted by the civilized world.

315.    The international community has universally condemned crimes against humanity thus incorporating this offense into the law of nations pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350.

316.    The following international conventions and/or United Nations Security Council Resolutions support the premise that the act of crimes against humanity is incorporated into the law of nations:

    i.    The Charter of the International Military Tribunal, Aug. 8, 1945, art. 6, 59 Stat. 1546, 1547, E.A.S. NO. 472, 82 U.N.T.S. 284;

    ii.    The Statute of the International Criminal Tribunal for the Former Yugoslavia, Art. 5;

    iii.    The Statute of the International Criminal Tribunal for Rwanda, Art. 3;

iv.    The Rome Statute of the International Criminal Court, Art. 7.

317.    Crimes against humanity are likewise defined with a specificity sufficiently comparable to international law violations that were familiar when the ATS was enacted. The core elements of a crime against humanity in violation of the law of nations, as codified in the above sources and recognized in international law generally, are murder and other heinous acts against human life, physical welfare, and dignity that are undertaken as part of a widespread or systematic attack against a civilian population. These crimes are punishable whether committed in peacetime or in war.

318.    The campaign by the PIRA against the British and Northern Irish populous in its attempt to create an Irish "republic" joining Ireland with the British-controlled Northern Ireland constituted murder and other heinous acts against human life, physical welfare, and dignity as the PIRA indiscriminately bombed civilian targets in Great Britain and Northern Ireland.

319.    Throughout the 1980s and 1990s, this campaign by the PIRA was widespread and systematic against the civilian population.

320.    Libya, through its officials, employees, and agents including, but not limited to, Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, knowingly, intentionally and directly aided and abetted, intentionally facilitated, and/or recklessly disregarded crimes against humanity in violation of the law of nations. Aiding and abetting and/or joint venture and reckless disregard are actionable claims pursuant to the Alien Tort Statute.

321.    Libya, through its officials, employees, and agents including, but not limited to, Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, provided the PIRA with arms, ammunition, explosives including, but not limited to, Semtex, training, training facilities, and a

base of operations within the territorial confines of Libya knowingly and intentionally assisting in the PIRA's campaign of crimes against humanity.

322.    At all times, Libya, through its officials, employees, and agents including, but not limited to, Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, knew that its provision of arms, ammunition, explosives including, but not limited to, Semtex would then be used to carry out crimes against humanity against the civilian populations in Great Britain and Northern Ireland by the PIRA.

323.    Libya, through its officials, employees, and agents including, but not limited to, Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, aided and abetted, intentionally facilitated and/or recklessly disregarded the commission of crimes against humanity by the PIRA through the provision of bomb-making materials, including Semtex, to the PIRA knowing that such provision would result in the commission of crimes against humanity.

324.    The Alien Plaintiffs and their family members suffered death or serious physical and/or mental injuries as a proximate result of Libya's conduct committed through its officials, employees, and agents including, but not limited to, Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya.

WHEREFORE, the Alien Class Plaintiffs demand judgment in their favor against Defendants Qadhafi, Senoussi, Kusa, Ashour, and Bazelya, and demand damages in an amount to be determined by a jury, not less than the statutory amount of $75,000, for damages arising out of wrongful death, survival, loss of consortium, loss of solatium, and/or loss of services, plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent Defendant from ever again contributing to facilitating or aiding and

abetting crimes against humanity such as those perpetrated by the PIRA in violation of the law of nations.

**COUNT X: CLASS CERTIFICATION**

325.    Paragraphs 1 through 277 hereof are incorporated herein by reference.

326.    In specific reference to paragraphs 5 through 13 hereof, Plaintiffs assert that this case should be certified as a class action.

**WHEREFORE**, the American Class Plaintiffs and the Alien Class Plaintiffs request that this Honorable Court certify this matter as a Class Action and award Plaintiffs damages on each of the causes of action stated above plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from engaging in the acts giving rise to this Complaint.

PLAINTIFFS DEMAND A TRIAL BY JURY ON THOSE CLAIMS SO TRIABLE.

Dated:  April 21, 2006
        Washington, DC

Respectfully submitted,

HANLY CONROY BIERSTEIN SHERIDAN
FISHER & HAYES LLP


Jayne Conroy, Esq. (DC Bar No. 451475)
Paul Hanly, Esq.
112 Madison Avenue
New York, New York 10016-7416
(212) 784-6402
Fax: (212) 784-6420
E-mail: jconroy@hanlyconroy.com

Of Counsel:

Jason McCue, Esq.
H20 LAW

40-43 Chancery Lane
London WC2A 1JQ
United Kingdom

Lord Dan Brennan
Matrix Chambers
Gray's Inn
London WC1R 5LN
United Kingdom

*Attorneys for Plaintiffs*