UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK McDONALD, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:06-cv-00729-JR |
| v. ) | |
| ) | |
| SOCIALIST PEOPLE'S LIBYAN ARAB ) | |
| JAMAHIRIYA, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES TO ALLOW SERVICE OF PROCESS BY ALTERNATE MEANS**

Pursuant to Federal Rule of Civil Procedure 7(b) and Local Civil Rule 7, Plaintiffs hereby move this Court to permit service of process by alternate means as permitted by Federal Rule of Civil Procedure 4(f)(3) and 28 U.S.C. § 1608(b)(3)(A). Defendant Musa Kusa was served via DHL delivery on July 23, 2006, and a Proof of Service was filed with this Court on December 15, 2006. *See* Docket Entry #11. Defendants Socialist People's Libyan Arab Jamahiriya ("Libya") and Libyan External Security Organization a/k/a Jamahiriya Security Organization ("LESO") were served via diplomatic channels on February 1, 2007. *See* Docket Entry #17. Plaintiffs have attempted service upon Defendants Muammar Qadhafi, Abdullah Senoussi, Nasser Ali Ashour, and Khalifa Ahmed Bazelya in accordance with both the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1601, *et seq.*, and Federal Rule of Civil Procedure 4(f). Despite Plaintiffs' continued efforts, such attempts at service have, to date, been unsuccessful. For the reasons set forth herein, Plaintiffs have been unable to perfect service of process on four of the named defendants in this action. On September 20, 2007, the Court granted Plaintiffs an

1

additional 120 days to effect service of process and ordered the re-issuance of the sealed and apostilled letters rogatory to be re-delivered to the U.S. Department of State.

## THE HISTORY OF PLAINTIFFS PRIOR EFFORTS REGARDING SERVICE OF PROCESS

**I.    INTRODUCTION**

On April 21, 2006, Plaintiffs filed the instant action against seven defendants, namely, the Socialist People's Libyan Arab Jamahiriya (hereinafter "Libya"), the Libyan External Security Organization a/k/a the Jamahiriya Security Organization (hereinafter "LESO"), Colonel Muammar Qadhafi (hereinafter "Qadhafi"), Abdullah Senoussi (hereinafter "Senoussi"), Musa Kusa (hereinafter "Kusa"), Nasser Ali Ashour (hereinafter "Ashour"), and Khalifa Ahmed Bazelya (hereinafter "Bazelya").  The claims asserted in this action arise under, among other grounds, 28 U.S.C. §§ 1605(a)(2), 1605(a)(7) constituting waivers of immunity pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1601 *et seq.*. The claims for common-law remedies include wrongful death, battery, civil conspiracy, intentional infliction of emotional distress (both for victims and survivors), loss of consortium in addition to claims arising under the Torture Victim Protection Act, 28 U.S.C. § 1350, note, and the Flatow Amendment to the FSIA, 28 U.S.C. § 1605, note.  Furthermore, claims and personal jurisdiction are also premised on the Alien Tort Statute, 28 U.S.C. § 1350, for aiding and abetting, intentionally facilitating and/or recklessly disregarding crimes against humanity in violation of the law of nations.

The FSIA contains stringent service requirements that must be followed in order to assert claims against a foreign sovereign pursuant to waivers enumerated under 28 U.S.C. § 1605.  As such, Plaintiffs have attempted to comply in whole with the service requirements set forth in 28 U.S.C. § 1608(a) regarding service upon a "foreign state or political subdivision of a foreign state" and the requirements of 28 U.S.C. § 1608(b) regarding service upon an "agency or

2

instrumentality of a foreign state." Furthermore, Federal Rule of Civil Procedure 4(f) details service upon individuals in a foreign country.

Pursuant to 28 U.S.C. §§ 1608(a)(1) and 1608(b)(1), service should be made "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." Plaintiffs assert that no such "special arrangement" is in existence to effect service on Defendants Muammar Qadhafi, Abdullah Senoussi, Nasser Ali Ashour, and Khalifa Ahmed Bazelya pursuant to 28 U.S.C. §§ 1608(a)(1) and 1608(b)(1).

Pursuant to 28 U.S.C. § 1608(a)(2), if service was not possible pursuant to subsection (1), then service should be made "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." Rule 4(f)(1) also states that service may be effected "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Plaintiffs assert that Libya is not a party to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters. Plaintiffs further assert that there are no additional applicable international conventions pursuant to which service might be accomplished. Therefore, service pursuant to 28 U.S.C. § 1608(a)(2) and Rule 4(f)(1) could not be effected.

