# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK MCDONALD, et al., | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 06-0729 (JR) |
| v. | § | |
| | § | |
| THE SOCIALIST PEOPLE'S LIBYAN | § | |
| ARAB JAMAHIRIYA, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF KATHERINE KINSELLA

I, Katherine Kinsella, being duly sworn, hereby declare as follows:

1. I am President of Kinsella/Novak Communications, LLC ("KNC"), an advertising and legal notification consulting firm in Washington, D.C. specializing in the design and implementation of class action and bankruptcy notification programs to reach unidentified putative class members primarily in consumer and mass tort litigation. My business address is 2120 L Street, NW, Suite 205, Washington, D.C. 20037. My telephone number is (202) 686-4111.

2. I submit this declaration in connection with *McDonald v. The Socialist People's Libyan Arab Jamahiriya* pending in the United States District Court for the District of Columbia. This declaration is based upon my personal knowledge and upon information provided by my associates and staff.

3. I am a nationally recognized specialist in the development and implementation of notification programs in mass tort, consumer and product liability class actions and bankruptcies. My firm and I have developed and directed some of the largest and most complex national

notification programs in the country. The scope of the firm's work includes notification programs in antitrust, bankruptcy, consumer fraud, mass tort and product liability litigation. Specific cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco, and Holocaust claims. The firm has developed or consulted on over 250 notification programs, placing over $160 million in media notice. Selected cases are attached as Exhibit 1.

4.   Courts have admitted expert testimony from KNC on our firm's quantitative and qualitative evaluations of the effectiveness of notice programs and several courts have commented favorably, on the record, regarding the effectiveness of notice plans prepared by KNC. Selected Judicial Comments are attached as Exhibit 2.

5.   KNC was retained to design and implement the Notice to be served to Muammar Qadhafi, Abdullah Senoussi, Nasser Ali Ashour and Khalifa Ahmed Bazelya (the "Named Defendants") by publication. I submit this declaration to describe the implementation of the Notice to-date.

6.   In the Order filed on January 24, 2008, the Court granted approval for the Notices, attached as Exhibit 3, to be placed in the *International Herald Tribune* (Europe, Middle East and Africa edition) and *Al-Quds Al-Arabi*. The Court approved the Notices to run once a week for four consecutive weeks.

7.   On February 19, 2008, KNC placed an advertising space reservation with the *International Herald* for the English-language Notice pursuant to the Court's Order. On February 12, 2008, KNC placed an advertising space reservation with our international advertising representative for *Al-Quds Al-Arabi* for the Arabic-language Notice pursuant to the Court's Order.

8.   The Notice was accepted by the *International Herald Tribune* and to-date has appeared once on page 5 of the February 28, 2008 issue. A true and correct copy is attached as Exhibit 4. The Notice is scheduled to appear in the *International Herald Tribune* on March 6, 2008, March 13, 2008 and March 20, 2008

9.  On February 26, 2008, *Al-Quds Al-Arabi* refused to accept the Notice indicating that it would not accept the Notice if it included the Named Defendants and the newspaper's name in the text.

10. KNC made attempts to negotiate placement of the Notice but was informed on February 27, 2008 by an *Al-Quds Al-Arabi* representative that they would consider accepting the Notice if KNC was willing to pay $126,000 for each placement of the Notice, in addition to cost to place each Notice, which is $2,950. The original placement costs for the Notice to appear once a week for four consecutive weeks Al-*Quds Al Arabi* is $11,800. The total cost requested by *Al-Quds Al-Arabi* is $515,800.

11. In a further effort to negotiate the placement, KNC was authorized by Plaintiffs' Counsel on February 28, 2008 to offer an additional $10,000 per placement, but this offer was rejected.

12. In an attempt to comply with the Court's Order, KNC approached three other newspapers and one magazine with circulation in Northern Africa. These publications are:

    a.  *Al-Hayat*, an independent Arabic-language daily newspaper with worldwide circulation of approximately 160,000 – 170,000.

    b.  *Asharq Alawsat*, a pan-Arabic daily newspaper published in both Arabic and English with an estimated circulation of 249,000.

    c.  *Arab News*, an English-language daily newspaper that circulates in Northern Africa, among others areas, with an estimated circulation of 65,000.

    d.  *Al Iktissad Wal Aamal*, an Arabic-language monthly business magazine that circulates throughout the Middle East North Africa region with an estimated circulation of 78,000.

13. All four publications refused the Notice because it included the Named Defendants in the text. In an effort to further negotiate, KNC offered the $10,000 premium per placement but the newspapers rejected the Notice as written.

