# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK McDONALD, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-00729-JR |
| | ) | |
| SOCIALIST PEOPLE'S LIBYAN ARAB | ) | |
| JAMAHIRIYA, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants, the Socialist People's Libyan Arab Jamahiriya, the Libyan External Security Organization ("LESO"), Muammar Qadhafi, Abdullah Senoussi, Musa Kusa, Khalifa Ahmed Bazelya and Nasser Ali Ashour ("the Libyan defendants"), by undersigned counsel, hereby move this Court pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules for Civil Procedure to dismiss this action on the basis that this Court lacks subject matter jurisdiction as well as *in personam* jurisdiction, that the Amended Complaint fails to state a claim and that, in any event, the claims are time-barred.

In support of this motion, defendants respectfully refer this Court to the attached Memorandum of Points and Authorities and proposed Order.

Respectfully submitted,

**ECKERT SEAMANS CHERIN
  & MELLOTT, LLC**

_____/s/ Thomas J. Whalen_____

Thomas J. Whalen, Esq. (D.C. Bar #208512)
Mark A. Johnston, Esq. (D.C. Bar #455764)
1747 Pennsylvania Ave., N.W.
Suite 1200
Washington, DC  20006-4604
(202) 659-6600
Fax: (202) 659-6699
twhalen@eckertseamans.com
mjohnston@eckertseamans.com

Of counsel:

Wendy West Feinstein, Esq.
ECKERT SEAMANS CHERIN
    & MELLOTT, LLC
600 Grant Street
44th Floor
Pittsburgh, PA 15219
(412) 566-6000
Fax:  (412) 566-6099
wfeinstein@eckertseamans.com

_Attorneys for Defendants, The Socialist
People's Libyan Arab Jamahiriya, Libyan
External Security Organization, Muammar
Qadhafi, Abdullah Senoussi,Musa Kusa,
Khalifa Ahmed Bazelya, and
Nasser Ali Ashour_

Dated: July 3, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing **Motion to Dismiss the Amended Complaint, Memorandum of Points and Authorities, and Proposed Order** were electronically filed and served, this 3rd day of July, 2008, to:

Jayne Conroy
Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP
112 Madison Avenue
New York, NY 10016-7416

Donald A. Migliori
Motley Rice, LLC
321 South Main Street
Providence, RI 02940

Jodi Westbrook Flowers
John Michael Eubanks
Justin B. Kaplan
Michael E. Elsner
Michelle Dara Hodkin
Ronald L. Motley
Motley Rice, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465

_/s/ Thomas J. Whalen_
Thomas J. Whalen

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK McDONALD, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-00729-JR |
| | ) | |
| SOCIALIST PEOPLE'S LIBYAN ARAB | ) | |
| JAMAHIRIYA, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

1747 Pennsylvania Ave., N.W.
Suite 1200
Washington, DC  20006-4604
(202) 659-6600
Fax: (202) 659-6699

*Attorneys for Defendants, The Socialist People's Libyan Arab Jamahiriya, Libyan External Security Organization, Muammar Qadhafi, Abdullah Senoussi,Musa Kusa, Khalifa Ahmed Bazelya, and Nasser Ali Ashour*

i

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION……………………………………….…………………………………..1

II. ARGUMENT……......……………………………………………………………………...5

A.  The Amended Complaint Should Be Dismissed Because This Court Lacks
Subject Matter Jurisdiction…………………………………………………………………5

    1.  Plaintiffs' Amended Complaint Does Not Meet
    The Requirements of 28 U.S.C. §1605A…………………………………………7

        a.  Plaintiffs' Section 1605A Claims are Untimely………………………10

        b.  Plaintiffs Amended Complaint Is Not A "Related Action"
        Pursuant to Section 1083(c)(3)…………………………………………12

    2.  Plaintiffs' Original Complaint Was Time-Barred……………………………13

        a.  The Statute of Limitations Began to Run from the Dates on Which
        Plaintiffs' Respective Individual Claims Arose………………………14

        b.  The Doctrine of Equitable Tolling Tolls The Statute of Limitations For a
        Reasonable Period After An Impediment To Suit Is Removed……………16

    3.  The Court Does Not Have Subject Matter Jurisdiction
    Over the Alien Plaintiffs' Claims………………………………………………18

    4.  The Complaint Does Not Establish an Exception to Immunity
    Under Section 1605(a)(2), the Commercial Activity Exception……………….21

    5.  The FSIA Does Not Provide Subject Matter Jurisdiction Over Claims Brought By
    Indirect Victims of Terrorism……………….……………………………….…24

    6.  The Court Lacks Subject Matter Jurisdiction Over
    The Claims of Plaintiff Michael Andrew Clark…………………………………26

B.  The Amended Complaint Fails to State a Claim…………………………………………...27

    1.  Plaintiffs Fail To State A Claim Under Section 1605A(c)……………….............27

2. Plaintiffs' Claims Against the Libyan State Defendants
Under The Torture Victims Protection Act Should Be Dismissed……………...……27

3. Plaintiffs Fail To State A Claim For Civil Conspiracy
Under Section 1605A(c)……………………………..………………………….....28

4. To The Extent Section 1605A Applies, Section 1605A(c) Is
The Exclusive Cause Of Action Available To Plaintiffs And Plaintiffs'
State Law Claims Must Be Dismissed..……………………………………………29

5. The Amended Complaint Should be Dismissed Because It Failed to Allege
Facts Linking Plaintiffs' Claimed Damages to Conduct Undertaken
by the Defendants……………………………..…………………………………...30

C. Plaintiffs' Class Action Claims Should Be Stricken for Plaintiffs' Failure
To Comply With Local Civil Rule 23.1(b)……………………………………………..33

D. The Exercise Of Personal Jurisdiction Over Defendants Violates
The Due Process Clause of The Fifth Amendment……………………………..................36

E. Plaintiffs' Claims against Defendant, Muammar Qadhafi Are
Subject to the Head-of-State Doctrine……………………………………………….....38

CONCLUSION..…………………………………………………….………………………..40

CERTIFICATE OF SERVICE…………………………………………………………..……42

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abur v. Republic of Sudan*,
437 F. Supp. 2d 166 (D.D.C. 2006)………………………………………………………...…20

*Acree v. Republic of Iraq*,
370 F.3d 41 (D.C. Cir. 2004)……………………………………………………………...26, 27

*Alexander v. Sandoval*,
532 U.S. 275 (2001)………………………………………………………………………...28

*Alfred Dunhill of London, Inc.* v. *Republic of Cuba*,
425 U.S. 682 (1976)……………………………………………………………………...22

*Allen v. Russian Fed'n*,
522 F. Supp. 2d 167, 190 (D.D.C. 2007)……………………………..…………………32

*Arce v. Garcia,*
434 F.3d 1254 (11th Cir. Fla. 2006)…………………………………………..…….17

*Argentine Republic v. Amerada Hess Shipping Corp.,*
488 U.S. 428 (1989)…………………………………………………...…..….5, 6, 18, 21

*Batson v. Powell,*
912 F. Supp. 565 (D.D.C. 1996)………………………………………………………34

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007)……………………………………………………………30, 32

*Black Panther Party v. Smith,*
661 F.2d 1243 (D.C. Cir. 1981)………………………………………………………34

*Ben-Rafael v. Islamic Republic of Iran,*
540 F. Supp. 2d 39 (D.D.C. Feb. 25, 2008)……………………………………...29

*Bettis v. Islamic Republic of Iran,*
315 F.3d 325 (D.C. Cir. 2003)……………………………………………………...29

*Brendsel v. Office of Federal Housing Enterprise Oversight,*
339 F. Supp. 2d 52 (D.D.C. 2004)……………………………………………………29

*Burnett v. New York Central,*
R.R. 380 U.S. 424 (1965)…………………………………………………………..18

*Burnett v. Al Baraka Investment &  Development Corp.,*
274 F. Supp. 2d 86, (D.D.C. 2003)(J. Robertson)……………………………………30

*Central Bank of Denver v. First Interstate Bank of Denver,*
511 U.S. 164 (1994)…………………………………………………………………...28

*Ciccipio v. Islamic Republic of Iran,*
30 F.3d 164 (D.C. Cir. 1994)…………………………………………………………23

*Cicippio-Puleo v. Islamic Republic of Iran,*
2002 WL 34408105 (D.D.C. June 21, 2002)…………………………………….…...25, 26

*Cicippio-Puleo v. Islamic Republic of Iran,*
353 F.3d 1024 (D.C. Cir. 2004)……………………………………………...…….….13, 25

*Collett v. Socialist Peoples' Libyan Arab Jamahiriya,*
362 F. Supp. 2d 230 (D.D.C. 2005)…………………………………………...…30, 39, 40

*Cryer v. Intersolutions, Inc.*,
2007 WL 1191928 (D.D.C. Apr. 20, 2007)……………………………………………...……35

*Dammarell v. Islamic Republic of Iran*,
2005 WL 756090 (D.D.C. Mar. 29, 2005)…………………………………………………27

*Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*,
79 F. Supp. 2d 374 (S.D.N.Y. 2000)………………………………………………………...6

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld and Sorkin*,
135 F.3d 837 (2d Cir. 1998)……………………………………………………………...28

*Doe v. State of Israel*,
400 F. Supp. 2d 86 (D.D.C. 2005)……………………………………………...…………5

*El-Fadl v. Central Bank of Jordan*,
75 F. 3d 668, 671 (D.C. Cir. 1996)………………………………………………………15

*\*Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*,
2007 WL 2007509 (D.D.C. July 9, 2007)……………………….……….……………14, 16, 18

*Fernandez-Vargas v. Gonzales*,
548 U.S. 30 (2006)……………………………………………………………….…8

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
905 F.2d 438 (D.C. Cir. 1990)…………………………………………………….………6

*Gilson v. Republic of Ireland*,
682 F.2d 1022 (D.C. Cir. 1982)………………………………………………………24

*Halverson v. Slater*,
129 F.3d 180 (D.C. Cir. 1997)…………………………………………………………...29

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)…………………………………………………………….…...36

*\*Howard v. Gutierrez*,
474 F. Supp. 2d 41 (D.D.C. 2007)……………………………………………...…34, 35

*Hurst v. Socialist People's Libyan Arab Jamahiriya*,
474 F. Supp. 2d 19 (D.D.C. 2007)…………………………………………………………27

*Hwang Geum Joo v. Japan*,
332 F.3d 679 (D.C. Cir. 2003)………………………………………………………...18

*In re Asemani,*
455 F.3d 296 (D.C. Cir. 2006)……………………………………………………………...20

*In re Atlas Van Lines, Inc.,*
209 F.3d 1064 (8th Cir. 2000)……………………………………………………………...34

*Int'l Shoe Co. v. Washington,*
326 U.S. 310 (1945)……………………………………………………………………...……36

*Isbrandtsen Tankers, Inc. v. President of India,*
446 F.2d 1198 (2nd Cir. 1971)……………………………………………………………39

*John R. Sand & Gravel Co. v. United States,*
128 S. Ct. 750 (2008)……………………………………………………………………….……14

*Judicial Watch, Inc. v. Nat'l Energy Policy Develop. Group,*
219 F. Supp. 2d 20 (D.D.C. 2002)………………………………………………………………28