Pursuant to 28 U.S.C. § 1608(b)(2), the only difference from that set forth in Section 1608(a)(2) is that service may be effected by "delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States." 28 U.S.C. § 1608(b)(2). Much in

the same manner that there is no applicable international convention, there are no officers or agents duly authorized to receive service of process in the United States.

## II.   FOREIGN MAILING VIA THE CLERK'S OFFICE – 28 U.S.C. §1608(a)(3) AND RULE 4(f)(2)(C)(ii)

Pursuant to 28 U.S.C. § 1608(a)(3), if service was not possible pursuant to subsection (1) or (2), then service should be made "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."[1]  Plaintiffs translated the Complaint and Summons into Arabic – the official language of Libya.  Thereafter, Plaintiffs hand-delivered to the Clerk of the Court those documents required by Section 1608(a)(3) accompanied by Plaintiffs' Request for Foreign Mailing Pursuant to 28 U.S.C. § 1608(a)(3).  As set forth in a Certificate of Mailing docketed in this case on August 3, 2006, the Deputy Clerk of this Court mailed the Summons and Complaints and associated documents to each of the seven defendants via DHL on July 14, 2006.  *See* Docket Entry #4.

On August 2, 2006, the Clerk of the Court made a minute entry noting the return of the Summonses, unexecuted, addressed to Defendants Senoussi, Ashour, and Bazelya. *See* Docket Entry #5.  Attached to that docket entry are tracking reports from DHL for the packages addressed to these three defendants, indicating that, in each case, the recipient had refused delivery and the packages were returned to the Court.  *Id.*  In discussions with DHL, Plaintiffs ascertained that though delivery upon Libya and the LESO was initially accepted, the acceptance of the delivery was subsequently revoked.  *See* Docket Entry #6, Exhibit A at ¶10.  Nevertheless,

---

[1] Fed. R. Civ. P. 4(f)(2)(C)(ii) states that international service may be made "unless prohibited by the law of the foreign country, by … (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served."

delivery upon the Libyan Ministry of Foreign Affairs for Defendant Musa Kusa was confirmed by DHL, and Plaintiffs filed a Proof of Service with this Court pertaining to Defendant Kusa. *See* Docket Entry #11.

DHL instituted an inquiry to determine whether the package to be served upon Defendant Qadhafi had been served. DHL determined, based on investigation, that delivery had been unsuccessful, and the package with service documents for Defendant Colonel Muammar Qadhafi was destroyed by DHL. *See* Docket Entry #6, Exhibit A at ¶11.

### III. ISSUANCE OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) – 28 U.S.C. § 1608(b)(3)(A) AND RULE 4(f)(2)(B)

Because Plaintiffs were unable to effect service pursuant to 28 U.S.C. § 1608(a)(3) within 30 days of mailing to Defendants Colonel Muammar Qadhafi, Abdullah Senoussi, Nasser Ali Ashour, and Khalifa Ahmed Bazelya, Plaintiffs resorted to 28 U.S.C. § 1608(b)(3)(A) which permits service "as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request." Such service is also permitted pursuant to Federal Rule of Civil Procedure 4(f)(2)(B). As such, Plaintiffs filed Plaintiffs' Request for International Judicial Assistance (Letter Rogatory) on August 17, 2006, to effect service on these unserved defendants. The Court issued the Letter Rogatory on December 20, 2006. *See* Docket Entry #13. These documents were transmitted to the U.S. Department of State's Office of American Citizen Services via Federal Express delivery on April 16, 2007. Nevertheless, as Plaintiffs previously informed this Court, the Letter Rogatory documents sent to the U.S. Department of State were apparently lost, and Plaintiffs requested that the sealed and apostilled documents issued by the Court be re-issued. *See* Docket Entry #24. In its Order of September 20, 2007, this Court ordered that the Clerk's Office re-issue these documents for service upon the U.S. Department of State. *See* Docket Entry #26.