14. Additionally, KNC explored publishing the Notice in five Libyan newspapers that have a strong readership.  These publications are:

    a.  *Al-Shams*, a state-owned Arabic-language political daily newspaper with an estimated circulation of 15,000.

    b.  *Al Fajer Al Jaded* a state-owned Arabic-language daily newspaper with an estimated circulation of 15,000.

    c.  *Al Jumhuriyah*, a state-owned Arabic-language daily newspaper with an estimated circulation of 13,500.

    d.  *Oya (Tripoli)*, a semi-private Arabic-language daily newspaper with an estimated circulation of 25,000.

    e.  *Gorina*, a semi-private Arabic-language daily newspaper with an estimated circulation of 25,000.

15. All five publications rejected the Notice because it included the Named Defendants and the country name in the text.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.  Executed at Washington, D.C. this 5th day of March 2008.

*Katherine Kinsella*
Katherine Kinsella

# EXHIBIT 1

# Kinsella/Novak Communications, LLC
## Selected Case Experience

**Antitrust**

*In re: Copper Antitrust Litigation,* M.D.L. No. 1303 (W.D. Wis.)

*In re Nasdaq Market-Makers Antitrust Litigation,* No. M21-68, 94 CV 3996, M.D.L. No. 1203 (S.D.N.Y.) (securities)

*State of Connecticut v. Mylan Laboratories, Inc.,* M.D.L. No. 1290, Misc. No. 99-276 (D.D.C.) (pharmaceuticals)

*In re Toys "R" Us Antitrust Litigation*, M.D.L. No. 1211, Master File No. CV-97-5750 (E.D.N.Y.) (toys and other products)

*State of Florida v. Nine West Group, Inc.,* Civil Action No. 00 CV 1707 (S.D.N.Y) (shoes)

*In re Cardizem Antitrust Litigation,* 200 F.R.D. 326 (E.D. Mich.) (Cardizem)

*In re Buspirone Antitrust Litigation,* M.D.L. No. 1413 (S.D.N.Y.) (Buspar)

*In re State of Ohio vs. Bristol-Myers Squibb, Co.,* 1:02-CV-01080 (D.D.C.) (Taxol)

*Raz v. Archer Daniels Midland Co., Inc.,* No. 96-CV-009729 (Wis. Cir. Ct. Milwaukee County) (citric acid)

*In re Compact Disc Minimum Advertised Price Antitrust Litigation,* M.D.L. No. 1361 (prerecorded music products)

*Kelley Supply, Inc. v. Eastman Chemical Co.,* No. 99CV001528 (Wis. Cir. Ct., Dane County) (Sorbates)

*Giral v. Hoffman-LaRoche Ltd.,* C.A. No. 98 CA 7467 (vitamins)

**Consumer**

*Burch v. American Home Products Corp.,* No. 97-C-204 (1-11) (W.Va. Cir. Ct., Brooke County) (Fen Phen)

*Woosley v. State of California,* No. CA 000499 (Cal. Super. Ct. Los Angeles County) (automobiles)

*Fettke v. McDonald's Corp.,* Case No. 044109 (Cal. Super. Ct., Marin County) and *BanTransFat.com v. McDonald's Corp.,* Case No. 034828 (Cal. Super. Ct., Marin County) (trans fatty acids)

*Weiner v. Cal-Shake, Inc.,* J.C.C.P. No. 4208 (Cal. Super. Ct., Contra Costa County) (roofing product)

*Galanti v. The Goodyear Tire & Rubber Company,* Case No. 03-209

(D.N.J.) (radiant heating)

**Discrimination**

*McNeil v. American General Life and Accident Insurance Co.,* No. 8-99-1157 (M.D. Tenn.) (insurance)

*Nealy v. Woodmen of the World Life Insurance Co.,* No. 3:93 CV-536 BN (S.D. Miss.) (insurance)

**Mass Tort**

*In re Holocaust Victim Assets Litigation,* No. CV 96-4849 (Consolidated with CV-5161 and CV 97-461) (E.D.N.Y.) (Holocaust)

*Ahearn v. Fibreboard Corporation,* C.A. No. 6:93-CV-526 (E.D. Tex.), and *Continental Casualty Co. v. Rudd, C.A.* No. 6:94cv458 (E.D.Tex.) (asbestos injury)

*Georgine v. Amchem, Inc.,* C.A. No. 93-CV-0215 (E.D.Pa.) (asbestos injury)

*Engle v. RJ Reynolds Tobacco Co.,* No. 94-08273 CA 20 (Fla. Cir. Ct., Dade County) (tobacco injury)

*Backstrom v. The Methodist Hospital,* No. H-94-1877 (S.D. Tex.) (TMJ injury)

**Pension Benefits**

*Forbush, Rhodes v. J. C. Penney Company, Inc. Pension,* Nos. 3:90-2719-X and 3:92-0109-X (N.D. Tex.)

*Collins v. Pension Benefit Guarantee Corp.,* No. 88-3406 and *Page v. Pension Benefit Guarantee Corp.,* No. 89-2997 (D.D.C.)