*Kaiser Aluminum & Chem. Corp. v. Bonjorno,*
494 U.S. 827 (1990)……………………………………………………………………...……16

*Landgraf v. USI Film Prods.,*
511 U.S. 244 (1994)……………………………………………………………………...……8, 9

*La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya,*
477 F. Supp. 2d 131, 138 (D.D.C. 2007)……………………………………………………………6

*Lempert v. Republic of Khazakstan,*
223 F. Supp. 2d 200 (D.D.C. 2002)………………………………………………………...23

*Lindh v. Murphy,*
521 U.S. 320 (1997)……………………………………………………………………..……...7

*Malewicz v. City of Amsterdam,*
517 F. Supp. 2d 322 (D.D.C. 2007)………………………………………………………...24

*McCarthy v. Kleindienst,*
741 F.2d 1406 (D.C. Cir. 1984)……………………………………………………………34

*Mwani v. bin Laden,*
417 F.3d 1 (D.C. Cir. 2005)……………………………………………………………...23

*Nikbin v. Islamic Republic of Iran,*
471 F.Supp 2d 53 (D.D.C. 2007)……………………………………………………...……6, 36

*Pugh v. Socialist People's Libyan Arab Jamahiriya*,
2006 WL 2384915 (D.D.C. May 11, 2006)……………………………………….…………27, 40

*\*Phillips v. Heine,*
984 F.2d 489 (D.C. Cir. 1993)……………………………………………………......16, 17

*Phoenix Consulting, Inc. v. Republic of Angola,*
216 F.3d 36 (D.C. Cir. 2000)………………………………………………….………...........5

*Price v. Socialist People's Libyan Arab Jamahiriya,*
294 F.3d 82 (D.C. Cir. 2002)……………………………………….………………...38

*Republic of Argentina v. Weltover, Inc.*
504 U.S. 607 (1992)…………………………………………………………………22, 37

*Robinson v. Gov't of Malay.,*
269 F.3d 133, 146 (2d Cir. 2001)………………………………………………………...32

*Saudi Arabia v. Nelson,*
507 U.S. 349 (1993)……………………………………………………….……………...…23

*Schumann v. Commissioner,*
827 F.2d 808 (D.C. Cir. 1988)……………………………….....……………………………8

*Simon v. Republic of Iraq,*
2008 WL 2497417 (D.C. Cir. June 24, 2008)……………………………………………...9, 17

*South Carolina v. Katzenbach,*
383 U.S. 301 (1966)……………………………………………………………………...37

*Spacil v. Crowe,*
489 F.2d 614 (5th Cir. 1974)…………………………………………………………….39

*Texas Trading and Milling v.  Federal Republic of Nigeria,*
647 F.2d 300 (2d Cir. 1981)…………………………………………………………...37

*United States v. Nordic Village, Inc.,*
503 U.S. 30 (1992)……………………………………………………….…..…………25

*United States v. Noriega,*
117 F.3d 1206 (11th Cir. 1997)……….…………………………………..….………..39

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980)………………………………………………………….………..36

*Wyatt v. Syrian Arab Repub.,*
362 F. Supp. 2d 103, 111 n.1 (D.D.C. 2005)…………………………………………………………30

*Zedan v. Kingdom of Saudi Arabia,*
849 F.2d 1511 (D.C. Cir. 1988)…………………………………………………………………………23

## **FEDERAL RULES, STATUTES, AND REGULATIONS**

Fed. R. Civ. P. 8…………………………………………………………………………………………32
Fed. R. Civ. P. 12(b)(1)……………………………………………………………………….…......5

Fed. R. Civ. P. 12(b)(6)………………………………………………………………...…………4, 27

Fed. R. Civ. P. 15(a)…………………………………………………………………………..2, 34

Fed. R. Civ. P. 23(c)(1)…………………………………………………………………………33

Local Civil Rule 23.1(b)……………………………………………………...………4, 33, 34, 35

8 U.S.C. § 1101(a)(22)…………………………………………………………………………20

28 U.S.C. § 1330(a)…………………………………………………………………………2, 5, 6

28 U.S.C. § 1331………………………………………………………………………….…2, 6

28 U.S.C. § 1332(a)(2)……………………………………………………………………………2,6

28 U.S.C. § 1350………………………………………………………………………………2, 3, 6

28 U.S.C. § 1367…………………………………………………………………………….…2, 6

28 U.S.C. § 1367(a)……………………………………………………………………………6

28 U.S.C. § 1603(a)………………………………………………………………………....39

28 U.S.C. § 1603(d)……………………………………………………………………………22

28 U.S.C. § 1604……………………………………………………………….……….......5, 14, 18

28 U.S.C. § 1605……………………………………………………………………….…...14

28 U.S.C. § 1605(a)(2)………………………...……………………………….……2, 5, 7, 21, 24

28 U.S.C. § 1605(a)(7) (repealed 2008)…...…………………………………….………..*passim*

28 U.S.C. § 1605(c)…………………………………………………………………...…………27

28 U.S.C. § 1605(f) (repealed 2008)……………………………………………………..*passim*

28 U.S.C. § 1605A……………………………………………………………………...-*passim*

28 U.S.C. § 1605A(a)…………………………………………………………………...*passim*

28 U.S.C. § 1605A(a)(2)(A)(i)(I)………...………………………………………....……….26

28 U.S.C. § 1605A(a)(2)(A)(i)(II)(ii)(I)……………………………………………………..2

28 U.S. C. § 1605A(c)……………………………………………………………….*passim*

28 U.S.C. § 1605A(c)(1)……………………………………………………………………20

28 U.S.C. § 1606……………………………………………………………………………29

28 U.S.C. § 1607………………………………………………………………5, 14, 29, 37

"The Foreign Sovereign Immunities Act", 28 U.S.C. §1602, *et. seq*..……………………*passim*

The National Defense Authorization Act §1083, Pub. L. No. 110-181 (2008)………......*passim*

Torture Victims Protection Act ("TVPA"), Pub.L. 102-256, 106 Stat. 73
(reprinted at 28 U.S.C. § 1350 note)…………………………………………....*passim*

Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. 104-132, 110 Stat. 1241 (1996)……………………………………..……….…….15

## LEGISLATIVE MATERIALS

*Comprehensive Antiterrorism Act of 1995: Report of the Comm. on the Judiciary*,
H.R. Rep. No. 104-383 (1995)…………………………………………………....…25

*Foreign Sovereign Immunities Act of 1976: Report of the Committee on the Judiciary*,
H.R. Rep. No. 94-1486 at 12 (1976)…………………………………………………..37

H.R. Rep. No. 105-48, at 2 (1997)……………………………………………………20

## OTHER AUTHORITIES

*Determination and Certification Under Section 40A of the Arms Control Act*,
71 Fed. Reg. 28897 (May 18, 2006)……...……………………………………………...26

Joseph W. Glannon & Jeffrey Atik, *Politics and Personal Jurisdiction: Suing State Sponsors of Terrorism Under the 1996 Amendments to the Foreign Sovereign Immunities Act*, 87 Geo. L.J. 675 (1999)……………………………………………………………………..38

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARK McDONALD, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-00729-JR |
| | ) | |
| SOCIALIST PEOPLE'S LIBYAN ARAB | ) | |
| JAMAHIRIYA, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants, the Socialist People's Libyan Arab Jamahiriya, the Libyan External Security

Organization, Muammar Qadhafi, Abdullah Senoussi, Musa Kusa, Khalifa Ahmed Bazelya and

Nasser Ali Ashour ("the Libyan defendants"), through undersigned counsel, respectfully submit

this Memorandum of Points and Authorities in Support of their Motion to Dismiss the Amended

Complaint.

## I.    INTRODUCTION

This case involves a number of terrorist acts in Ireland and Great Britain from 1972 to

1997 alleged to have been perpetrated by the Provincial Irish Republican Army ("PIRA").

Plaintiffs allege that defendants, The Socialist People's Libyan Arab Jamahiriya ("Libya"), the

Libyan External Security Organization ("LESO"), Muammar Qadhafi, Abdullah Senoussi, Musa

Kusa, Khalifa Ahmed Bazelya, and Nasser Ali Ashour (collectively "the Libyan defendants")

provided material support to the PIRA by providing, *inter alia*, weapons, financing and bases of

operation within Libya.  *See* Amended Complaint, p. 10.

On April 21, 2006, Plaintiffs filed their original Class Action Complaint against the

Libyan defendants.  *See* Complaint.

On January 28, 2008, Congress passed the National Defense Authorization Act of 2008, Pub L. No. 110-181 (the "2008 Defense Act").  (A copy of § 1083 of the National Defense Authorization Act of 2008 is attached hereto as Exhibit A).  The Terrorism Exception to Immunity found in § 1083 of the Defense Act amends the Foreign Sovereign Immunities Act ("FSIA") in certain respects.  Among other things, § 1083 of the Defense Act created § 1605A of the FSIA.  Section 1605A creates a new cause of action for certain types of terrorism-related claims against foreign states and repeals former § 1605(a)(7) and § 1605(f).  *See* 28 U.S.C. 1605A(c) and § 1083(b).

Thereafter, on May 1, 2008, plaintiffs filed their First Amended Class Action Complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a).  Plaintiffs' Amended Complaint asserts jurisdiction pursuant to 28 U.S.C. §§ 1605(a)(2) and 1605A.  Plaintiffs further claim that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), 1350 and 1367, as well as the Torture Victims Protection Act ("TVPA"), Pub.L. 102-256, 106 Stat. 73 (reprinted at 28 U.S.C. § 1350 note).  Amended Complaint, ¶ 1, 3-4.

The Amended Complaint names 142 individual plaintiffs.  Only four of the 142 individual plaintiffs are alleged to be U.S. nationals.[1]  Of the four named U.S. plaintiffs, one plaintiff, Mark McDonald (Plaintiff No. 1), claims injuries as a result of a December 17, 1983 bombing in Knightsbridge, London, England; one plaintiff, Karen Jean Salvesen-Sykes (Plaintiff No. 2), for herself and for the estate of her husband, Kenneth Gerald Salvesen, a victim of the same December 17, 1983 bombing, asserts individual claims as the surviving spouse of the victim; another plaintiff, Kraig Gerald Salvesen (Plaintiff No. 3), claims damages as the son of the same victim of the December 17, 1983 bombing, Kenneth Gerald Salvesen; and finally, the

---

[1]  The Amended Complaint does not allege that the four individual plaintiffs were U.S. nationals at the time of each respective attack as required by 28 U.S.C. § 1605A(a)(2)(A)(i)(II)(ii)(I).

fourth U.S. plaintiff, Michael Andrew Clark (Plaintiff No. 4), claims damages arising from

witnessing multiple PIRA attacks from 1971 to 1973.  Amended Complaint, ¶¶ 15-19.[2]  The

remaining 138 individual plaintiffs are non-U.S. nationals or "alien plaintiffs."  The alien

plaintiffs are representatives of victims, individuals claiming injuries and family members of

victims of various PIRA bombings from 1987 to 1996.  Amended Complaint, ¶¶ 20-169.