These re-issued documents were obtained by Plaintiffs' counsel on October 17, 2007 from the Court's Civil Docket Clerk. The requisite letters rogatory documents were then re-delivered by Federal Express to the U.S. Department of State on October 24, 2007. *See* Exhibit B (E-mail notification of delivery from Federal Express to John M. Eubanks, Esq., dated Oct. 24, 2007). On or about November 2, 2007, counsel for Plaintiffs spoke with Mr. William Fritzlen, Attorney Adviser in the Department of State's Office of Policy Review and Interagency Liaison, who confirmed that he personally had received the Federal Express package from Plaintiffs' counsel containing the Letter Rogatory packet to be delivered to the U.S. Embassy in Tripoli, Libya.

On January 2, 2008, Plaintiffs' counsel contacted Mr. Fritzlen via e-mail correspondence in order to obtain a status report regarding service of process pursuant to the Court's Letter Rogatory. *See* Exhibit C (E-mail from John M. Eubanks to William Fritzlen dated January 2, 2008). On January 3, 2008, Mr. Fritzlen responded that he would provide any updates that he could obtain from the U.S. Embassy in Libya. *See* Exhibit D (E-mail from William Fritzlen to John M. Eubanks dated January 3, 2008). On January 8, 2008, Plaintiffs' counsel again sent an e-mail to Mr. Fritzlen seeking any update on service of process pursuant to the Court's issued Letter Rogatory and also bringing to Mr. Fritzlen's attention the impending service deadline imposed by the Court in this action. *See* Exhibit E (E-mail from John M. Eubanks to William Fritzlen dated January 8, 2008). To date, Plaintiffs' counsel has received no additional reply from Mr. Fritzlen or from anyone else within the U.S. Department of State. Therefore, though this method of service continues to progress, there is no guarantee of its success. Furthermore, there is no prescribed timeline for service of process pursuant to a Letter Rogatory.[2]

---

[2] In fact, the website of the U.S. Department of State explicitly states, "Letters rogatory are a time consuming, cumbersome process and should not be utilized unless there are no other options available." Furthermore, with

**IV.   SERVICE VIA DIPLOMATIC CHANNELS – 28 U.S.C. § 1608(a)(4)**

Because Plaintiffs were unable to effect service pursuant to 28 U.S.C. § 1608(a)(3) within 30 days of mailing to Defendants Libya and the LESO, Plaintiffs filed with the Court on September 26, 2006, a Request for Mailing Pursuant to 28 U.S.C. § 1608(a)(4) which provided that the State Department would serve the documents through diplomatic channels. On October 26, 2006, the Clerk's Office sent "Two copies of the summons, complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by certified mail, return receipt, delivery, to the U.S. Department of State, Office of Policy Review and Interagency Liaison, Overseas Citizens Services, 2100 Pennsylvania Avenue, NW, Fourth Floor, Washington, DC 20520, ATTN: Director of Overseas Citizens Services, pursuant to the provisions of 28 U.S.C. § 1608(a)(4)." *See* Docket Entry #9. Section 1608(a)(4) provides that "the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." On February 21, 2007, the docket was updated with proof of service filed by the Department of State asserting that service of process had been effected upon Libya and the LESO on February 1, 2007 through diplomatic channels in accord with 28 U.S.C. § 1608(a)(4). *See* Docket Entry #17.

**V.   ATTEMPTS AT PERSONAL SERVICE OF INDIVIDUAL DEFENDANTS – RULE 4(f)(2)(C)(i)**

Plaintiffs retained the services of Process Service Network, a service-of-process company based in California specializing in international service of process. *See* Declaration of Nelson

---

regard to a Letter Rogatory issued for the purpose of service of process, this same website states, "If the laws of the foreign country permit other methods of service, the use of letters rogatory is not recommended given the habitual time delays of up to a year or more in execution of the requests." *See* <http://travel.state.gov/law/info/judicial/judicial_683.html> (visited January 3, 2008). Plaintiffs want to make clear they do not intend to abandon the letters rogatory service process.

7

Tucker ("Tucker Declaration") attached hereto as Exhibit A. Plaintiffs retained Process Service Network to effect personal service upon two named Defendants in this case, namely, Muammar Qadhafi and Abdullah Senoussi. Ex. A, at ¶2. As the Tucker Declaration states, Process Service Network attempted to obtain addresses for service of process from (a) an affiliate in Tunisia "who handles service of process assignments [for Process Service Network] in specific regions of North Africa," (b) Charles O. Cecil, the U.S. Chargé d'Affaires ad Interim for Libya, and (c) Ali Aujali, the Libyan Chargé d'Affaires in Washington, D.C. Ex. A at ¶¶3-5. None of these sources provided a response. *Id.* at ¶6.