**Product Liability**

*Cox v. Shell Oil Co.,* No. 18,844 (Tenn. Ch. Ct., Obion Co.) (polybutylene pipe)

*Naef v. Masonite Corp.,* No. CV-94-4033 (Ala. Cir. Ct. Mobile County) (hardboard siding product)

*In re Louisiana Pacific Corp. Inner Seal OSB Trade Practices Litigation,* M.D.L. No. 1114, C 95-3178 (N.D. Cal.) (oriented strand board)

*Cosby v. Masonite Corp.,* No. CV-97-3408 (Ala. Cir. Ct., Mobile County) (siding product) and *Quin v. Masonite Corp.,* No. CV-97-3313 (Ala. Cir. Ct. Mobile County) (roofing product)

*Ruff v. Parex, Inc.,* No. 96-CvS 0059 (N.C. Super. Ct., Hanover County) (EIFS)

*Garza v. Sporting Goods Properties, Inc.,* No. SA 93-CA-1082 (W.D. Tex.) (gun ammunition)

*Richison v. Weyerhaeuser Company Limited,* No. 05532 (Cal. Super. Ct., San Joaquin County) (roofing product)

*Shah v. Re-Con Building Products, Inc.,* No. C99-02919 (Cal. Super. Ct., Contra Costa County) (roofing product)

*Hart v. Central Sprinkler Corp.,* No. BC 17627 (Cal. Super. Ct., Los Angeles County) and *County of Santa Clara v. Central Sprinkler Corp.,* No. CV 17710119 (Cal. Super. Ct., Santa Clara County) (sprinklers)

**Bankruptcies with Mass Tort Claimants**

*In re Johns-Manville Corp.,* 68 B.R. 618, 626 (Bankr. S.D.N.Y.) (asbestos)

*In re Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.) (breast implant)

*In re U.S. Brass Corp.,* No.94-40823S (Bankr. E.D. Tex.) (polybutylene)

*In re The Celotex Corp.,* Consolidated Case Nos: 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.) (asbestos)

*In re Raytech Corp.,* No. 5-89-00293 (Bankr. D. Conn.) (asbestos)

# EXHIBIT 2

# Kinsella/Novak Communications, LLC
## Selected Judicial Comments

---

### Compact Disc Minimum Advertised Price Antitrust Litigation (2002/2003)
*In re Compact Disc Minimum Advertised Price Antitrust Litigation*, D. Me., MDL No. 1361

In approving the notice plan for implementation in the Compact Disc Minimum Advertised Price Antitrust Litigation, Judge D. Brock Hornby stated, "(the plan) provided the best practicable notice under the circumstances and complied with the requirements of both 15 U.S.C. 15c(b) (1).... the notice distribution was excellently designed, reasonably calculated to reach potential class members, and ultimately highly successful in doing so."

### Johns-Manville Bankruptcy Reorganization (1986/1988)
*Johns-Manville Corp.* 68 B.R. 618, 626 (Bankr. S.D.N.Y.), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.* 843 F. 2d. 636 (2d Cir.)

In approving the notification plan in the Johns-Manville Bankruptcy Reorganization, the court referred to it as "an extensive campaign designed to provide the maximum amount of publicity ... that was reasonable to expect of man and media."

### Foothill/De Anza Community College District v. Northwest Pipe Company (2004)
*Foothill/De Anza Community College District v. Northwest Pipe Company,* No. CV-00-20749-JF/EAI (N.D. Cal.)

"The Court finds that the settling parties undertook a thorough and extensive notice campaign designed by Kinsella/Novak Communications, Ltd., a nationally-recognized expert in this specialized field.  The Court finds and concludes that the Notice Program as designed and implemented provides the best practicable notice to the Class, and satisfied requirements of due process."

(Honorable Jeremy Fogel, U.S. District Court for the Northern District of California, San Jose Division)

### Galanti v The Goodyear Tire & Rubber Company (2004)
*Donato Galanti v. The Goodyear Tire & Rubber Company,* No. 03-209 (SRC) (D.N.J.)

"The published notice, direct notice and Internet posting constituted the best practicable notice of the Fairness Hearing, the proposed Amended Agreement, Class Counsels' application for fees, expenses and costs, and other matters set forth in the Class Notice and the Summary Notice.  The notice constituted valid, due and sufficient notice to all members of the Settlement Classes, and complied fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, the laws of New Jersey and any other applicable law."

(Honorable Stanley R. Chesler, U.S. District Court for the District of New Jersey)

## Azizian v. Federated Department Stores, Inc. (2004)
*Fatemah Azizian v. Federated Department Stores, Inc.,* No. 3:03 CV-03359 SBA (N.D. Cal.)

"The notice was reasonable and the best notice practicable under the circumstances; was due, adequate and sufficient notice to all class members; and complied fully with the laws of the
United States and of the Federal Rules for Civil Procedure, due process and any other applicable rules of court."