        In addition to the named individual plaintiffs, the Complaint seeks to assert claims on

behalf of two putative classes of plaintiffs.  The first is comprised of legal representatives or

survivors of American citizens killed or injured by any bombing perpetrated by the PIRA from

1972 up to and including July 20, 1997 (the "American class").  Amended Complaint, ¶ 5.  The

second class of plaintiffs is comprised of legal representatives or survivors of non-U.S. citizens

killed or injured by any bombing perpetrated by PIRA from 1987 up to and including July 20,

1997 (the "Alien class").  Amended Complaint, ¶ 7.  The Amended Complaint alleges that there

are in excess of 3,500 unnamed individuals who comprise these two classes.  The U.S. national

plaintiffs are each listed as American class representatives, and each of the 138 alien plaintiffs

are listed as Alien class representatives.

        The Amended Complaint asserts causes of action against the Libyan defendants including

common-law civil conspiracy (Count I); wrongful death (Count II); battery (Count III);

intentional infliction of emotional distress both for victims and survivors of the alleged terrorist

attacks (Counts IV and V); loss of consortium (Count VI); as well as claims arising under the

TVPA (Count VII); 28 U.S.C. § 1605A (Count VIII); the Alien Tort Statute, 28 U.S.C. § 1350,

for aiding and abetting, intentionally facilitating and/or recklessly disregarding the commission

of crimes against humanity in violation of the law of nations (Count IX); and "class action"

---

[2]  As for the American plaintiffs, the claims of Plaintiff No. 3 and Plaintiff No. 4 lack subject matter jurisdiction under the Foreign Sovereign Immunities Act.  *See* infra.

3

(Count X).

Defendants seek dismissal of all claims with prejudice.  The Amended Complaint should be dismissed because this Court lacks subject matter jurisdiction.  Libya is immune from suit for these claims under the FSIA and the allegations of the Amended Complaint demonstrate that none of the exceptions to sovereign immunity applies to plaintiffs' claims.

The Amended Complaint relies upon the newly enacted 28 U.S.C. § 1605A as the basis for subject-matter jurisdiction.  However, plaintiffs' Amended Complaint does not meet the requirements of 28 U.S.C. § 1605A, as will be detailed, infra.  In addition to a lack of subject matter jurisdiction, the exercise of personal jurisdiction by this Court over defendants would violate the due process clause of the Fifth Amendment.

To the extent that plaintiffs claims survive defendants' jurisdictional arguments, the Amended Complaint also fails to state a claim against defendants and should be dismissed pursuant to Fed.  R. Civ. P. 12(b)(6).

Plaintiffs' class action claims should also be stricken due to plaintiffs' failure to comply with Local Civil Rule 23.1(b).  The Rules of this Court require plaintiffs to move for class certification within 90 days of filing their original Complaint.

Finally, plaintiffs should be barred from proceeding with any claims against defendant Muammar Qadhafi under the head-of-state doctrine.

For these reasons, as set forth in detail below, the Amended Complaint should be dismissed in its entirety with prejudice.

## II.    ARGUMENT

### A.    The Amended Complaint Should Be Dismissed Because This Court Lacks Subject Matter Jurisdiction.

The Amended Complaint should be dismissed, in its entirety, pursuant to Rule 12(b)(1), because this Court does not have subject matter jurisdiction.

The Amended Complaint contends that the Libyan defendants are subject to suit in the United States District Court pursuant to, *inter alia*, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*.  Plaintiffs allege that the Libyan defendants are not immune from suit because of the exceptions to sovereign immunity set forth in 28 U.S.C. §§ 1605A and 1605(a)(2).  However, the exceptions to sovereign immunity set forth in §§ 1605A and 1605(a)(2) do not apply to the facts of this case and the Libyan defendants are immune from plaintiffs' claims.

It is well-settled that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in federal court."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  The grant of immunity under the FSIA is subject only to the exceptions expressly provided in the FSIA. 28 U.S.C. § 1604; s*ee Doe v. Israel*, 400 F. Supp. 2d 86, 104 (D.D.C. 2005); 28 U.S.C. § 1604.  It is well settled that if the claims asserted in a particular complaint do not fall within an exception to immunity, then the sovereign enjoys immunity and the court does not have jurisdiction.  *See Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000).  In *Phoenix Consulting*, the D.C. Circuit explained:

> Under the FSIA, a foreign state is immune from the jurisdiction of both the federal and the state courts except as provided by . . . nine specifically enumerated exceptions, *see id.*, § 1605(a)(1) through (7), (b), (d), . . . s*ee, id.*, § 1607.  If no exception applies, a foreign sovereign's immunity under the FSIA is complete:  The district court lacks subject matter jurisdiction over the plaintiff's case. *See, id.*, § 1330(a).  Thus, the sovereign has "an immunity from trial and the attendant burdens of litigation, and not just a defense

to liability on the merits."

*Id.* at 39 (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)).

The Amended Complaint also asserts jurisdiction against the Libyan defendants pursuant to 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), 1350 and 1367, as well as the TVPA.  Amended Complaint, ¶ 1, 3-4.  However, none of the additional statutes upon which plaintiffs purportedly rely for subject matter jurisdiction establishes exceptions to the sovereign immunity of the Libyan defendants.

"The jurisdiction conferred on the district courts by the FSIA may not be expanded by application of Section 1367(a) and the doctrine of supplemental jurisdiction."  *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*, 477 F. Supp. 2d 131, 138 (D.D.C. 2007) (quoting *Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 387 (S.D.N.Y. 2000)).  Nor may jurisdiction be expanded by the Alien Tort Statute, 28 U.S.C. § 1350.  *Amerada Hess*, 488 U.S. at 438-39 (Alien Tort Statute cannot be used to abrogate sovereign immunity under the FSIA).  Thus, plaintiffs may not invoke either the Alien Tort Statute or supplemental jurisdiction against Libya as a basis for subject matter jurisdiction.  For these reasons they cannot state a claim under the TVPA, and the court lacks subject matter jurisdiction.  *See* infra. Because both the LESO and the individual defendants, to the extent sued in their official capacity, are covered under the FSIA, there is no jurisdiction over them under the Alien Tort Act.  *See La Reunion Aerienne*, 477 F. Supp. 2d at 138 (barring plaintiffs from bringing claims not permitted under the FSIA against LESO); *see also Nikbin v. Islamic Republic of Iran*, 517 F. Supp. 2d 416, 430 (D.D.C. 2007) ("When an individual defendant is sued in his official capacity as an officer of a foreign state, however, he is entitled to the same

sovereign-immunity protections under the FSIA that are afforded to the foreign state.") (citations omitted).

The plaintiffs in the case before this Court allege that this Court has jurisdiction over the claims against the Libyan defendants pursuant to §§ 1605A and 1605(a)(2) of the FSIA. However, the allegations in the Amended Complaint do not fall within either of these provisions and the Libyan defendants remain immune from plaintiffs' claims. Therefore, this Court lacks subject matter jurisdiction and the Amended Complaint should be dismissed.

**1.    Plaintiffs' Amended Complaint Does Not Meet the Requirements of 28 U.S.C. § 1605A.**

Section 1605A was created by § 1083 of the National Defense Authorization Act of 2008, Pub L. No. 110-181 (the "2008 Defense Act"). The Terrorism Exception to Immunity found in § 1083 of the Defense Act amends the FSIA in certain respects. See Exhibit A, attached hereto. Among other things, § 1605A creates a new cause of action for certain types of terrorism-related claims against foreign states and repeals former §§ 1605(a)(7) and 1605(f). *See* 28 U.S.C. § 1605A(c) and § 1083(b).

Plaintiffs seem to have filed their Amended Complaint under the mistaken belief that the new legislation applies "retroactively" to their Complaint and that they are entitled to assert their claims based upon § 1083(c). However, the language of § 1083(c) and the plain meaning of the statute is clear that Congress did not intend the provisions of that section to apply retroactively to the present case.

Section 1083(c) allows for retroactive application of § 1605A(c) ***only*** to a limited number of "prior actions" that satisfy the express statutory criteria set forth in § 1083(c)(2)(A). *Compare with Lindh v. Murphy*, 521 U.S. 320, 329 n.4 (1997) (identifying the following as an example of a statement that might qualify as sufficiently clear to have retroactive effect: "[This Act] shall

apply to *all* proceedings pending on or commenced after the date of enactment of this Act.")

(emphasis added) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 260 (1994)); *Fernandez-*

*Vargas v. Gonzales,* 548 U.S. 30, 37 (2006) (explaining that courts apply the presumption

against retroactivity by construing a statute as inapplicable to a past act "in the absence of a clear

indication from Congress that it intended such a result") (citation omitted).   Indeed, Congress

intentionally limited its retroactive application to a particular subset of cases that fit the criteria

of § 1083(c)(2)(A).  S*ee Schumann v. Commissioner*, 857 F.2d 808, 811 (D.C. Cir. 1988) (stating

that "under the maxim *expression unius exclusion alterius*, Congress' specific enumeration of

certain exceptions indicates that no other exceptions were intended").  Plaintiffs may only bring

a claim under 28 U.S.C. § 1605A if they meet certain criteria, which here they do not.

Plaintiffs filed a "Notice of Filing First Amended Complaint" on May 1, 2008

simultaneously with their First Amended Class Action Complaint.  *See* Dckt. No. 33, herein.  In

their Notice of Filing, plaintiffs explained:

> So the record is clear, Plaintiffs are not seeking leave to amend as
> contemplated by or pursuant to certain of the provisions of the
> newly enacted 28 U.S.C. Section 1605(A). Pub.L. 110-181, Div. A,
> Title X, § 1083(c), Jan. 28, 2008, 122 Stat. 342 (2)(A)(i-iv).  The
> Plaintiffs cannot meet the requirements of subsections (2)(A)(ii) or
> (iii) which require that the original claims brought were in reliance
> upon prior provisions of the FSIA having created an independent
> cause of action, (ii), nor have the plaintiffs been "adversely
> affected" by any such failure of FSIA to have created a cause of
> action (iii). Pub.L. 110-181, Div. A, Title X, § 1083(c), Jan. 28,
> 2008, 122 Stat. 342 (2)(A)(ii, iii).  Plaintiffs did not originally
> plead that the FSIA created an independent cause of action against
> a foreign sovereign.  (Plaintiffs' First Amended Complaint does
> recognize this substantive change in the law.)  In that the Court has
> not had the opportunity to rule on any substantive motions relating
> to the claims in this case, to date, the Plaintiffs have not been
> adversely affected.  *Id*.  In that Plaintiffs do not meet these criteria
> in the present action, this subsection does not apply.  *Id*.
> (Plaintiffs' claims do meet subsections (i) and (iv) of this
> subsection.  *Id*.)

Dckt. No. 33, fn. 1.

Plaintiffs attempt to invoke 28 U.S.C. § 1605A as a basis for subject matter jurisdiction. As plaintiffs have admitted to this Court, they "are not seeking leave to amend as contemplated by or pursuant to certain of the provisions of the newly enacted 28 U.S.C. § 1605(A)" as they "cannot meet the requirements" of Section 1083(c)(2)(A) of the National Defense Authorization Act of 2008.