On October 5, 2007, the affiliate in Tunisia who was retained to effect service of process informed Process Service Network that "he would not be able to enter into Libya to serve legal documents on a head of state or any government agent." *Id.* at ¶7. On October 8, 2007, another affiliate located in Cairo, Egypt was retained to perfect personal service of process on Defendants Qadhafi and Senoussi. *Id.* at ¶8. On October 28, 2007, Process Service Network was informed by the Egyptian affiliate that "all of his contacts refused to enter Libya for the purpose of serving legal documents on the named defendants due to feared reprisals." *Id.* at ¶9. As succinctly stated by Nelson Tucker, the President of Process Service Network:

> The circumstances that are preventing service of process are 1) defendant Abdullah Senoussi is a high-ranking government official who is concealed by the military; he was sentenced to life imprisonment by the French government and is avoiding extradition, 2) Muammar Qadhafi is the head of the Libyan government and does not reside or work in a specific location,[3] and 3) experienced process servers in the region refuse to serve either defendant due to retaliation and punishment by the Libyan government.

*Id.* at ¶10.

---

[3] Plaintiffs herein assert that Defendant Muammar Qadhafi is not Libya's head of state for purposes of asserting head-of-state immunity pursuant to the law of this Circuit.

8

Furthermore, Plaintiffs have obtained an additional declaration from process server Ana Sanchez of Nicoletti and Harris, Inc. based in New York. Ms. Sanchez's declaration clearly states that personal service on Defendant Muammar Qadhafi "is almost impossible to obtain due to the political status of the individual that [Plaintiffs] want served. The political tension and fear of physical harm will make it very difficult if not impossible to obtain a process server who will proceed with service." *See* "Information for Service of Process on Muammar Al-Gaddafi in Libya," attached hereto as Exhibit F, at ¶2. In sum, Ms. Sanchez confirms the conclusions reached by Mr. Tucker that personal service of process in this case on the remaining unserved defendants is virtually impossible. Ms. Sanchez also estimates that service through the letters rogatory process typically takes 6 - 12 months. *Id*. This is consistent with the State Department's position that "the use of letters rogatory is not recommended given the habitual time delays of up to a year or more in execution of the requests." *See* <http://travel.state.gov/law/info/judicial/judicial_683.html> (visited January 3, 2008).

## VI. THE NECESSITY FOR ALTERNATIVE MEANS OF SERVICE OF PROCESS

In Plaintiffs' Supplemental Status Report filed with the Court on August 23, 2007, three possible alternative – though explicitly *not* mutually exclusive – means of service were set forth:

(A)    Re-Issuance of sealed and apostilled letters rogatory documents from Court;

(B)    Service by publication; and

(C)    Service upon attorneys for Libya.

This Court's September 20, 2007, Order granted permission for the first option offered, namely, re-issuance of letters rogatory. *See* Docket Entry #26. The Court's Order did not address the alternate methods that are available.

9

In Defendants' Response to Plaintiffs' Supplemental Status Report, filed on September 12, 2007, Defendants asked this Court to find that service by alternative means pursuant to Federal Rule of Civil Procedure 4(f)(3) is unnecessary unless Plaintiff provides details regarding its unsuccessful efforts to personally serve Defendants. Given the facts of this case and Plaintiffs unsuccessful attempts to effect personal service on the remaining four Defendants in this case, service of process by alternate means is necessary and sufficient. Where Plaintiffs know the specific address of a particular defendant, Plaintiffs are required to attempt personal service by conventional means pursuant to Federal Rule of Civil Procedure 4. However, individual Defendants Qadhafi and Senoussi cannot be served in this manner because they cannot be located, and as indicated by information provided by process server Nelson Tucker, there is no known method for serving these Defendants even were their addresses to become known. *See* Tucker Declaration attached hereto as Exhibit A. Furthermore, despite best efforts Plaintiffs cannot locate and are not in possession of specific addresses for either Defendant Ashour or Defendant Bazelya that a process server could use to attempt personal service. Therefore, an alternative method to effectuate service of process upon these defendants, specifically, service by publication pursuant to Federal Rule of Civil Procedure 4(f)(3) is warranted.

<u>**POINTS AND AUTHORITIES**</u>.