(Honorable Sandra Brown Armstrong, U.S. District Court for the Northern District of California, Oakland Division)

## Naef v. Masonite Corporation (1997)
*Naef v. Masonite Corp.,* No. CV-94-4033 (Ala. Cir. Ct. Mobile County)

"In November, 1997, the Court approved a massive Notice Program to apprise class members of the class action <u>Settlement</u>, including the individually mailed, notices, publication notice and notification by way of other avenues nationally and locally. This Notice Program was designed by recognized experts, approved by the mediator and the Court, and implemented diligently by the parties, at defendants' cost. It provided the best notice practicable to the Class, comports with due process, and was clearly adequate under Alabama Rule of Civil Procedure 23(e), the United States Constitution, and other applicable law."

(Honorable Robert G. Kendall, Circuit Court of Mobile County, Alabama, January 23, 1998.)

## Collins v. Pension Benefit Guaranty Corp. (1996)
*Collins v. Pension Benefit Guarantee Corp.,* No. 88-3406 (D.D.C.)

"The notice provided was the best notice practicable under the circumstances. Indeed, the record shows that the notice given was consistent with the highest standards of compliance with Rule 23(e)."

## Ahearn v. Fibreboard and Continental Casualty Co. v. Rudd (1994)
*Ahearn v. Fibreboard Corp.,* No. 6:93 cv526 (E.D. Tex.) and *Continental Casualty Co. v. Rudd*, No. 6:94cv458 (E.D. Tex.)

In approving the notice plan for implementation in the *Ahearn* and *Rudd* class actions, Judge Parker stated, "I have reviewed the plan of dissemination, and I have compared them to my knowledge at least of similar cases, the notices that Judge Weinstein has worked with [<u>Agent Orange</u>] and Judge Pointer [<u>Silicon Gel Breast Implants</u>], and it appears to be clearly superior."

(Chief Judge Robert M. Parker, U.S. District Court, Eastern District of Texas. -- July 29, 1994)

### Georgine v. Amchem Products (1993)
*Georgine v. Amchem,* 158 F.R.D. 314, 326 (E.D. Pa.)

Judge Reed explained that the notice program developed by Kinsella "goes beyond that provided in [previous cases]" and "the efforts here are more than adequate to meet the requirements of Rule 23(c)(2)."

### Cox V. Microsoft Corporation (2006)
*Cox v. Microsoft Corporation,* No. 105193/00 (N.Y. Supreme Ct., New York County)

"The court finds that the combination of individual mailing, e-mail, website and publication notice in this action is the most effective and best notice practicable under all the circumstances, constitutes due, adequate and reasonable notice to all Class members and otherwise satisfies the requirements of CPLR 904, 908 and other applicable rules. The Settlement meets the due process requirement for class actions by providing Class members an opportunity either to be heard and participate in the litigation or to remove themselves from the Class."

(Honorable Karla Moskowitz, Supreme Court of the State of New York, County of New York)

### MSG (2006)
*Eugene Higgins v. Archer-Daniels Midland Co.,* Second Judicial District Court, County of Bernalillo C-202-CV-200306168 (New Mexico)

"The Court finds that the form and method of notice given to the Settlement Class, including both mailed notice to persons and firms for whom such notice was practical and extensive notice by publication through multiple national and specialized publications, complied with the requirements of Rule 1-023 NMRA 2006, satisfied the requirements of due process, was the best notice practicable under the circumstances, and constituted due and sufficient notice of the Settlement Agreements and their Final Approval Hearing, and other matters referred to in the Notice. The notice given to the Settlement Class was reasonably calculated under the circumstances to inform them of the pendency of the actions involved in this case, of all material elements of the proposed Settlements, and of their opportunity to exclude themselves from, object to, or comment on the Settlements and to appear at the Final Approval Hearing."

(Honorable William F. Lang, Second Judicial District Court, County of Bernalillo, State of New Mexico)

### The Celotex Corporation
*In re The Celotex Corporation, et al.,* Chapter 11, Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.)

"...all counsel should be complimented on the fact that they have gone to every possible conceivable method of giving notice from putting it on TV and advertising it in papers..... the record should also reflect the Court's appreciation to Ms. Kinsella for all the work she's

done, not only in pure noticing, but ensuring that what noticing we did was done correctly and professionally."

### Lovelis v. Titeflex Corporation

*Lovelis v. Titeflex Corp.,* No. CIV-2004-211, (Ark. 9th Cir. Ct., Clark County)

"Accordingly, the Notice as disseminated is finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the Notice campaign described in the Preliminary Approval Order and completed by the Parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions. The Court further finds that the Notice campaign undertaken concisely and clearly states in plain, easily understood language:

     (a.)    the nature of the action;

     (b.)    the definition of the class certified;

     (c.)    the class claims, issues or defenses;

     (d.)    that a Class Member may enter an appearance and participate in person or through counsel if the member so desires;

     (e.)    that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

     (f.)    the binding effect of the Final Order and Judgment on Class Members.