Nor did plaintiffs file within the 60 day period required by the statute. § 1083(c)(2)(C)(ii). The D.C. Circuit's recent decision in *Simon v. Republic of Iraq*, No. 06-7175, 2008 WL 2497417 (D.C. Cir. June 24, 2008), makes it clear that the 2008 Amendments to the FSIA "appl[y] to a pending case only if the Congress clearly so provides." *Id.* at *3 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994), for the proposition that "a statute that retroactively alters the consequences of primary conduct . . . is presumptively non-retroactive"). As the court in *Simon* stated, "[p]laintiffs with 'pending cases' may invoke new § 1605A in certain circumstances" as described in Section 1083(c)(2). *Id.* at *5; *see also id.* at *4 ("[I]n order to claim the benefits of § 1605A, the plaintiff must file a new action under that new provision."). However, as plaintiffs admit, such circumstances do not apply in this case. As a result, § 1605A has prospective effect only, and thus plaintiffs' complaint – which relies on § 1605A for subject-matter jurisdiction – must be dismissed.

In addition, plaintiffs cannot show that ***a separate action*** arising out of an act or incident has been timely commenced pursuant to 28 U.S.C. § 1605(a)(7) as required in order to bring new claims as a "related action" under § 1083(c)(3). This action is not a "related action." It is the same action. Therefore, the newly enacted § 1605A does not apply to the present case.

a.    **Plaintiffs' Section 1605A Claims are Untimely.**

Section 1083(c) of the Defense Act is entitled "Application to Pending Cases."  It establishes two specific and limited circumstances in which 28 U.S.C. § 1605A may apply to pending cases brought pursuant to 28 U.S.C. § 1605(a)(7), "prior actions" and "related actions." Pub. Law No. 110-181, § 1083(c)(2-3).  Whether plaintiffs seek to assert claims pursuant to § 1605A under the "prior actions" or "related actions" provision of § 1083(c), plaintiffs were required to do by March 28, 2008, at the latest.  As discussed above, plaintiffs' Amended Complaint was filed on May 1, 2008.  Therefore, plaintiffs' § 1605A claims are untimely and the Amended Complaint should be dismissed.

Both the "prior actions" and "related actions" provision of § 1083(c) require that any §1605A claims related to a pending case to have been brought within 60 days of passage of the Defense Act, January 28, 2008.  Section 1083(c) states in relevant part:

(c) Application to Pending Cases-

\*        \*        \*

(2) Prior Actions-

(A) In General- With respect to any action that—

(i) was brought under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208), before the date of the enactment of this Act,

(ii) relied upon either such provision as creating a cause of action,

(iii) has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and

(iv) as of such date of enactment, is before the courts in any form, including on appeal or motion under rule 60(b) of the Federal

10

Rules of Civil Procedure, that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605A(c) of title 28, United States Code.

*        *        *

(C) Time limitations.--A motion may be made or an action may be refiled under subparagraph (A) only--

(i) If the original action was commenced **not later than the latter of**-
> (I) 10 years after April 24, 1996; or
> (II) 10 years after the cause of action arose; and

(ii) **within the 60-day period beginning on the date of the enactment of this Act [Jan. 28, 2008].**

(3) Related Actions- If an action arising out of an act or incident has been timely commenced under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208), **any other action arising out of the same act or incident may be brought under section 1605A of title 28, United States Code, if the action is commenced not later than the latter of 60 days after--**

**(A) the date of the entry of judgment in the original action; or**

**(B) the date of the enactment of this Act [January 28, 2008].**

Pub. Law No. 110-181, § 1083(c)(2-3) (emphasis added).

Plaintiffs concede that they do not meet the requirements of subsections (ii) and (iii) of § 1083(c)(2)(A). And although plaintiffs claim to meet the requirements of subsections (i) and (iv), the "prior actions" provision of § 1083(c)(2)(A) requires plaintiffs to meet the criteria of each subsection, (i) thru (iv). Therefore, plaintiffs may not bring their § 1605A claims pursuant to the "prior actions" provision of § 1083(c)(2)(A). Even if plaintiffs' original Complaint was a

"prior action" within the meaning of the statute, plaintiffs' § 1605A claims are untimely as they were not filed within 60 days of January 28, 2008, the date of enactment of the Defense Act. Pub. Law No. 110-181, § 1083(c)(2)(C).

Similarly, as shown below, plaintiffs' Amended Complaint and § 1605A claims may not be filed as a "related action" pursuant to § 1083(c)(3). Notwithstanding this provision, plaintiffs failed to timely file their § 1605A claims pursuant to the limitations contained within the "related actions" provision. Plaintiffs waited until May 1, 2008 to file their Amended Complaint, yet the deadline for filing a "related action" was March 28, 2008. Therefore plaintiffs' § 1605A claims are untimely and should be dismissed.

### b.    Plaintiffs Amended Complaint Is Not A "Related Action" Pursuant to Section 1083(c)(3).

Plaintiffs concede that the "prior actions" provision of § 1083(c)(2)(A) does not apply to the facts of this case. Therefore, plaintiffs may only assert § 1605A claims if their Amended Complaint qualifies as a "related action." However, plaintiffs' Amended Complaint is not a "related action" within the meaning of § 1083(c)(3). It is the <u>same</u> action. In addition, in order for plaintiffs to be permitted to file a new Complaint as a "related action", their original Complaint must have been **_timely_** filed pursuant to § 1605(a)(7):

> (3) Related Actions- If an action arising out of an act or incident has been **_timely commenced under <u>section 1605(a)(7)</u>_** of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208), any other action arising out of the same act or incident may be brought under section 1605A of title 28, United States Code, . . .

Pub. Law No. 110-181, § 1083(c)(3) (emphasis added). As shown on page 13, <u>infra</u>, plaintiffs' claims were not timely filed under § 1605(a)(7) and the provisions of § 1083(c)(3) do not apply here.

The Amended Complaint is not a "related action" - it is the ***same action***. The Amended Complaint asserts the same claims, on behalf of the same plaintiffs against the same defendants arising out of the same incidents. The provisions of § 1083(c)(3) do not permit plaintiffs in a pending action to file an Amended Complaint with identical claims arising out the same incident. Section 1083(c)(3) simply states that "any *other action* arising out of the same act or incident may be brought under section 1605A . . ." (emphasis added). Plaintiffs have not brought *another action* pursuant to § 1083(c)(3), but rather have simply brought the same action under § 1605A as was asserted in their original Complaint. Section 1083(c)(3) does not apply to the present matter and the Amended Complaint should be dismissed.

In addition, as explained in detail in Section II (B)(2) at page 13, infra, this action was untimely when filed, and the amendments to the FSIA do not change that fact. On the face of the First Amended Complaint, the claims of the U.S. individual plaintiffs arose on December 17, 1983 and in 1971 to 1973.[3] This action was not commenced until April 21, 2006, at least 22 years after the bombings which is the basis of the claims for most of the named U.S. plaintiffs.

Plaintiffs' Amended Complaint is not a "related action" within the meaning of § 1083(c)(3), nor was plaintiffs' original Complaint timely filed pursuant to § 1605(a)(7). Therefore, plaintiffs' § 1605A claims should be dismissed.

## 2.    **Plaintiffs' Original Complaint Was Time-Barred.**

§ 1605(a)(7) is a jurisdiction conferring provision that does not otherwise provide a cause of action," *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1032 (D.C. Cir. 2004). An action that does not satisfy all requirements set forth in Section 1605(a)(7) lacked subject-matter jurisdiction. Those requirements include the timeliness requirements of former § 1605(f),

---

[3]  The claims of the named alien plaintiffs arose on various dates from November 8, 1987 up to and including June 15, 1996. However, as shown below, the alien plaintiffs do not qualify as claimants under the provisions of either § 1605(a)(7) or § 1605A.

which is expressly tied to § 1605(a)(7).  *See John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 753 (2008) ("[W]e have long held that a statute of limitations attached to a waiver of sovereign immunity . . . defines the limits of the district court's jurisdiction to hear a claim against the United States.").  Indeed, Section 1604 clearly provides that former § 1605(f) is jurisdictional:  "a foreign state shall be immune from the jurisdiction of the courts of the United States and the States except as provided in [28 U.S.C. §§ 1605 – 1607]."  28 U.S.C. § 1604.

Plaintiffs filed their original Complaint on April 21, 2006.  The personal injuries for which the named U.S. plaintiffs seek recovery occurred on December 17, 1983 and 1971 to 1973, more than 22 years before their original Complaint was filed.  Even under the most lengthy statute of limitations, plaintiffs' claims are stale.  In addition, plaintiffs have not established that the doctrine of equitable tolling applies to the facts of this case, nor have they alleged facts which would excuse their delay of nearly ten years in filing suit after any impediment to filing suit was removed (*e.g.*, the enactment of § 1605(a)(7) on April 24, 1996).  Plaintiffs' claims are time-barred and the Amended Complaint should be dismissed with prejudice.

     **a.**    **The Statute of Limitations Began to Run from the Dates on Which Plaintiffs' Respective Individual Claims Arose.**

The 10-year statute of limitations period begins to run when the cause of action arose. "Under the FSIA, the key question is when the claim 'arose,' that is, when the events in question occurred."  *Estate of Buonocore*, 2007 WL 2007509 at *2.  Plaintiffs' claims in the case before this Court arose on December 17, 1983 and in 1971 to 1973, the date of the alleged attacks, and the 10-year statute of limitations began to run on those dates.[4]

---

[4]  To the extent plaintiffs assert claims against the individual defendants in their personal capacities, the 10-year statute of limitations in § 1605(f) is inapplicable.  The FSIA does not apply to claims brought against individuals in their personal capacities.  *See e.g. Doe v. State of Israel*, 400 F. Supp. 2d 86, 104 (D.D.C. 2005) ("The FSIA's protections are construed to apply to an individual acting in an official capacity on behalf of the state. . . [S]uits against officers in their personal capacities must pertain to private action—that is, to actions that exceed the scope of

Well settled principles of statutory construction require that a statute must be construed such that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted); *National Insulation Transp. Committee v. Interstate Commerce Com.,* 683 F.2d 533, 537 (D.C. Cir. 1982). Any contention that plaintiffs' cause of action did not arise until the passage of the terrorism exception to the FSIA is inconsistent with the plain text of statute.

As shown above, the statute of limitations for FSIA claims brought under § 1605(a)(7) is set forth in § 1605(f). Section 1605(f) of the FSIA states:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f). The ten-year statutory period for claims under the FSIA's terrorism exception did not begin to run upon the waiver of sovereign immunity. To do so would render the second clause of § 1605(f) superfluous and without meaning.

The only interpretation of the *entire text* of § 1605(f) is that plaintiffs' claims arose on the dates of the terrorist attacks and that the respective ten year periods began to run, uninterrupted, from those dates. This reading of the statute is supported by the 1996 amendment to the FSIA, that included a retroactivity provision which states that §§ 1605(a)(7) and 1605(f) "shall apply to any cause of action <u>arising</u> before, on, or after the date of enactment of this Act." Pub. L. No. 104-132, 110 Stat. 1214, 1243 (codified as amended at 28 U.S.C. § 1605(a)(7))(emphasis added). Clearly, Congress intended that the date of the occurrence is to be the date on which the cause of action arose under § 1605(a)(7), even if the occurrence occurred before the passage of the

---

authority vested in that official so that the official cannot be said to have acted on behalf of the state.") (citing *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996)). Therefore, the individual defendants were not immune from suit at the time of the respective terrorist attacks.

terrorism exception to the FSIA and, even if under a ten year statute of limitation, the claim

would have been time-barred before plaintiffs were able to sue.  Any argument that plaintiffs'

causes of action arose under § 1605(a)(7) on April 24, 1996 would be contrary to the language of

the statute and must be rejected.  *See Kaiser Aluminum & Chem. Corp. v. Bonjorno,*, 494 U.S.