**SERVICE BY PUBLICATION IS APPROPRIATE IN LIGHT OF THE FACTS OF THIS CASE**

As this Court is aware, service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. Rule 4(f) governs service on individuals. Rule 4(f)(3) permits service upon individuals and associations not in a judicial district within the United States as directed by the Court, as long as it is not prohibited by international agreement. The Ninth Circuit in *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002), conducted an extensive

analysis of Rule 4(f)(3). The *Rio* court concluded that Rule 4(f)(3) stands on equal footing with the other sections of Rule 4(f), i.e., there is no order of preferential service between the provisions of Rule 4(f)(1), (2), and (3).[4] In *Rio*, the Court approved plaintiff's service of process through Internet e-mail. In analyzing and reviewing the case law concerning Rule 4(f)(3), the Court stated:

> Applying this proper construction of Rule 4(f)(3) and its predecessor trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email. See *SEC v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987) (condoning service of process by publication in the Int'l Herald Tribune); *Smith v. Islamic Emirate*, Nos. 01 Civ. 10132, 01 Civ. 10144, 2001 U.S. Dist. LEXIS 21712, at *5-13 (S.D.N.Y. Dec. 26, 2001) (authorizing service of process on terrorism impresario Osama bin Laden and al-Qaeda by publication); *Levin v. Ruby Trading Corp.*, 248 F. Supp. 537, 541-44 (S.D.N.Y. 1965) (employing service by ordinary mail); *Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 176-78 (2d Cir. 1979) (approving service by mail to last known address); *Forum Fin. Group*, 199 F.R.D. at 23-24 (authorizing service to defendant's attorney); *New Eng. Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73, 80 (S.D.N.Y. 1980) (allowing service by telex for Iranian defendants); *Broadfoot v. Diaz* (In re Int'l Telemedia Assoc.), 245 B.R. 713, 719-20 (Bankr.N.D.Ga. 2000) (authorizing service via email).

*Id.* at 1016.

Thus, analysis of F.R.C.P. 4(f) and the case law interpreting the Rule demonstrates that this Court is well within its discretion to authorize alternative service of process that is tailored to the specific needs and difficulties present in this case. In this regard, Plaintiffs seek to serve a subset of the defendants by publication. The Advisory Committee notes to Rule 4(f)(3) show that the Court, in its discretion, should authorize a method of service of process that is reasonably calculated to apprise the interested parties of the pending action and to afford them an

---

[4] "By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2). See *Forum Fin. Group, LLC v. President & Fellows*, 199 F.R.D. 22, 23-24. (D.Me. 2001)" *Id.*

opportunity to present their objections.[5]  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  This Court previously approved service by publication on Osama Bin Laden and other al Qaeda members in the case of *Fiona Havlish, et al. v. Sheikh Bin-Muhammad Bin-Laden, et al.*, Cause No. 02-CV-00305, and again in *Mwani, et al. v. Osama Bin-Laden and Afghanistan* Cause No. 04-CV-5266.  The court in *Mwani* observed that their "address is not known, nor is it easily ascertainable," and concluded that publication was "reasonably calculated to apprise [bin Laden and al Qaeda] of the lawsuit and afford them an opportunity to present their objections." *See Mwani v. Bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005) (citing to August 1999 opinion of the D.C. District Court).  Ultimately, the D.C. Circuit held that service by publication under these circumstances was valid. *Id.*.  Service by publication has also been permitted by this Court on other defendants including Osama Bin Laden in another terrorism-related case.  *See Burnett v. Al Baraka Inv. and Dev. Corp.*, Cause No. 02-CV-1616-JR (Minute Entry of Mar. 25, 2003, granting plaintiffs leave to provide service by publication).

District courts in other circuits are also following the Ninth Circuit's interpretation of Rule 4(f) in *Rio*.  In *B.P. Products North America, Inc., v. Dagra*, 236 F.R.D. 270 (E.D. Va. 2006), the court held that service by publication in two Pakistani newspapers was reasonably calculated to provide a guarantor with sufficient notice of a creditor's action, and thus such alternative service satisfied due process and was an acceptable alternative means.  Similarly, the Northern District of Virginia, finding no controlling authority in the Fourth Circuit Court of Appeals, adopted the reasoning of the *Rio* court and ordered service by alternative means where a defendant was evasive regarding his whereabouts and attempts at physical service of process

---

[5] "By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2).  *Forum Fin. Group, LLC v. President & Fellows*, 199 F.R.D. 22, 23-24. (D. Me. 2001)" *Id.*

proved unsuccessful and seemingly futile. *Williams v. Advertising Sex LLC*, 231 F.R.D. 483, 486 (N.D. Va. 2005).