(Honorable John A. Thomas, Arkansas 9th Circuit Court, Clark County)

EXHIBIT 3

# English-Language Notice
## *International Herald tribune*

LEGAL NOTICE

To Named Defendants:

> MUAMMAR QADHAFI
> ABDULLAH SENOUSSI
> NASSER ALI ASHOUR
> KHALIFA AHMED BAZELYA

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, CIVIL DIVISION, *Mark McDonald, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.*, Case No. 1:06-CV-00729-JR, Judge James Robertson issued an order for service by publication on January 24, 2008. It was ordered that notice of the above-captioned action should be published in The International Herald Tribune (in English) and Al-Quds Al-Arabi (in Arabic).

Notice is hereby served on Defendants listed above. Defendants are hereby summoned and required to serve upon The Clerk of the Court, United States District Court for the District of Columbia, 333 Constitution Avenue, N.W. Washington, D.C. 20001, an Answer to the Complaint within sixty (60) days after service of the summons, exclusive of the day of service. If Defendants fail to do so, judgment by default may be taken against Defendants for relief demanded in the Complaint. The Complaint was filed for wrongful death; conspiracy; battery; actions for compensatory and punitive damages pursuant to 28 U.S.C. § 1605(a)(5) and 28 U.S.C. § 1605(a)(7); survival actions; negligent and/or intentional infliction of emotional distress; 28 U.S.C. § 1350; and aiding and abetting, intentionally facilitating, and/or recklessly disregarding crimes against humanity in violation of the Law of Nations.

This notice as well as the complaint and summonses are posted on the website http://www.motleyrice.com/terrorism/Libya_Lawsuit.asp

# Arabic-Language Notice
## *Al-Quds Al-Arabi*

**إشعار قانوني**

للمدعى عليهم التالية أسماؤهم:

معمر القذافي

عبد الله سنوسي

ناصر علي عاشور

خليفة أحمد بازليا

**في المحكمة الجزئية للولايات المتحدة لمقاطعة كولومبيا، الشعبة المدنية،** مارك ماكدونالد، وآخرون ضد الجماهيرية العربية الليبية الاشتراكية الشعبية، وآخرون، القضية رقم 1:06-CV-00729-JR. أصدر القاضي جيمس روبرتسون أمرا للإعلان بحلول 24 كانون الثاني / يناير، 2008. وقد صدر الأمر بأنه ينبغي أن ينشر الإشعار المشار إليه أعلاه في صحيفة انترناشونال هيرالد تربيون (باللغة الإنجليزية) والقدس العربي (باللغة العربية). وبموجب هذا الإشعار فقد تم إعلان المتهمين الواردة أسماؤهم أعلاه.

وبموجبه يستدعى المدعى عليهم ويطلب منهم أن يقدموا جوابا على الشكوى لكاتب المحكمة، المحكمة الجزئية للولايات المتحدة لمقاطعة كولومبيا، 333 Constitution Avenue, N.W. Washington, D.C. 20001، وذلك في غضون ستين (60) يوما بعد الإعلان بالحضور، بإستثناء يوم الإعلان. وإذا أخفق المدعى عليهم في القيام بذلك، فقد يصدر حكم غيابي ضد المتهمين لإنصاف المطالب به في الشكوى. وقد تم التقدم بهذه الشكوى عن الوفاة غير المشروعة؛ التآمر؛ الاعتداء؛ وعن أضرار تعويض وتعويضات جزائية عملا بالمادة 28 U.S.C. من دستور الولايات المتحدة القسم 1605(a)(5) § والمادة 28 U.S.C. منه القسم 1605(a)(7) §؛ وعن دعاوى الورثة الأحياء؛ والإهمال و/ أو تعمد إلحاق الاضطراب العاطفي؛ و عن المادة 28 منه القسم 1350 §؛ وعن المساعدة والتحريض، والتسهيل المتعمد، و/ او تجاهل بإهمال لجرائم ضد الإنسانية مما يعد انتهاكا لقانون الأمم.

وقد تم الإعلان عن هذا الإشعار والشكوى والاستدعاءات على موقع:

http://www.motleyrice.com/terrorism/Libya_Lawsuit.asp

EXHIBIT 4

## OBITUARY

# William F. Buckley Jr., conservatism's defender

**By Douglas Martin**

William F. Buckley Jr., who marshaled polysyllabic exuberance, famously arched eyebrows and a refined, perspicacious mind to elevate conservatism to the center of American political discourse, died Wednesday at his home in Stamford, Connecticut.

Buckley, 82, suffered from diabetes and emphysema.

Buckley's winningly capricious personality, replete with ten-dollar words and a darting tongue writers loved to compare to an anteater's, hosted one of television's longest-running programs, "Firing Line," and founded and shepherded the influential conservative magazine National Review.