827, 837 (1990).

> **b.**     **The Doctrine of Equitable Tolling Tolls the Statute of Limitations for a Reasonable Period After an Impediment to Suit is Removed.**

The *Buonocore* case is similar to this case and was filed on the same date as this case –

April 21, 2006.  *See Estate of Buonocore  v. Great Socialist People's Arab Jamahiriya*, 2007 WL

2007509 (D.D.C. July 9, 2007).  Like the present case, ten years had already passed on the U.S.

plaintiffs' claims since the cause of action arose, and before they were able to sue.  The plaintiffs

in *Estate of Buonocore* sought recovery for personal injuries sustained in December 1985.  Judge

Kessler rejected the plaintiffs' arguments that they had ten years from the April 1996 enactment

of § 1605(a)(7) or that equitable tolling provided them with ten years from that time.  Judge

Kessler followed the binding precedent in this Circuit, *Phillips v. Heine*, 984 F.2d 489 (D.C. Cir.

1993), in concluding that, notwithstanding the cause of action was already time barred, equitable

tolling permitted the plaintiffs to "commence suit within a reasonable period of time after

Congress enacted 28 U.S.C. § 1605(a)(7) in April 1996, which waived sovereign immunity for

Libya.  Congress did not create an automatic extension of the statute of limitations by the length

of the tolling period."  *Estate of Buonocore,* 2007 WL 2007509 at *3 (*citing Phillips*, 984 F.2d at

492).

Judge Kessler concluded that to benefit from equitable tolling, the plaintiffs need to

demonstrate that a time period within which to sue is reasonable.  Equitable tolling is an

equitable principle that extends the period within which a plaintiff may file a claim.  The burden is on the plaintiff to demonstrate that it is entitled to equitable tolling.  *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir.  2006).  As the *Phillips* court stated, equitable tolling "does not bring about an automatic extension of the statute of limitations by the length of the tolling period."  The court should only "extend the time for filing by a reasonable period after the tolling circumstance [is] mended."  "*The purposes of the doctrine are fully achieved if the court extends the time for filing by a reasonable period after the tolling circumstance is mended*."  *Id.* at 492 (emphasis added, citations and internal quotations omitted).

Plaintiffs have not and cannot present facts that demonstrate that 10 years from the enactment of § 1605(a)(7) is a reasonable time for them to file suit.  In both their original Complaint and the Amended Complaint, plaintiffs admit that they had access to information and facts allegedly supporting their claims as early as the early-1970s in the form of public speeches by Libyan officials who purportedly described Libya's support for the PIRA, as well as through State Department documents which have been available since at least the early-1990s.  *See* Complaint ¶¶ 192, 200-206, 225-230; Amended Complaint ¶¶ 209, 217-223, 242-247.  Consequently, even though the plaintiffs could not file this case until after § 1605(a)(7) was enacted in 1996, they could have done so shortly thereafter.  The statute of limitations had expired for the U.S. plaintiffs' claims when § 1605(a)(7) was enacted.  However, the principle of equitable tolling allowed plaintiffs a reasonable time to file suit after § 1605(a)(7) was enacted.

The recent decision of *Simon v. Republic of Iraq*, 2008 WL 2497417 (D.C. Cir. June 24, 2008) does not displace *Phillips*.  *Simon* did not deal with the doctrine of equitable tolling as applied to a case where the claim had already been time-barred at the time the suit was allowed which is the issue in this case and in *Buonocore* and inapplicable here.  The U.S. plaintiffs in this

case, whose claims arose more than ten years before the 1996 amendment to the FSIA, were

granted, by § 1605(f), an additional, reasonable time to file suit, but not ten years.  These U.S.

plaintiffs slept on their rights.  *See Burnett v. New York Central* R.R. 380 U.S. 424 (1965).

Plaintiffs allege no facts as to why they had to wait until April 21, 2006 to file their

original Complaint.  There is absolutely no basis for plaintiffs' contention that 10 years after the

enactment of § 1605(a)(7) and more than 20 years after their causes of action arose is a

reasonable time to bring their claims.

All of U.S. plaintiffs' claims are time-barred and defendants' Motion to Dismiss should

be granted.

### 3.    The Court Does Not Have Subject Matter Jurisdiction Over the Alien Plaintiffs' Claims.

There are 142 plaintiffs named in the First Amended Complaint.  Of the 142 plaintiffs,

137 are not nationals of the United States (the "alien plaintiffs").  This Court does not have

jurisdiction over the claims asserted by the alien plaintiffs because, by their own admission, they

are not nationals of the United States.  The alien plaintiffs' claims do not fall within § 1605A, the

terrorism exception to immunity, or any of the other exceptions of sovereign immunity set forth

in the FSIA.

As stated above, the Court's jurisdiction under the FSIA is statutorily prescribed.  The

general grant of immunity under the FSIA is complete and is subject only to the exceptions

expressly provided in the FSIA, which is the "sole basis for obtaining jurisdiction over a foreign

state in federal court."  28 U.S.C. § 1604.  *Hwang Geum Joo v. Japan*, 332 F.3d 679, 682 (D.C.

Cir. 2003) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439

(1989)).

The two exceptions to immunity relied upon by the alien plaintiffs do not apply to their claims. As described below, the commercial activity exception does not apply to their claims. Neither does the terrorism exception.

Like the statutory provisions it replaced, the terrorism exception to immunity, § 1605A applies in limited circumstances and to a limited category of claims and claimants, none of which apply to the alien plaintiffs. It provides in relevant part:

(a)    In general.

    (1)    No immunity. A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

    (2)    Claim heard. The court shall hear a claim under this section if--

        (A) (i) (I)    the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act, and, subject to subclause (II), either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section . . .

        * * *   [and]

            (ii)    **the claimant or the victim was, at the time the act described in paragraph (1) occurred**--

                (I)    **a national of the United States**;

                (II)    a member of the armed forces; or

> > (III) otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment.

28 U.S.C. § 1605A(a) (emphasis added.). Similarly, the new statute provides a private right of action for "a national of the United States." 28 U.S.C. § 1605A(c)(1).

The language of the statute clearly requires that the claimant or victim was a national of the United States at the time the act complained of occurred. Section 1605A defines "national of the United States" by referring to section 101(a)(22) of the Immigration and Nationality Act, which defines national of the United States as follows: "the term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).

The alien plaintiffs admit in the First Amended Complaint that they are not citizens of the United States or persons who owe permanent allegiance to the United States. Under no reading of § 1605A can the alien plaintiffs establish that this Court has jurisdiction over their claims against the Libyan defendants. *See In re Asemani*, 455 F.3d 296, 297 (D.C. Cir. 2006) ("Only United States nationals can bring an action against a foreign government for such conduct [torture] under the FSIA."); *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 175 (D.D.C. 2006). To permit the alien plaintiffs' claims to go forward would undermine the intent of Congress that only U.S. nationals (and even then only U.S. national direct victims or their estates) have standing to bring claims. *See* H. Rep. No. 105-48, at 2 (1997) ("Under the new subsection, American nationals who are victims of such acts or their surviving claimants could bring an action in federal court for money damages against the country that sponsored the terrorist act.").

The provisions of § 1605A(a) that relate to the status of the claimants are clear. "[T]he subject matter jurisdiction of the lower federal courts is determined by Congress in the exact degrees and character which Congress may seem proper for the public good." *Amerada Hess*, 488 U.S. at 433 (internal quotations and citations omitted). Thus the FSIA only has the jurisdictional reach provided by Congress. Here that reach applies ***only*** to claims brought by nationals of the United States, not by aliens.

Consequently, the Libya Defendants are immune from suit in the courts of the United States for the alien plaintiffs' claims.

### 4.    The Complaint Does Not Establish an Exception to Immunity Under Section 1605(a)(2), the Commercial Activity Exception.

The plaintiffs have also alleged that this Court can exercise jurisdiction over the Libyan defendants based on the Commercial Activity Exception to immunity found in 28 U.S.C. § 1605(a)(2). It is plaintiffs' burden to establish that the exception to sovereign immunity found in § 1605(a)(2) applies to the Libyan defendants under the facts alleged.

Section 1605(a)(2), known as the Commercial Activity Exception, states:

> (a)    [a] foreign state shall not be immune from the jurisdiction of the courts of the United States or of the states in any case --
>
> \*        \*        \*
>
> (2)    in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside of the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

28 U.S.C. § 1605(a)(2). It is clear from the face of the Amended Complaint that plaintiffs do not

base any claims upon commercial activity carried on by the Libyan defendants in the United

States.  Nor does plaintiffs' Amended Complaint identify any act performed in the United States

in connection with a commercial activity of Libya elsewhere.  Rather, plaintiffs allege that acts

by Libya outside of the United States (*i.e.*, Libya's alleged "sale of arms, ammunitions,

explosives, explosive components, and other such items"), in connection with a commercial

activity, caused a direct effect in the United States.  Amended Complaint, ¶ 4.

Commercial activity is defined by the FSIA in § 1603(d).  The Supreme Court has held

that "[a] foreign state engaging in 'commercial' activities 'do[es] not exercise powers peculiar to

sovereigns'; rather, it 'exercise[s] only those powers that can also be exercised by private

citizens.'"  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). (citing *Alfred*

*Dunhill of London, Inc.* v. *Republic of Cuba*, 425 U.S. 682, 704 (1976)).  In *Weltover*, the

Supreme Court further explained:

> [W]hen a foreign government acts, not as regulator of a market, but
> in the manner of a private player within it, the foreign sovereign's
> actions are "commercial" within the meaning of the FSIA.
> Moreover, because the Act provides that the commercial character
> of an act is to be determined by reference to its "nature" rather than
> its "purpose," 28 U. S. C. § 1603(d), the question is not whether the
> foreign government is acting with a profit motive or instead with
> the aim of fulfilling uniquely sovereign objectives.  Rather, the
> issue is whether the particular actions that the foreign state
> performs (whatever the motive behind them) are the type of actions
> by which a private party engages in "trade and traffic or
> commerce," Black's Law Dictionary 270 (6th ed. 1990).

*Weltover*, 504 U.S. at 614 (citation omitted).  Thus, in evaluating whether an activity is

commercial, the determinative factor is the nature of the activity and whether the activity is the

type which a private party typically engages in.

Support of terrorism is not a commercial activity.  It is not the "*type* of actions by which a

private party engages in trade and traffic or commerce."  *Id.*. at 614.  The D.C. Circuit has

previously rejected the argument that support of terrorist organizations constitutes commercial

activity.  In *Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005), the Court observed that

"[g]ranting refuge to terrorist training camps is a uniquely sovereign act; it is not the sort of

benefit that a commercial landlord can bestow upon a commercial tenant."  417 F.3d at 17

(internal quotations and citations omitted).  Similarly, in *Ciccipio v. Islamic Republic of Iran*, 30

F.3d 164, 168 (D.C. Cir. 1994), the Court determined that hostage taking for profit was not a

commercial activity.