In *S.E.C. v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987), *cert. denied* 486 U.S. 1014 (1988), an insider trading suit, service by publication was affirmed where the foreign defendants were difficult to serve personally. The Court found that the plaintiff "reasonably concluded that the [defendants] resided or conducted business in Europe and chose a publication likely to be read by international investors," and that the facts of that case were "distinguishable from cases where notice was published in a small regional paper or the advertisement contained nothing which would draw a party's attention to it." *Id.* at 1093. For this reason, and because the defendants were likely to have been aware of the SEC's investigation into their action, the *Tome* Court concluded that "[n]otice by publication, in the circumstances surrounding this action, was reasonably calculated to apprise the interested parties of the lawsuit." *Id.* The Court also noted that, "As business dealings have become increasingly interstate and international, the means of giving notice have been extended to meet these situations, so that parties may be held accountable in our courts of justice." *Id.*

The unserved Defendants in this case are not amenable to service by the specific methods authorized by Rule.[6] As in *Tome*, the Defendants in the instant action likely are already aware of this case. Defendant Qadhafi is the unofficial leader of the Libyan government and Defendant Abdullah Senoussi is a high-ranking government official; as such, it would be unreasonable to believe that they are unaware of this case in which Libya itself is a Defendant. Furthermore, because counsel representing Libya, Eckert Seamans, currently represents two of these unserved Defendants in other pending cases in this district, it is quite possible that the unserved

---

[6] Plaintiffs cannot ascertain whether service has been accomplished via issuance of Letters Rogatory; however, the remaining unserved defendants are Muammar Qadhafi, Abdullah Senoussi, Nasser Ali Ashour, and Khalifa Ahmed Bazelya.

13

Defendants have become aware of the instant pending suit.  In any case, the publication methods that Plaintiffs propose are designed to ensure that Defendants are apprised of the lawsuit.

In the instant case, service by publication is warranted given the cultural hostilities and dangerous conditions preventing service of process in Libya.  Nelson Tucker, the lead process server for Plaintiffs, reports an unwillingness of experienced process servers to attempt personal service on these Defendants in Libya for fear of retaliation and punishment by the Libyan government.  *See* Tucker Declaration attached hereto as Exhibit A.  Moreover, Defendant Qadhafi, as head of the Libyan government, does not reside or work in a specific location and Defendant Senoussi is being concealed by the military. Continued attempts to find a willing process server in the region would be futile, and Plaintiffs have no desire to put anyone in harm's way when a publication in newspapers of general circulation will provide sufficient notice of this lawsuit.  *See, e.g., Burnett v. Al Baraka Inv. and Dev. Corp.*, Case No. 02-CV-1616-JR, Docket Entry #95, Exhibit B - Declaration of Nelson Tucker; attached hereto as Exhibit G.

As such, Plaintiffs hereby seek to serve the remaining unserved Defendants in this action by publication in both English and Arabic in the following publications: *International Herald Tribune* and *Al-Quds Al-Arabi*.  Plaintiffs also seek an extension of time in which to complete this publication.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that this Court should GRANT their Motion for Service of Process by Alternate Means and permit service by publication on Defendants Muammar Qadhafi, Abdullah Senoussi, Nasser Ali Ashour, and Khalifa Ahmed Bazelya by publication in the *International Herald Tribune* and *Al-Quds Al-Arabi*, and reasonable extension of time in which to do so.

Dated: January 18, 2008                                  Respectfully submitted,


                                                          /s/ Jodi W. Flowers
                                                         Ronald L. Motley, Esq.
                                                         Donald A. Migliori, Esq.
                                                         Jodi Westbrook Flowers, Esq.
                                                         Michael E. Elsner, Esq.
                                                         Vincent I. Parrett, Esq.
                                                         Justin B. Kaplan, Esq.
                                                         John M. Eubanks, Esq.
                                                         MOTLEY RICE LLC
                                                         28 Bridgeside Blvd.
                                                         P.O. Box 1792
                                                         Mount Pleasant, SC 29465
                                                         (843) 216-9000
                                                         Fax: (843) 216-9450
                                                         jflowers@motleyrice.com

                                                         *Attorneys for Plaintiffs*