He also found time to write at least 55 books, ranging from sailing odysseys to spy novels to celebrations of his own dashing daily life, and to edit five more. A personal memoir of Barry Goldwater is due to be published in April, and Buckley was working on a similar book about Ronald Reagan for release in the fall.

The more than 4.5 million words of his 5,600 biweekly newspaper columns, "On the Right," would fill 45 more medium-sized books.

Buckley's greatest achievement was making conservatism respectable in liberal post-World War II America. He mobilized the young enthusiasts who helped nominate Barry Goldwater in 1964, and saw his dreams fulfilled when Reagan and the Bushes captured the Oval Office.

To Buckley's enormous delight, the historian Arthur Schlesinger Jr. termed him "the scourge of liberalism." In remarks at National Review's 30th anniversary in 1985, President Reagan said, "You didn't just part the Red Sea — you rolled it back, dried it up and left exposed, for all the world to see, the naked desert that is statism."

Buckley declared war on liberalism, beginning with his blistering assault on Yale as a traitorous den of atheistic collectivism immediately after his graduation from the university.

Buckley weaved the tapestry of what became the new American conservatism from libertarian writers like Max Eastman, free-market economists like Milton Friedman, traditionalist scholars like Russell Kirk and anti-Communist writers like Whittaker Chambers. But the persuasiveness of his argument hinged on his own tightly argued case for a conservatism based on the national interest and a higher morality.

Many of varied political stripes came to see his life as something of an art form — from racing through city streets on a motorcycle to a quixotic campaign for

William absorbed his family's conservatism along with its Catholicism. At 14, he followed his brothers to the Millbrook School, a nearby preparatory school.

He served in the army from 1944 to 1946, and managed to make second lieutenant after first putting colleagues off with his mannerisms.

Buckley then entered Yale where he studied political science, economics and history; established himself as a fearsome debater; was elected chairman of The Yale Daily News; and joined Skull and Bones, the most prestigious secret society.

Published in 1951, "God and Man at Yale: The Superstitions of 'Academic Freedom,'" charged the powers at Yale with having an atheistic and collectivist bent and called for the firing of faculty members who advocated values not in accord with those that the institution should be upholding.

After a year in the Central Intelligence Agency in Mexico City, Buckley went to work for the American Mercury magazine, but resigned after spotting anti-Semitic tendencies in the magazine.

Buckley wrote a second book with L. Brent Bozell, his brother-in-law. Published in 1954, "McCarthy and His Enemies" was a sturdy defense of the senator from Wisconsin who was then in the throes of his campaign against communists, liberals and the Democratic Party.

In 1955, Buckley started National Review with a $100,000 gift from his father. The first issue, which came out in November, claimed the publication "stands athwart history yelling Stop." It proved it by lining up squarely behind Southern segregationists, saying blacks should be denied the vote. After some conservatives objected, Buckley suggested instead that both uneducated whites and blacks should not be allowed to vote.

Along with offering a forum to big-gun conservatives, National Review cultivated the career of several younger writers, some of whom would shake off the conservative attachment and go their leftward ways.

Buckley's personal visibility was magnified by his "Firing Line" program, which ran from 1966 to 1999. He led the conservative team in 1,504 debates on topics like "Resolved: The women's movement has been disastrous."

To the politician Mark Green, he purred, "You've been on the show close to 100 times over the years. Tell me, Mark, have you learned anything yet?"

At age 50, Buckley added two pursuits to his repertoire: He took up the harpsichord and became a novelist. Some 10 of the novels are spy tales.

Buckley's spirit of fun was apparent in his 1965 campaign for mayor of New



Said Khatib/Agence France-Presse

The mother of Abdullah Edwan, whom Hamas described as a senior rocket engineer, mourning him in Khan Yunis on Wednesday.

# Hamas and Israelis counterattack

**By Isabel Kershner**

**JERUSALEM:** In a sudden escalation of violence on Wednesday, an Israeli civilian was killed in a rocket attack from Gaza by Hamas militants, the first such fatality in nine months, and at least seven Palestinians, mostly militants, were killed in Israeli airstrikes.

Among the dead in Gaza were two Palestinian teenagers who were killed as the Israeli Air Force retaliated against a rocket-launching squad.

Israel came under heavy rocket fire after an earlier air force strike that killed five members of the Hamas military wing in southern Gaza.

Hamas, the militant group that controls Gaza, claimed responsibility for the rocket barrages, saying they were in retaliation for the first Israeli strike.

The second deadly airstrike came in the midst of the rocket fire, killing the two teens, said Dr. Muawiya Hassanein, a Palestinian medical official in Gaza. He said that 12 other civilians had been wounded. An Israeli Army spokeswoman said the strike was aimed at a rocket-firing squad, and witnesses in Gaza told the Palestinian news media that the civilians were hit while standing at a launching site watching Hamas militants firing rockets.

More than 25 rockets were launched in the space of two hours on Wednesday

afternoon, the army spokeswoman said, with several landing in and around the Israeli border town of Sderot.