Based on this binding authority, there is no question that the plaintiffs' allegations against

the Libyan defendants relating to support of terrorism do not constitute commercial activity for

purposes of the FSIA exception to immunity.  The plaintiffs' claims against the Libyan

defendants are solely and exclusively based on Libya's alleged sponsorship and support of the

PIRA terrorists.  State sponsorship of terrorism is not commercial activity.

Even if the plaintiffs could establish that their claims are based on commercial activity

outside of the United States, which they cannot, the plaintiffs cannot establish a direct effect in

the United States as required by the statute.  Here, there is no commercial connection, direct or

otherwise, between any of the alleged acts of Libya and the United States.  Neither the individual

U.S. plaintiffs, nor the alien plaintiffs have alleged any effect in the United States, direct or

otherwise, that resulted from the attacks identified in their Amended Complaint.  Personal injury

abroad to a U.S. citizen is not a direct effect in the United States. *Saudi Arabia v. Nelson*, 507

U.S. 349 (1993). Nor is financial loss by a citizen of the United States as a result of personal

injury in another country does not constitute "direct effect" for purposes of the statute. *See

generally, Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511 (D.C. Cir. 1988); *Lempert v.

Republic of Khazakstan*, 223 F. Supp. 2d 200 (D.D.C. 2002).  In the present case, there is no

nexus between the alleged conduct of the defendants and the United States.

Even if plaintiffs could establish that the Commercial Activity Exception to immunity applies to the provision of material support to terrorist organizations, any such claims based upon the Commercial Activity Exception should be dismissed because the statute of limitations for such claims has expired.  Significantly, the 10 year statute of limitations found in § 1605(f) does not apply to claims asserted under § 1605(a)(2).  Rather, the limitations period of § 1605(f) is limited to claims brought pursuant to § 1605(a)(7).  All other claims brought pursuant to the FSIA, including those brought under the Commercial Activity Exception, are subject to the applicable limitations period under state law.  *See e.g. Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 335 (D.D.C. 2007) (citing *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1025 n.7 (D.C. Cir. 1982) ("The applicable statute of limitation [in a FSIA case] is determined by the local law of the forum.")).  Plaintiffs claims, which arose more than 22 years ago, are clearly untimely under any state law limitations period.

The plaintiffs have not and cannot allege any facts to satisfy the provisions of § 1605(a)(2) and, therefore, cannot demonstrate that the Commercial Activity Exception to sovereign immunity applies to their claims against Libya.  Moreover, even if the exception applied, plaintiffs' claims based upon the Commercial Activity Exception are untimely.

### 5.    The FSIA Does Not Provide Subject Matter Jurisdiction Over Claims Brought by Indirect Victims of Terrorism.

The Court also lacks subject matter jurisdiction over the personal claims of American plaintiffs Karen Jean Salvesen-Sykes and Kraig Gerald Salvesen as relatives of the deceased victims.  According to the allegations of the Amended Complaint, these plaintiffs ("indirect victims") are relatives of the deceased victims of the terrorist attack asserting secondary claims in their personal capacities.  Section 1605A of the FSIA, however, does not create an exception

to foreign sovereign immunity for the secondary claims of indirect victims of terrorist acts, *i.e.*, the claims of family members, asserted in their personal capacities.

Section 1605A(a) (like former § 1605(a)(7)) withdraws FSIA immunity in cases "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act . . . ." Section 1605A(a) of the FSIA, however, does not withdraw to foreign sovereign immunity for the secondary claims of indirect victims of terrorist acts, *i.e.*, the claims of family members, asserted in their personal capacities. *See* Amended Complaint ¶¶ 17, 18.

According to the accompanying House Report to a predecessor bill, H.R. 934, the bill was designed to provide a remedy to those "physically abused abroad" or killed as a result of certain listed predicate acts. The only means by which someone other than the direct victim abroad may bring suit is "where the victim is not alive to bring suit" so that "the victim's legal representative or another person who is a proper claimant in an action for wrongful death may bring suit." *Id.* at 5. *See also Comprehensive Antiterrorism Act of 1995*: *Report of the Committee on the Judiciary*, H.R. Rep. No. 104-383 at 105 (1995) ("It is expected that *a lawsuit proceeding under this section will be brought either by the victim himself or by his estate in the case of death or mental incapacity*.") (emphasis added).

In view of this legislative history and the plain language of the statute, the Court may not expand FSIA subject matter jurisdiction to include the claims of secondary victims. *See Cicippio-Puelo v. Islamic Republic of Iran*, No. 01-1496 (TPJ), 2002 WL 34408105, at *2 (D.D.C. June 21, 2002), *aff'd on other grounds*, 353 F.3d 1024 (D.C. Cir. 2004); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992). Indeed, the district court in *Cicippio-Puleo* found

that it lacked subject matter jurisdiction over the claims of secondary victims.  *Cicippio-Puleo*, 2002 WL 34408105, at *2.

For these reasons, the Court should dismiss for lack of subject-matter jurisdiction the claims brought by the above-named alleged indirect victims.

> **6.    The Court Lacks Subject Matter Jurisdiction Over The Claims of Plaintiff Michael Andrew Clark.**

In addition to making a secondary claim as a new victim plaintiff, American Plaintiff Michael Andrew Clark alleges injuries only for attacks that occurred in July of 1971, June of 1972, and July of 1973.  Amended Complaint, ¶ 15.  However, the terrorism exception to the FSIA "applies only if the defendant foreign state was designated as a state sponsor of terrorism at the time the alleged acts . . . occurred."  *Acree v. Republic of Iraq*, 370 F.3d 41, 44 (D.C. Cir. 2004) (applying Section 1605(a)(7)); *see also* 28 U.S.C. § 1605A(a)(2)(A)(i)(I) (requiring that "the foreign state was designated as a state sponsor of terrorism at the time the [alleged act] occurred, or was so designated as a result of such act").  Libya was placed on the state sponsor of terrorism list on December 29, 1979 and was removed from the list in 2006.  *Determination and Certification Under Section 40A of the Arms Control Act*, 71 Fed. Reg. 28897 (May 18, 2006) (noting that, as of May 2006, Libya was no longer a designated state because "Libya has taken significant and meaningful steps during this time to repudiate its past support for terrorism and to cooperate with the United States in our antiterrorism efforts.")

Libya was not, therefore, designated as a state sponsor of terrorism in 1971-1973 when plaintiff Mr. Clark allegedly sustained his claimed injuries.  Accordingly, this Court lacks subject matter jurisdiction over Mr. Clark's claims.

**B.**     **The Amended Complaint Fails to State a Claim.**

In addition to the lack of subject matter jurisdiction, the Amended Complaint also fails to

state a claim against defendants and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**1.**     **Plaintiffs Fail To State A Claim Under Section 1605A(c).**

For the same reasons that plaintiffs cannot establish subject matter jurisdiction under

§ 1605A(a), plaintiffs' claims fail substantively under § 1605A(c).  In addition, the Amended

Complaint states claims related to incidents which occurred prior to December 29, 1979, the date

on which Libya was placed on the state sponsor of terrorism list.  Section 1605(c) requires that,

in order for there to be a private right of action under § 1605A, the foreign state must have been

designated as a state sponsor of terrorism at the time of the act.  Therefore, plaintiffs cannot state

claims under § 1605A(c) for any act which occurred prior to December 29, 1979.

**2.**     **Plaintiffs' Claims Against the Libyan State Defendants**
           **Under The Torture Victims Protection Act Should Be Dismissed.**

Plaintiffs' claims under the Torture Victim Protection Act must also fail.  As discussed

above, plaintiffs apparently bring their cases against Libya, LESO, and the individual defendants

in their official capacities.  Libya, as a foreign state, and LESO, as a department of Libya, are not

subject to liability under the TVPA.  *See Hurst v. Socialist People's Libyan Arab Jamahiriya*,

474 F. Supp. 2d 19, 30 n.14 (D.D.C. 2007) (Libya "cannot be held liable under the TVPA, which

only creates a cause of action against individuals, not states.") (citations omitted); *accord*

*Dammarell v. Islamic Republic of Iran*, No. 01-2224 (JDB), 2005 WL 756090, at *31 (D.D.C.

Mar. 29, 2005).  Likewise, under the TVPA, a suit "*must* be brought against individual officers

in their personal capacity." *Pugh v. Socialist People's Libyan Arab Jamahiriya*, No. 02-2026

(HHK), 2006 WL 2384915, at *7 (D.D.C. May 11, 2006) (emphasis original) (describing the

Flatow Amendment, and stating that "[t]he same is true for the TVPA as well") (citing *Acree v.*

27

*Republic of Iraq*, 370 F.3d 41, 59 (D.C. Cir. 2004)).  As such, plaintiffs' TVPA claims must be dismissed.  These claims in their individual capacity should be dismissed for lack of *in personam* jurisdiction and expiration of the statute of limitations.

Accordingly, plaintiffs' Seventh Cause of Action should be dismissed with prejudice as to the Libyan State Defendants.

### 3.   Plaintiffs Fail To State A Claim For Civil Conspiracy Under Section 1605A(c).

Plaintiffs' attempt to read civil conspiracy claims into the FSIA fails.  Section 1605A(c) creates causes of action for "torture, extrajudicial killing, aircraft sabotage, hostage taking" and "the provision of material support or resources" for any of the other four activities.  28 U.S.C. § 1605A(c) (incorporating by reference the predicate acts enumerated in Section 1605A(a)(1)).  Section 1605A does not, however, provide for civil conspiracy as an independent claim. "[C]ourts can not read into statutes a cause of action that has no basis in the statutory text." *Judicial Watch, Inc. v. Nat'l Energy Policy Develop. Group*, 219 F. Supp. 2d 20, 33 (D.D.C. 2002); *see Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

Federal courts have rejected generalized claims where such claims are not expressly provided for by statute. *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994).  Courts have recognized that the *Central Bank* reasoning applies with equal force to civil conspiracy.  *See Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld and Sorkin*, 135 F.3d 837, 842 (2d Cir. 1998).

A claim of civil conspiracy does not lie under the FSIA and specifically under 28 U.S.C. § 1605A.

**4.      To The Extent Section 1605A Applies, Section 1605A(c) Is The Exclusive Cause Of Action Available To Plaintiffs And Plaintiffs' State Law Claims Must Be Dismissed.**

Before the passage of § 1605A, § 1606 was generally interpreted as the gateway to the substantive source of law upon which claims against a foreign state were based. *See, e.g.*, *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 338 (D.C. Cir. 2003); *Dammarrell v. Islamic Republic of Iran*, No. 01-2224JDB, 2005 WL 756090, at *16 (D.D.C. Mar. 29, 2005). This was because § 1605(a)(7) did not in itself create a cause of action against the state. *See Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 54 (D.D.C. Feb. 25, 2008) (explaining the effect of 28 U.S.C. § 1606: "In other words, the FSIA does not create a cause of action, so plaintiffs must rely upon other sources of law in order to establish liability.") (citation omitted).