The rocket fire continued into the evening. At least three rockets landed in the Israeli coastal city of Ashkelon, north of Gaza. One fell in the parking lot of the Barzilai Hospital in the city.

The Israeli victim was identified as Ronnie Yihye, 47. He was fatally wounded in the chest by shrapnel from a rocket that landed in the parking lot of a college campus on the outskirts of Sderot. According to Israeli police figures, he was the 14th civilian to die from rockets fired from Gaza since 2001.

Another rocket hit the dining room of a chicken factory in Sderot shortly after the workers had eaten lunch there, the factory manager said.

The first Israeli strike on Wednesday killed five members of the Hamas military wing, the Qassam Brigades, as they were traveling in a minivan on a road west of the city of Khan Yunis. Two others were wounded, according to Palestinian medical officials.

Hamas described one of the dead, Abdullah Edwan, as a senior rocket engineer, and another, Muhammad Abu Aker, as a regional rocket squad commander. According to local residents, the men were on their way to a militant training camp in southern Gaza. Two of them were masked, they said, and had arrived

back in Gaza three weeks ago from Iran.

Relatives of Edwan, who is believed to have been the main target of the strike, said he had been trained in Syria and Iran.

An Israeli Foreign Ministry spokesman, Arye Mekel, termed the Hamas practice of firing rockets at Israeli civilian centers from areas populated by Palestinian civilians as a "war crime that hurts Israelis and Palestinians alike."

*Taghreed El-Khodary contributed reporting from Gaza City.*

## ◾ Airstrike hits Hamas office

Hamas security officials said Israeli aircraft struck the office of the prime minister in Gaza and the nearby Interior Ministry on Wednesday night, hours after Palestinian rocket attacks killed an Israeli student, The Associated Press reported from Jerusalem.

The security officials said missiles fired from helicopters hit the buildings, located in residential neighborhoods of Gaza City, wounding about 25 residents and 2 Hamas security guards.

The prime minister, Ismail Haniya, has not used his office recently, although his staff works there. There was no one in the office at the time of the attack.

# Russia tells Iran to halt enrichment activities

*Reuters*

**MOSCOW:** Russia warned Iran on Wednesday that unless it ceased uranium enrichment within days Moscow would support new UN sanctions being prepared by the West against the Islamic Republic.

The Russian envoy to the United Nations, Vitaly Churkin, said Moscow could back a sanctions resolution that the Western powers have drafted and that they want to discuss in the Security Council this week.

Churkin said via a video link from New York that Russia had undertaken "certain commitments" to "support the resolution that has been drafted in the past month" unless Iran stopped enrichment activities within the next few days.

"Russia is constantly insisting that the Security Council adopt certain sanctions against Iran," he said.

Tehran denies that it has a nuclear weapons program and says it has a right to enrich uranium.

Russia, a permanent member of the UN Security Council, has in recent weeks criticized the testing of a rocket by Iran and warned the country not to ignore the international community.

Russia has urged Iran to give full information on its nuclear program to the UN nuclear watchdog, the International Atomic Energy Agency.

If Iran spurns the sanctions resolution, it would be the third set of Iranian officials and companies targeted by the sanctions. Earlier rounds of sanctions were imposed in December 2006 and March 2007.

Russia is helping to build the Bushehr nuclear plant in Iran and this year finished delivering nuclear fuel to the plant under a $1 billion contract, which Moscow says removes any reason for Tehran to enrich uranium.

Iran, which has the world's second-largest gas reserves, last year proposed establishing an OPEC-style gas cartel with Russia, the world's largest gas producer. The idea has met strong opposition in Europe and the United States.

Moscow played down the Iranian proposal, but the Russian gas export monopoly, Gazprom, agreed this month with Iran's giant South Pars gas field.

motorcycle to a quixotic campaign for mayor of New York in 1965 to startling opinions like favoring the decriminalization of marijuana. He was often described as liberals' favorite conservative.

Buckley's vocabulary, sparkling with phrases from distant eras, became the stuff of legend.

And, inescapably, there was that aurora of pure mischief. In 1985, David Remnick, writing in The Washington Post, said, "He has the eyes of a child who has just displayed a horrid use for the microwave oven and the family cat."

William Francis Buckley Jr. was born in Manhattan on Nov. 24, 1925. Young

in his 1965 campaign for mayor of New York on the ticket of the Conservative Party. When he lost to John V. Lindsay, he won, count." He got 13.4 percent of the vote.

In his last years, as honors like the Presidential Medal of Freedom came his way, Buckley gradually loosened his grip on his intellectual empire. In 1998 he ended his frenetic schedule of public speeches. In 1999 he stopped "Firing Line" and in 2004 he relinquished his voting stock in National Review.

He wrote his last spy novel, sold his sailboat and stopped playing the harpsichord publicly.