With the enactment of § 1083, Congress closed the § 1606 gateway to sources of law other than the federal cause of action set forth in § 1605A(c) for terrorism-exception cases. While Congress expressly amended various provisions of the FSIA, including striking § 1605(a)(7), Congress did not amend § 1606 to apply to new § 1605A, a section that is separate and distinct from § 1605. *See* Defense Act § 1083(b) ("Conforming Amendments"). Thus, under basic canons of statutory construction, Plaintiffs' state-law claims are precluded under 1605A. *See Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997) (holding under the canon of statutory construction *expressio unius est exclusio alterius*, a statute that includes delegations to Coast Guard officials necessarily excludes delegations to non-Coast Guard officials); *see also Brendsel v. Office of Federal Housing Enterprise Oversight*, 339 F. Supp. 2d 52, 65 (D.D.C. 2004).

Thus by its terms, Section 1606 pertains only to §§ 1605 and 1607, not § 1605A. 28 U.S.C. § 1606 ("As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same

manner and to the same extent as a private individual under the circumstances . . .").  As a result, to the extent Section 1605A applies in this case, Plaintiffs' state law claims are barred.

> **5.    The Amended Complaint Should be Dismissed Because it Failed to Allege Facts Linking Plaintiffs' Claimed Damages to Conduct Undertaken by the Defendants**

Plaintiffs seek to hold Libya and its officers responsible for *each and every* PIRA terrorist attack inflicted upon a United States national "from 1972 up to and including July 20, 1997," Amended Complaint, ¶ 5, and for each terrorist attack inflicted upon a non-United States national utilizing the bomb-making chemical Semtex "from 1987 up to and including July 20, 1997 (*id.* ¶ 7).  Absent specific facts linking the Defendants to the specific injuries incurred by plaintiffs, Libya cannot have its sovereign immunity revoked and plaintiffs cannot plead a valid cause of action under the standard set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). *See Burnett v. Al Baraka Investment & Development,* 274 F. Supp. 2d 86, 103-104 (D.D.C. 2003)(J. Robertson).

This immunity exception of § 1605A(a) and the Supreme Court's guidance in *Twombly* requires plaintiffs to allege facts supporting the proposition that an official, employee, or agent of Libya carried out at least one of the listed predicate acts while acting within the scope of his authority. Previously, under Section 1605(a)(7), sovereign immunity could only be forfeited where "the provision of support proximately causes the terrorist act."  *Wyatt v. Syrian Arab Repub.*, 362 F. Supp. 2d 103, 111 n.1 (D.D.C. 2005); *Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 236 (D.D.C. 2005)).  That conclusion applies equally to new Section 1605A.

In this matter, dismissal is warranted as plaintiffs have failed to allege any facts specifically linking the defendants to the 22 separate terrorist attacks identified in their Amended

Complaint that were allegedly undertaken by the PIRA.

With regard to Muammar Qadhafi, plaintiffs' Amended Complaint makes conclusory allegations of support, Am. Complaint ¶ 181, and general public statements regarding Libya's support of Irish revolutionaries.  *Id.* ¶¶ 207, 218-220.

Plaintiffs also fail to allege any facts linking any conduct undertaken by Messrs. Senoussi and Ashour in support of any of the PIRA attacks identified in Plaintiffs' Amended Complaint. As to Mr. Ashour, Plaintiffs' Amended Complaint is limited to conclusory allegations of general support for the PIRA, Amended Complaint ¶¶ 179, 186, 195 (Mr. Ashour "dealt directly with PIRA leadership" and "was aboard ships sent from Libya" into Ireland), and a single allegation that certain weapons confiscated from the PIRA were later "traced" back to Mr. Ashour, *id.* ¶ 194.  Plaintiffs do not allege that these confiscated weapons were actually used in any of the separate terrorist attacks identified in their Amended Complaint.  Plaintiffs' allegations as to Mr. Senoussi are even more speculative, as plaintiffs attribute to him "a history of sponsoring international terrorism," including his alleged participation in an unrelated, non-PIRA attack on an airliner.  *Id.* ¶ 185.

Like the other named defendants, plaintiffs fail to allege any facts linking specific acts undertaken by Messrs. Kusa and Bazelya in support of the PIRA attacks identified in Plaintiffs' Amended Complaint.  As to these individual defendants, the Amended Complaint is limited again to conclusory allegations of general support for the PIRA (*id.* ¶ 179) and to allegations regarding specific, non-PIRA attacks.  Similar to Mr. Senoussi, plaintiffs attribute to Mr. Kusa "a history of sponsoring international terrorism,"  including his participation in an unrelated, non-PIRA attack on an airliner.  *Id.* ¶ 191.  Plaintiffs fail to allege any specific conduct undertaken by Mr. Bazelya in support of the PIRA attacks set forth in their Amended Complaint.

Plaintiffs' Amended Complaint does not allege that any official, employee, or agent of Libya carried out any action in support of the specific terrorists acts alleged while acting within the scope of his authority. *See Robinson v. Gov't of Malay.*, 269 F.3d 133, 146 (2d Cir. 2001) (refusing to sustain FSIA jurisdiction based on "generic allegations" that lacked "an assertion or evidence of a factual predicate for such jurisdiction;" *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 190 (D.D.C. 2007).

The Supreme Court recently clarified in *Bell Atlantic Corporation v. Twombly* that the notice pleading standard under Rule 8 of the Federal Rules of Civil Procedure requires more than vague references to facts and bare conclusory assertions. 127 S. Ct. at 1974. Indeed, the Supreme Court made clear that the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," and sufficient enough "to state a claim for relief that is plausible on its face." *Id.* Further, the Court condemned overly simplistic pleadings, requiring plaintiffs to provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Id.* at 1964-65.

Rule 8 does not allow claims to be pled by implication or inference. *Id.* at 1964-65; *see also In re Terrorist Attacks on September, 11, 2001*, 392 F. Supp. 2d 539, 572 (S.D.N.Y. 2005) (dismissing claims against individual corporate officers because complaints did not provide defendants with notice as to "how they provided material support" to al Qaeda terrorists). Because plaintiffs do not allege that Libya, LESO, or any of the individual defendants performed any of the alleged terrorist acts, and because plaintiffs fail to sufficiently explain how Libya, LESO, or any of the individual defendants provided any material support proximately causing any of the alleged terrorist attacks, this Court lacks subject matter jurisdiction over all of the

plaintiffs' claims.

The only allegations that tend to show any connection between the allegations of Libya's support of the PIRA and any of the PIRA attacks alleged in the complaint are plaintiffs' "[c]hronicle of [s]ignificant PIRA [b]ombings [u]tilizing Libyan-[p]rovided Semtex."  Amended Complaint ¶ 254-276.  However and critically, none of the claims of any of the American plaintiffs is based on any attack chronicled in that section.  Thus, plaintiffs have failed to allege sufficient causation required for this Court to exercise subject matter jurisdiction over the American plaintiffs' claims.

**C.  Plaintiffs' Class Action Claims Should Be Stricken for Plaintiffs' Failure To Comply With Local Civil Rule 23.1(b).**

To the extent this Court finds jurisdiction over plaintiffs' claims, plaintiffs' class action claims should be stricken due to plaintiffs' failure to comply with Local Civil Rule 23.1(b). Specifically, after filing and serving the Complaint against Libya, plaintiffs have failed to move for class certification under Fed. R. Civ. P. 23(c)(1) within 90 days after filing their Complaint. Plaintiffs have also failed to move for an extension of time to file their motion for certification. Plaintiffs filed their original Class Action Complaint on April 21, 1996, more than two years ago, but have failed to seek class certification as required by the Rules of this Court.  Accordingly, plaintiffs' class action claims must be stricken.

The Rules of this Court require that plaintiffs asserting class action claims move for class certification within 90 days of filing their complaint.  Local Civil Rule 23.1(b) states:

> Within 90 days after the filing of a complaint in a case sought to be maintained as a class action, unless the court in the exercise of its discretion has extended this period, the plaintiff shall move for a certification under Rule 23(c)(1), Federal Rules of Civil Procedure, that the case may be so maintained.  In ruling upon the motion, the court may allow the action to be so maintained, may deny the motion, or may order that a ruling be postponed pending discovery or other appropriate preliminary proceedings.  A defendant may

> move at any time to strike the class action allegations or to dismiss
> the complaint.

LCvR 23.1(b).  The provisions of Local Rule 23.1(b) and its predecessors have been strictly

applied by the D.C. Circuit.  *See e.g.*, *Black Panther Party v. Smith*, 661 F.2d 1243, 1279 (D.C.

Cir. 1981); *Batson v. Powell*, 912 F. Supp. 565, 570 (D.D.C. 1996) ("As this Court has made

clear, the 90-day limit of Local Rule 203(b) has been strictly enforced in this Circuit." (internal

quotation marks omitted)).  *See also, McCarthy v. Kleindienst*, 741 F.2d 1406, 1411 (D.C. Cir.

1984) (*citing Black Panther Party,* 661 F.2d at 1279).

In addition, the 90 days which plaintiffs have to move for class certification begin to run

at the time of the filing of the original complaint, not from the date of filing of an amended

complaint.  *See Howard v. Gutierrez*, 474 F. Supp. 2d 41, 55 (D.D.C. 2007).  In *Howard*,

plaintiffs filed a class action complaint on October 5, 2005 but did not file a motion for

certification of class action with respect to their original complaint.  On June 8, 2006, plaintiffs

filed an amended class action complaint as a matter of right pursuant to Fed R. Civ. P. 15(a).  On

June 23, 2006, 261 days after filing their original class action complaint, plaintiffs filed a motion

for an extension of time to move for class action certification.  *Id.* at 44.

In denying plaintiffs' motion for an extension, Judge Bates of this court held that the 90

days in which plaintiffs had to move for class certification ran from the date on which the initial

class action complaint was filed, not the filing date of the amended complaint as plaintiffs

contended.  Rejecting plaintiffs' arguments that the 90 days run from the date of the amended

complaint filed pursuant to Rule 15(a), the court stated:

> [W]hile plaintiffs' amended complaint supersedes the original
> complaint with respect to the contents of the pleadings, *see, e.g., In
> re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000), the
> fact remains that plaintiffs filed a complaint alleging class claims
> on October 5, 2005.  Under plaintiffs' logic, the filing of an

amended complaint would essentially render the *local rule* without its intended legal effect. The purpose of Local Rule 23.1(b) is thus best served by calculating the ninety-day period from the filing of the initial class complaint.

*Howard*, 474 F. Supp. 2d at 54 (emphasis in original).

Judge Bates further rejected plaintiffs' arguments that their failure to timely file the motion to certify was the result of excusable neglect. In denying plaintiffs' assertion of excusable neglect, the court cited the considerable delay in plaintiffs' failure to move for certification which prolonged the uncertainty as to the scope of the class, plaintiffs' failure to move for certification until after filing an amended complaint, and plaintiffs' additional delay in filing their motion after defendant filed its motion to dismiss which raised the issue of plaintiffs' untimeliness. *Id.* at 56-57; *cf. Cryer v. Intersolutions, Inc.*, 2007 WL 1191928 (D.D.C. Apr. 20, 2007).