William F. Buckley Jr. in the offices of National Review in 1965. He started the magazine as a voice for "the disciples of truth, who defend the organic moral order."
Sam Falk/The New York Times

## rebels release 4 politicians in Colombia

From news reports

**SAN JOSÉ DEL GUAVIARE, Colombia**

Colombian rebels handed four hostages over to the International Red Cross and the Venezuelan interior minister on Wednesday, ending more than six years of captivity.

The four Colombian politicians were freed in the southern jungles of Colombia around midday. Two Venezuelan helicopters with doctors aboard were flying them directly to Caracas. The four were released into the custody of President Hugo Chávez of Venezuela.

The handover raised hopes for a broader agreement to free dozens of other hostages.

The Revolutionary Armed Forces of Colombia, or FARC, announced Jan. 31 that it planned to free three hostages — Gloria Polanco and Orlando Beltrán, both former representatives, and former Senator Luis Eladio Pérez — and said they were in poor health. Former Senator Jorge Gechem was later added to the group.

The FARC freed two other politicians — Clara Rojas and Consuelo González — on Jan. 10.              (AP, Reuters)

---

## CROSSWORD

**Edited by Will Shortz**

**Across**

1 Sari, e.g.
5 Gloomy
9 Place for an emoticon
14 Life of Riley
15 Asian princess
16 Dodger All-Star pitcher Eric
17 Some
18 Deuce follower
19 Begin operating or stop operating
20 Confirmation or uncertainty
23 Fathomed
24 Stadium sound
25 Some Grammy winners
27 Belief in a life of harmony with nature
30 Unchanged or novel
34 Kobold
35 Repeated setting for Georges Seurat paintings
37 Discussion spots
38 Words of praise or words of condemnation
42 TV's Rojak
43 Respectful refusal
44 Peni's partner
45 Approve or penalize
48 Willie Mays and teammates
50 Deborah nominated for six Academy Awards
51 Accord
52 It's definite
55 Easy to see or impossible to see
60 Entangle or disentangle
62 Minimal tide
63 E.R. part: Abbr.
64 Comedic title role for Renée Zellweger, 2000
65 Unix
66 California's ___ Valley
67 Chaotic
68 Olaf's girlfriend in Lemony Snicket books
69 Sporty car roof option

**Down**

1 Last under use or erode under use
2 "Hurlyburly" playwright David
3 "No return"
4 "Great" czar
5 Grounds for legal action
6 Gary Burghoff role of TV and film
7 L., B. or J.
8 Revealing garment
9 It might be spiked
10 Jiang's husband
11 Like kids at a circus, maybe
12 Dope
13 Remaining or gone
21 Martini's partner
22 Paris accord
26 Sort through
27 Fair housing?
28 Welcome to paradise?
29 Commonly
30 ___ ring
31 Away from the office
32 Don't exist
33 Shenanigans
36 "No nation is permitted to live in ___ with impunity": Jefferson
39 Equine ankle
40 Gotham
41 Dr. ___ Hahn of "Grey's Anatomy"
46 Twinings competitor
47 Non-std.
49 Sitting
51 "O, sing to the Lord a new song," for one
52 Add to or remove from
53 Fabled slacker
54 12/24 and 12/31
56 Converts to a cause, briefly
57 Broadcast
58 Fictional submariner
59 Move gracefully or move clumsily
61 Nav. rank

Puzzle by Matt Ginsberg                The New York Times

**Solution to February 27 puzzle**

---

LEGAL NOTICE

**To Named Defendants:**

## MUAMMAR QADHAFI
## ABDULLAH SENOUSSI
## NASSER ALI ASHOUR
## KHALIFA AHMED BAZELYA

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, CIVIL DIVISION, *Mark McDonald, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.*, Case No. 1:06-CV-00729-JR, Judge James Robertson issued an order for service by publication on January 24, 2008. It was ordered that notice of the above-captioned action should be published in The International Herald Tribune (in English) and Al-Quds Al-Arabi (in Arabic).

Notice is hereby served on Defendants listed above. Defendants are hereby summoned and required to serve upon The Clerk of the Court, United States District Court for the District of Columbia, 333 Constitution Avenue, N.W. Washington, D.C. 20001, an Answer to the Complaint within sixty (60) days after service of the summons, exclusive of the day of service. If Defendants fail to do so, judgment by default may be taken against Defendants for relief demanded in the Complaint. The Complaint was filed for wrongful death; conspiracy; battery; actions for compensatory and punitive damages pursuant to 28 U.S.C. § 1605(a)(5) and 28 U.S.C. § 1605(a)(7); survival actions; negligent and/or intentional infliction of emotional distress; 28 U.S.C. § 1350; and aiding and abetting, intentionally facilitating, and/or recklessly disregarding crimes against humanity in violation of the Law of Nations.

This notice as well as the complaint and summonses are posted on the website http://www.motleyrice.com/terrorism/Libya_Lawsuit.asp