In the case before this Court, to date, plaintiffs have not moved for an extension of time to file their motion for class certification pursuant to LCvR 23.1(b). More than two years have passed since plaintiffs filed their original Class Action Complaint. The fact that plaintiffs filed an Amended Class Action Complaint on May 1, 2008 is irrelevant—the 90 days ran from the date of filing their original Class Action Complaint, April 21, 2006. In addition, plaintiffs' failure to timely move for class certification nearly two years beyond the deadline does not amount to excusable neglect. Accordingly, plaintiffs' class action claims should be stricken by the Court.[5]

---

[5] By filing the instant Motion, defendants do not waive any arguments with respect to class certification pursuant to Fed. R. Civ. P. 23(c). Defendants reserve their right to oppose class action certification at a later date if the present motion is denied.

**D.    The Exercise of Personal Jurisdiction Over Defendants Violates the Due Process Clause of the Fifth Amendment.**

In relevant part, the Fifth Amendment of the U.S. Constitution provides that "[n]o person shall be…deprived of life, liberty, or property, without due process of law."  Due process requires, among other things, that a defendant be subject to the personal jurisdiction of the court. It has long been the rule that a court "may exercise personal jurisdiction over a nonresident only so long as there exist 'minimum contacts' between the defendant and the forum State."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  *See also Helicopteros Nacionales de Colombia, S.A.  v. Hall*, 466 U.S. 408 (1984).

The amended complaint in this case is unclear whether the named individual defendants are being sued in their individual capacity or in their official capacity.

If sued in their individual capacity, the Foreign Sovereign Immunities Act does not govern the basis for *in peronsam* jurisdiction.  As to these individual alien defendants, there must be contacts with the District of Columbia to form a basis for either specific or general jurisdiction.  *Helicopteros Nacionales de Colombia, S.A.  v. Hall*, 466 U.S. 408 (1984).  There were no contacts of these individual defendants with the District of Columbia or the United States whatsoever.  Therefore, if the actions were brought against the individual defendants in their individual capacity, the claims must be dismissed for lack of *in personam* jurisdiction. *Nikbin v. Islamic Republic of Iran*, 471 F.Supp 2d 53 (D.D.C. 2007).

To the extent that it is claimed that the individual defendants acted in their official capacity, they are treated as Foreign States.  Therefore, the question is whether, as matter of due process, Libya and the individual defendants, in their official capacity, may be subject to *in personam* jurisdiction without minimum contacts with the United States.

Regarding the Amended Complaint, all the relevant contacts, as alleged, arising out of the claimed terrorist acts occurred in Ireland, England or Libya, and no contacts relating to the causes of action occurred in the United States.

Whether a foreign state has due process rights as a "person" under the Fifth Amendment has been left in doubt by the United States Supreme Court in *Republic of Argentina v. Weltover Inc.*, 504 U.S. 607, 619 (1992) where the Court stated: "Assuming without deciding that a foreign state is a 'person' for purpose of the Due Process Clause, *cf. South Carolina v. Katzenbach*, 383 U.S. 301, 323-324 (1966) (States of the Union are not 'persons' for purposes of the Due Process Clause), we find that Argentina possessed 'minimum contacts' that would satisfy the constitutional test." *Id*. at 620.

Before the 1996 terrorist act amendment to the FSIA, it was almost universally accepted that the two-step personal jurisdiction analysis that applied to private defendants also applied to actions against sovereigns: (1) whether the FSIA confers jurisdiction over the case and (2) whether, in cases in which the FSIA confers jurisdiction, it would be permissible under the minimum contacts due process analysis to exercise that jurisdiction. *Texas Trading and Milling v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir. 1981).

The legislative history of the FSIA, when it was enacted in 1976, evidenced an intent on the part of Congress that personal jurisdiction over sovereigns should be grounded upon contacts of the sovereign defendant (whether Foreign State or an instrumentality of a Foreign State) with the United States. *Foreign Sovereign Immunities Act of 1976: Report of the Committee on the Judiciary,* H.R. Rep. No. 94-1486, at 12 (1976). The Committee wrote: "Significantly, each of the immunity provisions in the bill, sections 1605-1607, requires some connection between the lawsuit and the United States, or an express or implied waiver by the foreign state of its

immunity from jurisdiction.  These immunity provisions, therefore, prescribe the necessary contacts which must exist before our courts can exercise personal jurisdiction."

When the Congress amended the FSIA to add §1605(a)(7), there was no discussion about the due process requirements when an action is brought in the United States against a foreign state based upon terrorist actions abroad. As one commentator noted: "[T]he anti terrorism amendments to the FSIA now clearly authorize jurisdiction beyond the limits of the Due Process Clause."  Joseph W. Glannon & Jeffrey Atik, *Politics and Personal Jurisdiction: Suing State Sponsors of Terrorism Under the 1996 Amendments to the Foreign Sovereign Immunities Act*, 87 Geo. L.J. 675, 695 (1999).

Congress simply can not abrogate Constitutional due process with regards to jurisdiction over any defendant, including haling a foreign state into a U.S. Court.  The *Price* decision, in this Circuit, ignored both legislative history of the FSIA and the constitutional right of due process of all litigants in this country, no matter the citizenship of the defendant.  *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002).[6]

Foreign states must be afforded due process when sued in the courts of the United States, like everyone else.  Accordingly, defendants respectfully submit that this Court lacks personal jurisdiction over the Libyan defendants as a matter of Constitutional Due Process and the claims against them must be dismissed.

### E.    Plaintiffs' Claims against Defendant, Muammar Qadhafi Are Subject to the Head-of-State Doctrine.

Plaintiffs' Complaint and Amended Complaint contend that defendant Muammar Qadhafi ("Qadhafi") "has served as the leader of Libya since 1969 when he led a successful coup d'etat against the prior government."  Complaint, ¶ 166; Amended Complaint ¶ 180.

---

[6] The Libyan defendants acknowledge that *Price* is controlling authority in this circuit on this issue of personal jurisdiction over a foreign state and contend it was wrongly decided.  The issue is raised here for appeal purposes.

Accordingly, plaintiffs generally allege that Qadhafi is subject to suit in the United States Courts pursuant the FSIA, Amended Complaint ¶ 3.  However, the determination as to whether a foreign head of state enjoys immunity from suit rests with the Executive Branch.  The U.S. Attorney General has not determined whether the head-of-state doctrine applies to Qadhafi.  Therefore, plaintiffs should be barred from proceeding with their claims against defendant Muammar Qadhafi subject the Executive Branch's decision regarding Qadhafi's immunity under the head-of-state doctrine.

The responsibility for determining whether an exception to sovereign immunity for foreign states under the FSIA applies is left to the courts.  *See United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997).

In contrast, the FSIA does not address a party's ability to bring suit in courts of the United States or of any state against "foreign heads of state."  The Seventh Circuit has noted:

> The FSIA does not, however, address the immunity of foreign heads of states.  The FSIA refers to foreign states, not their leaders. [] The FSIA defines a foreign state to include a political subdivision, agency or instrumentality of a foreign state but makes no mention of heads of state.  28 U.S.C. § 1603(a).  Because the FSIA does not apply to heads of states, the decision concerning the immunity of foreign heads of states remains vested where it was prior to 1976--with the Executive Branch.

*Ye*, 383 F.3d at 625 (footnote omitted) (*citing Noriega*, 117 F.3d at 1212).  In fact, the Executive Branch's suggestion of immunity is conclusive and not subject to judicial inquiry. *See Ye*, 383 F.3d at 626 (*citing Spacil v. Crowe*, 489 F.2d 614, 617 (5th Cir. 1974); *Isbrandtsen Tankers, Inc. v. President of India*, 446 F.2d 1198, 1201 (2nd Cir. 1971).

In a separate case currently pending in the District Court for the District of Columbia, in which Qadhafi is a defendant, Judge Urbina of this Court requested the position of the Executive Branch regarding whether Qadhafi is entitled to head-of-state immunity. *See Collett v. Socialist*

*Peoples' Libyan Arab Jamahiriya,* 362 F. Supp. 2d 230, 234 (D.D.C. 2005). *Pugh v. Socialist People's Libyan Arab Jamahiriya,* 2006 U.S. Dist. LEXIS 58033 (D.D.C. 2006).

In both *Collett* and *Pugh*, the Attorney General has filed Statements of Interest of the United States in which the Executive Branch has deferred responding to the Courts' invitations to submit views regarding the application of the head-of-state doctrine. As recently as April 15, 2008, the Attorney General filed a Statement of Interest in *Collett* advising this Court that:

> As the previous report submitted to the Court indicates, the United States government has been closely involved in efforts to resolve outstanding claims against Libya or its officials pending in U.S. courts. Last month, Libyan representatives presented a new proposal for resolving outstanding claims, and the United States is engaging in government-to-government discussions to explore that proposal. To facilitate these efforts, the United States would prefer to defer participation in this litigation at the present time, and will provide the Court a further status report no later than August 15, 2008.

*See* Statement of Interest of the United States, attached hereto as Exhibit B.

In the case before this Court, plaintiffs should be barred from proceeding with their claims against defendant Muammar Qadhafi at this time. The U.S. Attorney General has not taken a position on whether the head-of-state doctrine applies to Qadhafi. The Court should therefore stay all pending claims against defendant Muammar Qadhafi, to the extent any such claims survive defendants' Motion to Dismiss, and until such time as the Executive Branch offers a directive on the applicability of the head-of-state doctrine to Qadhafi.

## III.    CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

**ECKERT SEAMANS CHERIN
   & MELLOTT, LLC**

_____/s/ Thomas J. Whalen_____
Thomas J. Whalen, Esq. (D.C. Bar #208512)
Mark A. Johnston, Esq. (D.C. Bar #455764)
1747 Pennsylvania Ave., N.W.
Suite 1200
Washington, DC  20006-4604
(202) 659-6600
Fax: (202) 659-6699
twhalen@eckertseamans.com
mjohnston@eckertseamans.com

Of counsel:

Wendy West Feinstein, Esq.
ECKERT SEAMANS CHERIN
    & MELLOTT, LLC
600 Grant Street
44th Floor
Pittsburgh, PA 15219
(412) 566-6000
Fax:  (412) 566-6099
wfeinstein@eckertseamans.com

*Attorneys for Defendants*, *The Socialist
People's Libyan Arab Jamahiriya, Libyan
External Security Organization, Muammar
Qadhafi, Abdullah Senoussi,Musa Kusa,
Khalifa Ahmed Bazelya, and
Nasser Ali Ashour*

Dated: July 3, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing **Motion to Dismiss the Amended Complaint, Memorandum of Points and Authorities, and Proposed Order** were electronically filed and served, this 3rd day of July, 2008, to:

Jayne Conroy
Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP
112 Madison Avenue
New York, NY 10016-7416

Donald A. Migliori
Motley Rice, LLC
321 South Main Street
Providence, RI 02940

Jodi Westbrook Flowers
John Michael Eubanks
Justin B. Kaplan
Michael E. Elsner
Michelle Dara Hodkin
Ronald L. Motley
Motley Rice, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465

_____/s/ Thomas J. Whalen_____
Thomas J. Whalen