UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK McDONALD, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-00729-JR |
| | ) | |
| SOCIALIST PEOPLE'S LIBYAN ARAB | ) | |
| JAMAHIRIYA, et al. | ) | |
| | ) | |
| Defendants. | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and Local Rule 23.1

of the United States District Court for the District of Columbia, Plaintiffs in the above-captioned

case move for an Order certifying the following two Classes under Rule 23(b)(3):

1.    The American Class Representatives, named at paragraphs 15-19 of the First

Amended Complaint ("AC"), bring this motion under Rule 23(b)(3) as representatives of the

American Class defined as follows:

> **The following persons shall be members of the American Class: (1) all legal representatives (including personal representatives, executors, estate administrators, and/or trustees) entitled to bring a legal action on behalf of any United States national or United States permanent-resident alien who died as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997; (2) all United States nationals or United States permanent-resident aliens who suffered physical injury as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997; (3) all survivors, including spouses, children, parents, or siblings of a United States national or United States permanent-resident alien who died as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997; and (4) the spouse and/or minor children of a United States national or United States permanent-resident alien who suffered physical injury as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997.**

AC ¶5 ("American Class").

1

2.    The Alien Class Representatives, named at paragraphs 20-169 of the First Amended Complaint, bring this motion under Rule 23(b)(3) as representatives of the <u>Alien Class</u> defined as follows:

> **The following persons shall be members of the Alien Class: (1) all legal representatives (including personal representatives, executors, estate administrators, and/or trustees) entitled to bring a legal action on behalf of any non-United States national or permanent-resident alien who died as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997; (2) all non-United States nationals or permanent-resident aliens who suffered physical injury as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997; (3) all survivors, including spouses, children, parents, or siblings of a non-United States national or permanent-resident alien who died as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997; and (4) the spouse and/or minor children of a non-United States national or permanent-resident alien who suffered physical injury as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997; but excluding (5) all non-United States nationals or permanent-resident aliens, and all spouses, children, parents and siblings of such individuals who were engaged in military operations on behalf of the Government of the United Kingdom against the PIRA when these individuals were either killed or physically injured as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997.**

AC ¶7 ("Alien Class").

The American Class and the Alien Class should be certified because all the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied:

3.    Under Rule 23(a)(1), the American Class and the Alien Class comprising more than 3,500 victims of Libyan-supported PIRA terror attacks are so numerous that joinder of all

members of the American Class and the Alien Class is impractical. Based on the best available data to date, plaintiffs' investigators estimate that the number of members of the Alien Class is approximately 4,977, and also estimate that the number of members of the American Class is approximately 47.

4.    Under Rule 23(a)(2), there are questions of law and fact common to the Class, including but not limited to:

(a)    Whether American Class members and Alien Class members were killed or injured by attacks carried out by PIRA with material support of Defendants, including provision of Semtex explosives to PIRA;

(b)    Whether Defendants entered into an agreement with PIRA whereby Defendants would provide material support to PIRA to kill or injure British and American civilians in the United Kingdom through terror attacks during the 1970s, 1980s, and 1990s;

(c)    Whether Defendants provided PIRA with material support to carry out terror attacks against British and American civilians in the United Kingdom, including Northern Ireland, during the 1970s, 1980s, and 1990s;

(d)    Whether Defendants provided material support to PIRA to advance Libya's foreign-policy objective of engaging in terror acts against targets associated with the United States and United Kingdom;

(e)    Whether Defendants knew of the objective of PIRA to launch terror attacks against British and American civilians in the United Kingdom when Defendants provided material support to PIRA;

(f)    Whether the deaths and injuries suffered by the American Plaintiffs and the Alien Plaintiffs were direct and foreseeable results of Defendants' provision of material support to PIRA;

(g)    Whether Defendants are liable to American Class members and Alien Class members for damages for wrongful death, battery, intentional infliction of emotional distress, and loss of consortium under federal law or substantially identical state, foreign statutory, or common law;

(h)     Whether Defendants are liable to American Class members and Alien Class members for violations of the Torture Victim Protection Act;

(i)      Whether Defendants are liable to American Class members for violations of 28 U.S.C. §1605A;

(j)      Whether Defendants are liable to Alien Class members for violations of the law of nations giving rise to jurisdiction under the Alien Tort Statute;

(k)     Whether Defendants are liable to American Class members and Alien Class members for compensatory and punitive damages;

(l)      Whether damages alleged by American Class members and Alien Class members were proximately caused by conduct of Defendants; and

(m)    What is the proper methodology for calculating and distributing compensatory and punitive damages to the members of the American Class and the Alien Class.

5.     Under Rule 23(a)(3), the claims of the named Class Representatives are typical of the Class because:

(a)     The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class suffered damages as the result of common conduct and acts of the Defendants;

(b)     The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class assert that Defendants used similar instruments, methods and plans to inflict harm upon the American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class;

(c)     The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class assert claims for damages based on the same legal theories of wrongful death, battery, intentional infliction of emotional distress, and loss of consortium;

(d)     The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class assert claims for damages based on the same legal theory for Defendants' violations of the Torture Victim Protection Act;

(e)     The American Class Representatives and all other members of the American Class assert claims for damages based on the same legal theory for Defendants' violations of 28 U.S.C. §1605A;

(f)     The Alien Class Representatives and all other members of the Alien Class assert claims for damages based on the same legal theory for Defendants' violations of the law of nations giving rise to jurisdiction under the Alien Tort Statute;

(g)     The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class claim compensatory damages and punitive damages;

(h)     The method used to compute compensatory damages will be identical for the American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class; and

(i)     Punitive damages should be awarded against the Defendants for their willful, wanton, and malicious acts that caused grievous injury to the American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class.

6.     Under Rule 23(a)(4), the American Class Representatives and the Alien Class Representatives will fairly and adequately protect the interests of their respective Classes because:

(a)     The American Class Representatives have an interest in vigorously prosecuting the American Class claims against the Defendants as their interests are aligned;

(b)     The Alien Class Representatives have an interest in vigorously prosecuting the Alien Class claims against the Defendants as their interests are aligned;

(c)     The American Class Representatives and the Alien Class Representatives have made provision for adequate financial resources to be available for the conduct of this litigation in order to ensure that the interests of the members of the American Class and the Alien Class will not be harmed; and

(d)     Members of the American Class and the Alien Class will be adequately represented by the American Class Representatives, the Alien Class Representatives, and their Counsel Motley Rice LLC who are experienced in class action litigation.

7.     Under Rule 23(b)(3), the common questions of law and fact set forth above predominate over any questions affecting only individual members, and a class action is a superior method for the fair and efficient adjudication of this controversy because:

(a)     The predominant issues of fact common to all members of the American Class and Alien Class are whether Defendants provided material support, including Semtex explosives, to PIRA to carry out terror attacks on British and American civilians in the United Kingdom, which caused death or injury to all members of the American Class and Alien Class;

(b)     The predominant issues of law common to all members of the American Class and Alien Class are whether Defendants are liable to the: (i) American Class and Alien Class for wrongful death, battery, intentional infliction of emotional distress, and loss of consortium under federal law or substantially identical state, foreign statutory, or common law; (ii) American Class and Alien Class for violations of the Torture Victim Protection Act; (iii) American Class for violations of 28 U.S.C. §1605A; (iv) Alien Class for violations of the law of nations giving rise to jurisdiction under the Alien Tort Statute; and (v) American Class and Alien Class for compensatory and punitive damages;

(c)     Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the burden and expense to all parties and to the court system, hence class action device is superior; and

(d)    The class action device presents far fewer management difficulties and provides the benefits of economies of scale, scope, and efficiency, as well as comprehensive supervision by a single court.

8.    Moreover, under Rule 23(b)(3), proceeding by class action is the superior, and indeed, as a practical matter, may be the only, way these thousands of claims can be prosecuted, as filing, serving, proving the allegations against, and undertaking national and international collection damages efforts against these powerful Defendants would be too expensive for the individual members of the American Class and Alien Class – victims of terror – to undertake alone, and can only be done in the context of a collectivized class action proceeding. Furthermore, class action treatment to resolve thousands of Plaintiffs' claims in this single forum is desirable as it will generate economies of time, effort, and expense for the litigants and the Court

9.    Moreover, under Rule 23(g), the Court should appoint Motley Rice LLC as Class Counsel for the American Class and for the Alien Class.

10.    Plaintiffs in their accompanying Memorandum of Points & Authorities at Section V, pp. 22-23, set forth in detail their "Proposal for Rule 23(c)(2) Notice to the Classes" in compliance with Local Civil Rule 23.1(c), which requires that "plaintiff[s] shall include in the motion for certification a statement proposing (1) how, when, by whom, and to whom the notice required by Rule 23(c)(2) shall be given, (2) how and by whom payment therefore is to be made, and (3) by whom the response to the notice is to be received."  LCvR 23.1(c).

11.    Class Counsel will stand ready to submit for approval by the Court a proposed Notice to the American Class and to the Alien Class within sixty days (60) days after entry of the Order certifying the American Class and the Alien Class.

Plaintiffs' Motion for Class Certification is supported by Plaintiffs' accompanying Memorandum of Points & Authorities, by the accompanying Affidavit of Michael Hall, as well as by Plaintiffs' First Amended Complaint that was previously filed in this action on May 1, 2008.[1]

Plaintiffs respectfully request oral argument on this motion.

Dated:  July 30, 2008

Respectfully submitted,

MOTLEY RICE LLC

_____/S/_____
Ronald L. Motley, Esq.
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael E. Elsner, Esq.
Robert  T. Haefele, Esq.
Elizabeth S. Smith, Esq.
John M. Eubanks, Esq.
Vincent I. Parrett, Esq.
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Phone: (843) 216-9000
Fax: (843) 216-9450
jflowers@motleyrice.com

*Class Counsel for all Plaintiffs*

Of Counsel:

Jason McCue, Esq.
H20 LAW
40-43 Chancery Lane
London WC2A 1JQ
United Kingdom

Lord Dan Brennan
Matrix Chambers
Gray's Inn

_____

[1] In accord with LCvR 23.1(b), this motion for class certification is brought within "90 days after the filing of a complaint in a case sought to be maintained as a class action…."

London WC1R 5LN
United Kingdom

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARK McDONALD, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-00729-JR |
| | ) | |
| SOCIALIST PEOPLE'S LIBYAN ARAB | ) | |
| JAMAHIRIYA, et al. | ) | |
| | ) | |
| Defendants. | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

i

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES……………………………………………………………  iv

I.     INTRODUCTION…………………………………………………………………  1

II.    COMMON FACTS & LEGAL CLAIMS, JURISDICTION, AND DEFINITIONS
       OF THE AMERICAN CLASS & THE ALIEN CLASS…………………………..  2

       A.    The First Amended Complaint:  Common Fact Allegations….....………….  2

       B.    The First Amended Complaint:  Common Legal Claims……..……………  4

       C.    Jurisdiction & Venue……………………………………………………….  4

       D.    Class Definitions……………………………………………………………..  5

             1.    Definition of American Class…………………………………......  5

             2.    Definition of Alien Class…………………………………….....  5

III.   CERTIFICATION OF THE AMERICAN CLASS AND THE ALIEN CLASS IS
       PROPER UNDER RULE 23(b)(3)…………………………………………………  6

       A.    Legal Standard For Class Certification………………………………….  6

       B.    Plaintiffs Meet Each Of The Requirements Under Rule 23(a)…………..  8

             1.    The American Class & the Alien Class are so Numerous that Joinder
                   of all Members is Impractical……………………………………  8

             2.    There are Questions of Law & Fact Common to the
                   American Class and to the Alien Class……………………..………  9

             3.    The Claims of the Class Representatives are Typical
                   of the Claims of their respective Classes...…………………………  12

             4.    The American Class Representatives & the Alien Class
                   Representatives will Fairly & Adequately Protect the Interests
                   of their respective Classes………………………………………………  14

C.    Plaintiffs Meet Each Of The Requirements Under Rule 23(b)(3)………..    15

    1.    Questions of Law & Fact Common to Class Members Predominate Over Questions affecting only Individual Members of the respective Classes………………………………………………..    16

    2.    A Class Action is Superior to other Methods for the Fair & Efficient Adjudication of Plaintiffs' Claims. ………………………………    19

IV.    MOTLEY RICE LLC SHOULD BE APPOINTED AS CLASS COUNSEL……    21

V.    PROPOSAL FOR RULE 23(c)(2) NOTICE TO THE CLASSES………………..    22

A.    How, when, by whom, and to whom notice shall be given………………    22

B.    How and by whom payment therefore is to be made……………………    23

C.    By whom the response to the notice is to be received…………………..    23

VI.    CONCLUSION…………………………………………………………………...    24

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Aliotta v. Gruenberg*,
  237 F.R.D. 4 (D.D.C. 2006)……………………………………………………… 6

*Almog v. Arab Bank.*,
  471 F. Supp. 2d 257 (E.D.N.Y. 2007)…………………………………………………22

*Amchem Products Inc. v. Windsor*,[1]
  521 U.S. 591 (1997)…………………………………………………………………..7, 15, 16

*Barnes v. District of Columbia*,
  242 F.R.D. 113 (D.D.C. 2007)…………………………………………………………8, 9

*Bynum v. District of Columbia*,
  214 F.R.D. 27 (D.D.C. 2003)…………………………………………8, 9, 10, 12, 14, 16, 19

*Cummock v. Socialist People's Libyan Arab Jamahiriya et al.*,
  CV-96-2993 (TCP)(MLO)(E.D.N.Y. 1996)………………………………………………..21

*DL v. District of Columbia*,
  237 F.R.D. 319 (D.D.C. 2006)…………………………...…………………….…..…...10

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)……………………………………………………………………6

*Eubanks v. Billington*,
  110 F.3d 87 (D.C. Cir. 1997)……………………………………………………16

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  202 F.R.D. 12 (D.D.C. 2001)……………………………………………………………..6

*In re Sumitomo Cooper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999)……………………………………………………18

*In Re Terrorist Attacks on September 11, 2001*,
  349 F. Supp.2d 765 (S.D.N.Y. 2005)………………………………………………..21

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002)……………………………………………………16

---

[1] As prescribed by LCvR 7(a), asterisks in the margin indicate those cases on which plaintiffs' counsel chiefly relied as articulating the proper standard and analysis for resolving class certifications motions in this District.

*Jarvaise v. Rand Corp.,
   212 F.R.D. 1 (D.D.C. 2002)………………………………………………7, 8, 19

*Johnson v. District of Columbia,
   248 F.R.D. 46 (D.D.C. 2008)………………………………………9, 16, 17, 18, 19

Pigford v. Glickman,
   182 F.R.D. 341 (D.D.C. 1998)………………………………………..……………8

Stewart v. Rubin,
   948 F. Supp. 1077 (D.D.C. 1996)………………………………………………12

Twelve John Does v. District of Columbia,
   117 F.3d 571 (D.C. Cir. 1997)……………………………..………………..………14

United States v. Trucking Employers, Inc.
   75 F.R.D. 682 (D.D.C. 1977)………………………………………………………...12

Wagner v. Taylor,
   836 F.2d 578 (D.C. Cir. 1987)……………………………………………………12

Wells v. Allstate Ins. Co.,
   210 F.R.D. 1 (D.D.C. 2002)……..………………………………………………19

## FEDERAL RULES

Fed.R.Civ.P. 23(a) ...................................................................... 1, 7, 8, 9, 12, 14, 15, 20

Fed.R.Civ.P. 23(b)(3)............................................................. 1, 2, 5, 7, 15, 18, 19, 20

Fed.R.Civ.P. 23(c)(1)(B) ........................................................................... 21

Fed.R.Civ.P. 23(c)(2)…………………………………………………………22

Fed.R.Civ.P. 23(g)(1)(C)(i) ...................................................................... 21

Local Civil Rule 23.1(c)……………………………………………………………22

## OTHER AUTHORITIES

ALBA CONTE & HERBERT NEWBERG ON CLASS ACTIONS §3.10 (4th ed. 2002) ........... 9

## I.    INTRODUCTION

Plaintiffs file this Memorandum of Points of Law in support of Plaintiffs' Motion for Class Certification under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

As set forth in the First Amended Complaint ("AC"), The Socialist People's Libyan Arab Jamahiriya ("Libya"), the Libyan External Security Organization a/k/a Jamahiriya Security Organization ("LESO"), Colonel Muammar Qadhafi ("Qadhafi"), Abdullah Senoussi ("Senoussi"), Musa Kusa ("Kusa"), Nasser Ali Ashour ("Ashour"), and Khalifa Ahmed Bazelya ("Bazelya") (collectively, "Defendants" or "Libya") from 1969 through 1997 provided support to the Provisional Irish Republican Army ("PIRA") to kill and injure civilians in the United Kingdom, including in Northern Ireland.  AC at pp. 9-10 ("Introduction").  Defendants provided material support to the PIRA to carry out terror attacks in the form of ammunition, arms, finances, and explosives – including, but not limited to, the deadly explosive agent Semtex.  *Id.*

Plaintiffs now move for two separate Classes to be certified under Rule 23(b)(3).

The United States national Plaintiffs named at paragraphs 15-19 of the First Amended Complaint (the "American Class Representatives"), on behalf of themselves and all similarly situated persons, move for Rule 23(b)(3) certification of the American Class as defined below at Section II(d)(1) ("Definition Of American Class").

The alien national Plaintiffs named at paragraphs 20-169 of the First Amended Complaint (the "Alien Class Representatives"), on behalf of themselves and all similarly situated persons, move for Rule 23(b)(3) certification of the Alien Class as defined below at Section II(d)(2) ("Definition Of Alien Class").

The Court should authorize this action to proceed under Rule 23, and certify the American Class and the Alien Class under Rule 23(b)(3).  The American Class and the Alien

Class meet all requirements of Rule 23(a) including numerosity, commonality of questions of law and fact, typicality of the claims of the Class Representatives and their respective Classes, and adequacy of the Class Representatives and Class Counsel to protect the interests of their respective Classes. Moreover, all requirements of Rule 23(b)(3) are met, as questions of law and fact common to the American Class and the Alien Class predominate, and a class action is superior to other available methods for the fair and efficient adjudication of these claims.

## II. COMMON FACTS & LEGAL CLAIMS, JURISDICTION, AND DEFINITIONS OF THE AMERICAN CLASS & THE ALIEN CLASS

### A. The First Amended Complaint: Common Fact Allegations

American Class members and Alien Class members allege the following common facts:

*That*, they or their family members were killed or injured by "attacks committed by the PIRA that were a foreseeable consequence of the material support and resources, including the provision of Semtex explosives, provided by Libya to the PIRA dating from 1972, which the PIRA continued to utilize until its cease-fire agreement in 1997." AC at pp. 10-11.

*That*, beginning in 1972, Libya established contacts with the PIRA which, in the subsequent twenty-five (25) years, grew into a material support network provided by Libya to PIRA to carry out terror attacks against civilians in the United Kingdom, including Northern Ireland. AC ¶203.

*That*, Defendants entered into an agreement with PIRA whereby Defendants would, and in fact did, provide material support PIRA to kill or injure civilians in the United Kingdom through terror attacks. AC ¶296.

*That*, Defendants' agreement with PIRA specifically called for Defendants to provide PIRA with finances, arms, ammunition, explosive materials including, but not limited to, Semtex, training, training facilities, and a base of operations for PIRA military activists in

furtherance of the PIRA's campaign of violence against British and American civilians in the United Kingdom during the 1970s, 1980s, and 1990s.  AC ¶297.

*That*, Defendants in fact did provide PIRA material support in the form of finances, arms, ammunition, explosive material including, but not limited to, Semtex, training, training facilities, and a base of operations for PIRA military activities in Tripoli, as well as other public support and encouragement, in furtherance of PIRA's campaign of violence against British and American civilians in the United Kingdom during the 1970s, 1980s, and 1990s.  AC ¶¶204, 297; *see also*, AC ¶¶209-216, 227-241, 248-253 (detailing Libya's provision of arms, explosives, and other material support to PIRA for decades).

*That,* Defendants provided material support to PIRA in order to advance Libya's foreign-policy objective of launching terror acts against targets associated with the United States and the United Kingdom.  AC ¶207.

*That*, Defendants knew the objective of PIRA to carry out terror attacks against British and American civilians in the United Kingdom when Defendants provided material support to PIRA, and Defendants further knew that death and injury to British and American civilians in the United Kingdom were direct and foreseeable results of such support.  AC ¶206.

*That,* the deaths and injuries suffered by the American Plaintiffs and the Alien Plaintiffs were in fact direct and foreseeable results caused by Defendants' provision of material support to PIRA.

*That*, members of the American Class and the Alien Class were killed or injured by PIRA terror attacks with arms and explosives, including but not limited to Semtex, which Defendants gave PIRA to carry out those attacks.  AC ¶¶254-294.

B.    The First Amended Complaint:  Common Legal Claims

American Class members and Alien Class members allege the following common legal claims against Defendants:

*That,* Defendants are liable to the American Class members and the Alien Class members for damages for wrongful death, battery, intentional infliction of emotional distress, and loss of consortium under federal law or (substantially identical) state, foreign statutory, or common law. AC ¶¶300-302 (Wrongful Death), ¶¶304-307 (Battery), ¶¶309-315 (Intentional Infliction of Emotional Distress), ¶¶316-319 (Loss of Consortium).

*That*, Defendants are liable to the American Class members and the Alien Class members for violations of the Torture Victim Protection Act.  AC ¶¶ 321-323.

*That*, Defendants are liable to the American Class members for violations of 28 U.S.C. §1605A.  AC ¶¶ 325-329.

*That*, Defendants are liable to the Alien Class members for violations of the law of nations giving rise to jurisdiction under the Alien Tort Statute.  AC ¶¶331-342.

*That*, Defendants are liable to the American Class members and the Alien Class members for compensatory and punitive damages.  AC ¶10(i).[2]

C.    Jurisdiction & Venue

Subject matter jurisdiction arises under 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), 1350 and 1367, as well as from Defendants' violations of 28 U.S.C. §§ 1605(a)(2) and 1605A and the Torture Victim Protection Act ("TVPA"), Pub.L. 102-256, 106 Stat. 73 (reprinted at 28 U.S.C. § 1350 note).  Moreover, Libya's sale of arms, ammunitions, explosives, explosive components, and other such items to the PIRA constituted "commercial activity" that had a direct effect in the

---

[2] The proper methodology for calculating and distributing compensatory and punitive damages is another common issue of law among members of the American Class and among members of the Alien Class.

United States, thereby triggering the FSIA exception to jurisdictional immunity provided by 28 U.S.C. § 1605(a)(2).  Moreover, venue in this district is appropriate pursuant to 28 U.S.C. §§ 1391(d) and 1391(f)(4).

    D.    <u>Class Definitions</u>

        1.    <u>Definition of American Class</u>

The American Class Representatives bring this motion under Rule 23(b)(3) as representatives of the American Class defined as follows:

> **The following persons shall be members of the American Class: (1) all legal representatives (including personal representatives, executors, estate administrators, and/or trustees) entitled to bring a legal action on behalf of any United States national or United States permanent-resident alien who died as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997; (2) all United States nationals or United States permanent-resident aliens who suffered physical injury as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997; (3) all survivors, including spouses, children, parents, or siblings of a United States national or United States permanent-resident alien who died as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997; and (4) the spouse and/or minor children of a United States national or United States permanent-resident alien who suffered physical injury as a result of a bombing perpetrated by the PIRA during the time period from 1972 up to and including July 20, 1997.**

AC ¶5 ("American Class" or "American Plaintiffs").

        2.    <u>Definition of Alien Class</u>

The Alien Class Representatives bring this motion under Rule 23(b)(3) as representatives of the Alien Class defined as follows:

> **The following persons shall be members of the Alien Class: (1) all legal representatives (including personal representatives, executors, estate administrators, and/or trustees) entitled to bring a legal action on behalf of any non-United States national or permanent-resident alien who died as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997; (2) all non-United States nationals or permanent-**

**resident aliens who suffered physical injury as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997; (3) all survivors, including spouses, children, parents, or siblings of a non-United States national or permanent-resident alien who died as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997; and (4) the spouse and/or minor children of a non-United States national or permanent-resident alien who suffered physical injury as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997; but excluding (5) all non-United States nationals or permanent-resident aliens, and all spouses, children, parents and siblings of such individuals who were engaged in military operations on behalf of the Government of the United Kingdom against the PIRA when these individuals were either killed or physically injured as a result of a bombing perpetrated by the PIRA utilizing Semtex in the preparation of the bomb where such Semtex was being provided as material support to PIRA by Libya during the time period from 1987 up to and including July 20, 1997.**

AC ¶7 ("Alien Class" or "Alien Plaintiffs").

## III.    CERTIFICATION OF THE AMERICAN CLASS AND THE ALIEN CLASS IS PROPER UNDER RULE 23(b)(3)

### A.    Legal Standard for Class Certification

"In determining whether to certify a class, the court should not consider the underlying merits of the plaintiff's claims." *Aliotta v. Gruenberg*, 237 F.R.D. 4, 10 (D.D.C. 2006)(citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) & *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 14, 21 (D.D.C. 2001)).  As put by the Supreme Court, "in determining the propriety of a class action, the question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen*, 417 U.S. at 178.  "[T]he court accepts as true the allegations set forth in the complaint." *Aliotta*, 237 F.R.D. at 10 (citing *In re Lorazepam*, 202 F.R.D. at 21).  And "when a

6

court is in doubt as to whether to certify a class action, it should err in favor of allowing a class." *Id.*

"[T]o obtain class certification, plaintiffs bear the burden of establishing the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure and of showing that the case falls within at least one of the three categories of Federal Rule 23(b)." *Jarvaise v. Rand Corp.*, 212 F.R.D. 1, 2 (D.D.C. 2002).

Here, this motion to certify the American Class and the Alien Class should be granted because all requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – and all requirements of Rule 23(b)(3) are satisfied for the American Class and for the Alien Class. *See Amchem Products Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997) (motion to certify class shall be granted if all four requirements of Rule 23(a) and one of the requirements of Rule 23(b) are satisfied).

Specifically, the four requirements of Rule 23(a) are:

(1)  the class is so numerous that joinder of all members is impractical ("numerosity");

(2)  there are questions of law or fact common to the Class ("commonality");

(3)  the claims or defenses of the Representative parties are typical of the claims or defenses of the Class ("typicality");

(4)  the Representative parties will fairly and adequately protect the interests of the Class ("adequacy of representation").

Fed.R.Civ.P. 23(a).

Certification under Rule 23(b)(3) requires that the Court find "that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

B.     <u>Plaintiffs Meet Each Of The Requirements Under Rule 23(a)</u>

     1.     The American Class & the Alien Class are so Numerous that Joinder of all Members is Impractical

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable."  Fed.R.Civ.P. 23(a).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Jarvaise*, 212 F.R.D. at 3 (internal cites omitted); *see also*, *Barnes v. District of Columbia*, 242 F.R.D. 113, 121 (D.D.C. 2007)("in most cases a class of at least forty members presumptively satisfies the impracticability of joinder requirement, though cases as small as twenty may be appropriate").

Moreover, where "plaintiff can provide a reasonable basis supporting an estimate, this will suffice instead of an exact figure."  *Barnes*, 242 F.R.D. at 121 (citing, *inter alia*, *Bynum v. District of Columbia*, 214 F.R.D. 27, 32-33 (D.D.C. 2003)("[t]he general rule is that a plaintiff need not provide the exact number of potential class members in order to satisfy this requirement…. 'So long as there is a reasonable basis for the estimate provided, the numerosity requirement can be satisfied without precise numbers.'")(quoting *Pigford v. Glickman*, 182 F.R.D. 341, 347 (D.D.C. 1998)).

Here, Plaintiffs allege the American Class and the Alien Class include victims and survivors of Libyan-supported PIRA terror attacks that number in excess of 3,500 persons.  AC ¶9(a).[3]

Plaintiffs' counsel and our investigators have endeavored and continue to attempt to determine the precise size and number of the Alien Class and of the American Class.  Based on

---

[3] Indeed, the 138 named Alien Class Representatives alone far exceed the presumptive 40-person threshold to satisfy the numerosity requirement.  *See* AC ¶¶20-169 (setting forth in detail the terror attacks and injuries or death inflicted on the 138 Alien Class Representatives).

the best available data, including from the Global Terrorism Database ("GTD") – which "is

currently the most comprehensive unclassified data base on terrorist events in the world,"

http://www.start.umd.edu/data/gtd/ – our investigators estimate that the number of members of

the Alien Class is approximately 4,977. *See* Affidavit of Michael Hall ¶5, attached as Exhibit 1.

And while determining the precise number of U.S. victims of Libyan-supported PIRA attacks in

the United Kingdom has admittedly been more difficult, our investigators based on the best

available data, including from the GTD, estimate that the number of members of the American

Class is approximately 47. *See* Affidavit of Michael Hall ¶4, attached as Exhibit 1.

    As it would be highly impracticable and a waste of resources to attempt to join

approximately 4,977 members of the Alien Class and approximately 47 members of the

American Class, the numerosity prong is satisfied.

        2.    There are Questions of Fact & Law Common to the American Class and to
the Alien Class

    To satisfy the commonality requirement of Rule 23(a)(2), there must be "questions of law

or fact common to the class." Fed.R.Civ.P. 23(a)(2). "The commonality test is met where there

is at least one issue, the resolution of which will affect all or a significant number of the putative

class members." *Jarvaise*, 212 F.R.D. at 3; *see also*, ALBA CONTE & HERBERT NEWBERG

ON CLASS ACTIONS §3.10 (4th ed. 2002)("[w]hen the party opposing the class has engaged in

some course of conduct that affects a group of persons and gives rise to a cause of action, one or

more of the elements of that cause of action will be common to all of the persons affected").

    Notably, "it is not necessary that every issue of law or fact be the same for each class

member." *Johnson v. District of Columbia*, 248 F.R.D. 46, 53 (D.D.C. 2008). Rather, if "there

is *some* aspect or feature of the claims which is common to all," the requirement is satisfied.

*Barnes*, 242 F.R.D. at 121 (emphasis added); *see also*, *Bynum*, 214 F.R.D. at 32 (factual

variation among class members does not defeat the commonality requirement so long as a single aspect or feature of the claim is common to all proposed class members). And just as factual variations will not defeat commonality, neither will variations in legal theories. *DL v. District of Columbia*, 237 F.R.D. 319, 322 (D.D.C. 2006)("Variation among the legal theories underpinning claims of putative class members does not defeat the commonality requirement as long as a single aspect or feature of the claim is common to all proposed class members")(citing, *inter alia*, *Bynum*, 214 F.R.D. at 33).

Here, Defendants engaged in a common course of conduct to provide:

> finances, arms, ammunition, explosive materials including, but not limited to, Semtex, training, training facilities, and a base of operations for PIRA military activists in furtherance of the PIRA's campaign of violence against British and American targets during the 1970s, 1980s, and 1990s. The direct and foreseeable results of this conspiracy were the wrongful deaths and injuries suffered by the American Plaintiffs and the Alien Plaintiffs in attacks carried out by the PIRA.

AC ¶297.

Defendants' common course of conduct gives rise to many issues of fact and law common to members of the American Class and the Alien Class, including:

   (a)    Whether American Class members and Alien Class members were killed or injured by attacks carried out by PIRA with material support of Defendants, including provision of Semtex explosives to PIRA;

   (b)    Whether Defendants entered into an agreement with PIRA whereby Defendants would provide material support to PIRA to kill or injure British and American civilians in the United Kingdom through terror attacks during the 1970s, 1980s, and 1990s;

   (c)    Whether Defendants provided PIRA with material support to carry out terror attacks against British and American civilians in the United Kingdom, including Northern Ireland, during the 1970s, 1980s, and 1990s;

      (d)      Whether Defendants provided material support to PIRA to advance Libya's foreign-policy objective of engaging in terror acts against targets associated with the United States and United Kingdom;

      (e)      Whether Defendants knew of the objective of PIRA to launch terror attacks against British and American civilians in the United Kingdom when Defendants provided material support to PIRA;

      (f)      Whether the deaths and injuries suffered by the American Plaintiffs and the Alien Plaintiffs were direct and foreseeable results of Defendants' provision of material support to PIRA;

      (g)      Whether Defendants are liable to American Class members and Alien Class members for damages for wrongful death, battery, intentional infliction of emotional distress, and loss of consortium under federal law or substantially identical state, foreign statutory, or common law;

      (h)      Whether Defendants are liable to American Class members and Alien Class members for violations of the Torture Victim Protection Act;

      (i)      Whether Defendants are liable to American Class members for violations of 28 U.S.C. §1605A;

      (j)      Whether Defendants are liable to Alien Class members for violations of the law of nations giving rise to jurisdiction under the Alien Tort Statute;

      (k)      Whether Defendants are liable to American Class members and Alien Class members for compensatory and punitive damages;

      (l)      Whether damages alleged by American Class members and Alien Class members were proximately caused by conduct of Defendants;

      (m)      What is the proper methodology for calculating and distributing compensatory and punitive damages to the members of the American Class and the Alien Class.

AC ¶¶10, 203-07, 254-294, 296-97, 300-02, 304-07, 309-19, 321-23, 325-29, 331-42. In light of these multiple common issues of law and fact, commonality is satisfied.

3.    The Claims of the Class Representatives are Typical of the Claims of their respective Classes.

Rule 23(a)(3) requires that "the class or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "While commonality requires a showing that the *members* of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct." *Bynum*, 214 F.R.D. at 34 (emphasis in original). A representative "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996).

"Factual variations between the claims of class representatives and the claims of other class members do not negate typicality." *Bynum*, 214 F.R.D. at 34 (citing *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987)(noting that "typicality is not destroyed merely by factual variations"); *United States v. Trucking Employers, Inc.,* 75 F.R.D. 682, 688 (D.D.C. 1977)(citing multiple cases for the principle that "where the claims or defenses raised by the named parties are typical of those of the class, differences in the factual patterns underlying the claims or defenses of individual class members will not defeat the action")).

Here, typicality exists as claims of the American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class arise from common acts of Defendants providing material support, including Semtex, to PIRA to carry out terror attacks on British and American civilians in the United Kingdom, including:

(a)    The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class suffered damages as the result of common conduct and acts of the Defendants;

(b)    The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class assert that Defendants used similar instruments, methods and plans to inflict harm upon the American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class;

(c)    The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class assert claims for damages based on the same legal theories of wrongful death, battery, intentional infliction of emotional distress, and loss of consortium;

(d)    The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class assert claims for damages based on the same legal theory for Defendants' violations of the Torture Victim Protection Act;

(e)    The American Class Representatives and all other members of the American Class assert claims for damages based on the same legal theory for Defendants' violations of 28 U.S.C. §1605A;

(f)    The Alien Class Representatives and all other members of the Alien Class assert claims for damages based on the same legal theory for Defendants' violations of the law of nations giving rise to jurisdiction under the Alien Tort Statute;

(g)    The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class claim compensatory damages and punitive damages;

(h)    The method used to compute compensatory damages will be identical for the American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class; and

(i)    Punitive damages should be awarded against the Defendants for their willful, wanton, and malicious acts that caused grievous injury to the American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class.

AC ¶¶11, 300-302.

Here, Defendants' same unlawful conduct was directed at the American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class. Likewise, the claims of the American Class Representatives and the Alien Class Representatives are essentially the same as those of all members of their respective Classes. Advancement of the claims of the American Class Representatives and the Alien Class Representatives will advance the interests of the entire American Class and the entire Alien Class, respectively. Hence, the "typicality" of the claims of the American Class Representatives and the Alien Class Representatives is satisfied.

> 4.    The American Class Representatives & the Alien Class Representatives will Fairly & Adequately Protect the Interests of their respective Classes

Rule 23(a)(4) requires "the representative parties will fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(a)(4). This prong ensures that the named representatives do not have interests antagonistic to those of class members they represent, and that they will vigorously pursue the claims of the class through qualified counsel. *Bynum*, 21 F.R.D. at 35 (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

Here, the American Class Representatives and the Alien Class Representatives will fairly and adequately protect the interests of their respective Classes because:

> (a)    The American Class Representatives, the Alien Class Representatives, and all other members of the American Class and the Alien Class have a unity in interest in bringing this action against the Defendants;
>
> (b)    The American Class Representatives and the Alien Class Representatives have made provision for adequate financial resources to be available for the conduct of this litigation in order to ensure that the interests of the members of the American Class and the Alien Class will not be harmed; and
>
> (c)    Members of the American Class and the Alien Class will be adequately represented by the American Class Representatives, the Alien Class

14

Representatives, and their proposed Class Counsel, Motley Rice LLC, who
are experienced in class action litigation.

AC ¶12.  Indeed, the American Class Representatives, the Alien Class Representatives and Class

Counsel will vigorously prosecute the claims of the respective Classes because:  (1) the claims of

the American Class Representatives and Alien Class Representatives are typical of the claims of

their respective Classes, (2) the American Class Representatives have an interest in vigorously

prosecuting the American Class claims as their interests are aligned, (3) the Alien Class

Representatives have an interest in vigorously prosecuting the Alien Class claims as their

interests are aligned; and (4) no conflicts exist between the American Class Representatives, the

Alien Class Representatives, and the members of their respective Classes because the same

unlawful conduct was directed at the American Class Representatives, the Alien Class

Representatives, and all other members of their respective Classes, and the claims of the

American Class Representatives and the Alien Class Representative are essentially the same as

those of all other members of their respective Classes.

Moreover, proposed Class Counsel Motley Rice LLC are knowledgeable in FSIA, anti-

terrorism, and Alien Tort Statute litigation to vindicate human rights violations, experienced in

class action litigation and in jury trials, and possess the necessary incentives, qualifications and

resources to vigorously prosecute this action on behalf of the American Class and the Alien

Class.  *See* Section IV below at p. 21 (explaining why Motley Rice LLC should be appointed as

Class Counsel).  Hence, the adequacy prong is satisfied.

 C. <u>Plaintiffs Meet Each Of The Requirements Under Rule 23(b)(3)</u>

In addition to meeting the four requirements of Rule 23(a), Plaintiffs must show that the

action is maintainable under one of the three subsections of Rule 23(b).  *Amchem Products Inc.*,

521 U.S. at 614.  Here, Plaintiffs seek certification of the American Class and of the Alien Class

under Rule 23(b)(3), which requires that:  (1) "questions of law or fact common to the members

of the class predominate over any questions affecting only individual members" and (2) "that a

class action is superior to other available methods for the fair and efficient adjudication of the

controversy."  Fed.R.Civ.P. 23(b)(3).

> 1.     Questions of Law & Fact Common to Class Members Predominate over
>        Questions affecting only Individual Members of the respective Classes

That common questions of law or fact predominate over individualized questions means

that "the issues in the class action that are subject to generalized proof [and] thus applicable to

the class as a whole … predominate over those issues that are subject only to individualized

proof."  *Johnson*, 248 F.R.D. at 56 (citing *Amchem Products Inc.,* 521 U.S. at 623).

While there "is no magic formula [to establish predominance,] this determination is

related to the commonality requirement of Rule 23(a), in that 'the common issues identified as

sufficient under Rule 23(a) must be shown by the plaintiffs to predominant over the non-

common issues [but] the common issues do not have to be shown to be dispositive.'"  *Bynum*,

214 F.R.D. at 39 (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)).

Moreover, "the mere existence of individual damages issues in a Rule 23(b)(3) class does

not cause individual issues to predominate over common issues on liability or causation."

*Johnson*, 248 F.R.D. at 57 (citing *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997)).

In Section II(A) & II(B) of this Memorandum above, Plaintiffs set forth in detail the

common issues of fact and law common to the American Class and to the Alien Class – and

those issues dominate this litigation.

The predominant issues of fact common to all members of the American Class and Alien

Class are whether Defendants provided material support, including but not limited to Semtex

explosives, to PIRA to carry out terror attacks on British and American civilians in the United

Kingdom, which caused death or injury to all members of the American Class and Alien Class.

*See generally*, AC ¶¶203-294 ("Facts of the Case").

The predominant issues of law common to all members of the American Class and Alien

Class are whether Defendants are liable to the: (a) American Class and Alien Class for wrongful

death, battery, intentional infliction of emotional distress, and loss of consortium; (b) American

Class and Alien Class for violations of the Torture Victim Protection Act; (c) American Class for

violations of 28 U.S.C. §1605A; (d) Alien Class for violations of the law of nations giving rise to

jurisdiction under the Alien Tort Statute; and (e) American Class and Alien Class for

compensatory and punitive damages.  AC ¶¶300-302, ¶¶304-307, ¶¶309-319, 321-323, 324-29,

331-342.  Those issues are subject to generalized proof and apply to the American Class and

Alien Class as a whole, thereby predominating over any individualized issue that may exist.

Here, the same evidence would be required to establish Defendants' role in providing

material support, including Semtex explosives, to PIRA to carry out terror attacks affecting all

members of the American Class and Alien Class, as well as the causal connection between

Defendants' provision of material support to PIRA and the harm to all members of the American

Class and Alien Class.  As these issues are "subject to generalized proof [and] thus applicable to

the class[es] as a whole, [these issues] predominate over those issues that are subject only to

individualized proof."  *Johnson*, 248 F.R.D. at 56.  Indeed, if the legal representatives of each of

these thousands of victims of PIRA terror attacks launched with Libyan support were forced to

maintain a separate action to vindicate their fundamental human rights against terrorist attacks,

there would be a wasteful duplication of judicial effort because proof of Defendants'

participation in supporting PIRA's terror campaign in the United Kingdom would be almost identical in each case.

Not only do the common liability and fact issues described in Section II(A) & II (B) above predominate over any individual issues, but also litigating the claim that Defendants engaged in a widespread *conspiracy* to provide "finances, arms, ammunition, explosive materials including, but not limited to, Semtex, training, training facilities, and a base of operations for PIRA military activists in furtherance of the PIRA's campaign of violence against British and American targets during the 1970s, 1980s, and 1990s," AC ¶297, will itself present predominant common questions of fact and law. *In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 279 (S.D.N.Y. 1999) ("Because a single, continuous conspiratorial artifice is alleged, the relevant proof will not vary among class members. . . . Every plaintiff and every class member would have to engage in the same extensive international discovery and develop the same detailed proof to demonstrate the [statutory] violation. The predominance requirement under Rule 23(b)(3) is therefore satisfied."). Likewise here, the evidence will be common to all Class members that Defendants conspired to carry out this widespread, international scheme across decades to provide Semtex explosives and other material support to PIRA to carry out terror attacks against civilians in the United Kingdom. As the same discovery and the same proof will be required to establish the existence of this conspiracy across the American Class and Alien Class, the predominance element is met.

And while Defendants may protest that individualized determinations are necessary to determine the extent of damages suffered by each member of the American Class and Alien Class, that concern over determination of damages on an individual basis is insufficient to defeat class certification under Rule 23(b)(3). *See Johnson*, 248 F.R.D. at 57 ("the mere existence of

individual damages issues in a Rule 23(b)(3) class does not cause individual issues to predominate over common issues on liability or causation").

Accordingly, "predominance" is established and the American Class and the Alien Class should be certified.

> 2.    A Class Action is Superior to other Methods for the Fair & Efficient Adjudication of Plaintiffs' Claims.

The second prong of Rule 23(b)(3) is superiority. To satisfy this prong, "maintaining the present action as a class action must be deemed by the court to be superior to other available methods of adjudication. A case will often meet this standard when 'common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit.'" *Johnson*, 248 F.R.D. at 57 (quoting *Bynum*, 217 F.R.D. at 49).

Factors to be considered as part of this superiority analysis include: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the single forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3). Considering these factors, it is clear that a class action is the superior method for the fair and efficient adjudication of this controversy.

Here, the individual members of the American Class and the Alien Class have expressed no interest to control or commence thousands of individual separate civil actions. Hence, the first factor does not militate against class certification.

Moreover, there are no members of the American Class or the Alien Class separately pursuing other cases involving the same claims and parties. So this second factor does not militate against class certification.

19

Third, class action treatment to resolve all Plaintiffs' claims in this single forum is efficient as it will generate economies of time, effort, and expense for the litigants and the Court; in contrast, having separate trials in multiple forums for these claims that could be tried together would be costly, inefficient, and burdensome. *See Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 12 (D.D.C. 2002)("Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit")(internal cites omitted).

The final Rule 23(b)(3) superiority factor that the Court considers is whether Class members filing multiple separate actions will be easier for the Court to manage than a class action. Here, certification of the American Class and the Alien Class will be far easier to manage than the alternative of thousands of separate lawsuits prosecuted by individual members of the American Class and Alien Class. Indeed, whereas "[i]ndividualized litigation presents a potential for inconsistent or contradictory judgments and increases the burden and expense to all parties and to the court system," by contrast, "the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court." AC ¶13(a)&(b); *see also*, *Jarvaise*, 212 F.R.D. at 4 ("[w]ithout class certification, there could be either a significant number of individual lawsuits wasting judicial resources and resulting in inconsistent adjudications or a significant number of individuals deprived of their day in court because they are otherwise unable to afford independent representation"). Hence, the superiority requirement is met.

Accordingly, as all requirements of Rule 23(b)(3) and Rule 23(a) have been satisfied, the Court should certify the American Class and the Alien Class under Rule 23(b)(3) forthwith.

**IV.    MOTLEY RICE LLC SHOULD BE APPOINTED AS CLASS COUNSEL**

An order certifying a class action "must appoint class counsel under Rule 23(g)." Fed.R.Civ.P. 23(c)(1)(B).  In making this appointment, the Court considers:  (1) the work counsel has done in identifying or investigating potential claims in this action; (2) counsel's experience in handing class actions, other complex litigation, and claims of the type asserted in this action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed.R.Civ.P. 23(g)(1)(C)(i).

Motley Rice LLC should be appointed as Class Counsel for the American Class and for the Alien Class.  Motley Rice LLC lawyers and investigators have spent hundreds of hours investigating this case, which involves an international conspiracy across decades.  Motley Rice LLC lawyers and investigators have journeyed to the United Kingdom, including Northern Ireland, to interview families of the victims of Libyan-supported PIRA terror attacks and to and investigate Libya's culpability.  Motley Rice LLC lawyers have also travelled to the Czech Republic, France and the Netherlands to gather liability evidence.  Motley Rice drafted the pleadings, responded to Defendants' motion to dismiss, and bring this class certification motion.

Motley Rice LLC has been appointed as class counsel in numerous class actions nationwide, and indeed is an internationally recognized leader in class actions and complex litigation.  Motley Rice LLC, one of our nation's largest plaintiffs' litigation firms, has vast experience and success litigating FSIA, anti-terrorism, and Alien Tort Statute claims seeking redress for international human rights abuses.  *See, e.g., In Re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570 (GBD), 349 F. Supp.2d 765 (S.D.N.Y. 2005)(Motley Rice LLC as lead counsel for hundreds of families of victims of the September 11th attacks in FSIA and Anti-Terrorism Act litigation); *Cummock v. Socialist People's Libyan Arab Jamahiriya et al.*, CV-96-

2993 (TCP)(MLO)(E.D.N.Y.)(Motley Rice as lead counsel against Libya for victim of 1988 Pan Am Flight 103 bombing); *Almog v. Arab Bank.*, 471 F. Supp. 2d 257, 284-285 (E.D.N.Y. 2007)(with Motley Rice as lead plaintiffs' counsel, Court held foreign plaintiffs injured in terrorist attacks in Israel stated claims under the ATS against Arab Bank, one of the Middle East's largest financial institutions, "for aiding and abetting violations of the law of nations."), among others.  Counsel is well versed in this area of law.

Moreover, Motley Rice LLC will commit all resources necessary to win this class action.

## V.    PROPOSAL FOR RULE 23(c)(2) NOTICE TO THE CLASSES

Local Civil Rule 23.1(c) requires that "plaintiff[s] shall include in the motion for certification a statement proposing (1) how, when, by whom, and to whom the notice required by Rule 23(c)(2) shall be given, (2) how and by whom payment therefore is to be made, and (3) by whom the response to the notice is to be received."  LCvR 23.1(c).  In compliance with Local Civil Rule 23.1(c), Plaintiffs propose the following:

A.    How, when, by whom, and to whom notice shall be given

- A notice program in accordance with Rule 23(c)(2) would be designed and implemented by Kinsella/Novak Communications, LLC ("KNC"), an advertising and legal notification consulting firm in Washington, D.C. specializing in the design and implementation of class action and bankruptcy notification programs to reach unidentified putative class members primarily in consumer and mass tort litigation.  The firm's business address is 2120 L Street, NW, Suite 205, Washington, D.C. 20037; telephone number is (202) 686-4111.

- KNC has developed and directed some of the largest and most complex national notification programs in the country. The scope of the firm's work includes notification programs in antitrust, bankruptcy, consumer fraud, mass tort and product liability litigation.  Specific cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco and Holocaust claims. The firm has developed or consulted on over 325 notification programs and has placed over $175 million in media notice.

- Notice in the instant case would be provided via direct mail, paid media and third-party organizations.

22

- Direct notice would consist of emailing or mailing the certification notice to members of the American Class and Alien Class, informing them of their legal rights and how they may remain in or opt out of the class action. The direct mail notice will be sent to: 1) Those members of the American Class and Alien Class whose names and addresses are readily identifiable from Plaintiffs' data, 2) all members of the American Class and Alien Class who register on a designated website, and 3) All callers to a toll-free information line ("freephone" in the UK) who request the certification notice. A toll-free number for this information line will appear prominently in the published form of notice. Class Members may also download the certification notice in PDF format from the dedicated website.

- Paid media may or may not be necessary to give notice to American Class Members, depending upon data Plaintiffs are able to obtain about identifiable American Class Members, and how the Court crafts the Classes. A comprehensive paid media campaign will be necessary in the U.K., to reach unidentified Alien Class Members. Based on previous case experience and research into the media consumption habits of U.K. adults, KNC would likely recommend a notice program focused largely on newspapers, some national magazines, and the Internet.

- KNC would identify third-party organizations with a particular interest in the subject matter of the instant case, which are likely to have contact with Alien Class Members. KNC would work with these organizations to provide notice to their members.

- The notice program could commence as soon as sixty (60) days after the Court's certification of the Classes. KNC would provide the Court initially with a detailed proposed notice program, and after approval and implementation with a declaration or affidavit specifying what notice was provided and through what media or other vehicles.

    B.    How and by whom payment therefore is to be made

- Counsel for Plaintiffs will make payment for the above Class notice program.

    C.    By whom the response to the notice is to be received

- KNC's sister company Rust Consulting, Inc. ("Rust") could handle all aspects of notice response and claims administration. Rust is a national leader in the class action settlement administration industry, with expertise in consumer, insurance, securities, employment, property and product liability matters. Partnered with KNC and Complete Claim Solutions, LLC and a wholly-owned subsidiary of SOURCECORP, Inc., Rust consults with clients and provides services in complex areas requiring specialized systems and expertise, including direct mail notification, media-based notice, telephone support services, claims processing and award distributions. Rust has provided claims administration services for over 1,000 class action settlements and distributed more than $3.5 billion in settlement assets.

Accordingly, Class Counsel will stand ready to submit for approval by the Court a proposed Notice to the American Class and the Alien Class, consistent with Rule 23(c)(2), within sixty days (60) days after entry of the Order certifying the American Class and the Alien Class.

## VI.    CONCLUSION

For the above reasons, the Court should grant Plaintiffs' motion to certify the American Class and the Alien Class under Rule 23(b)(3), and appoint Motley Rice LLC as Class Counsel. Plaintiffs respectfully request oral argument on this motion.


Dated:  July 30, 2008                               Respectfully submitted,

                                                    MOTLEY RICE LLC

                                                    ___/S/_____
                                                    Ronald L. Motley, Esq.
                                                    Jodi Westbrook Flowers, Esq.
                                                    Donald A. Migliori, Esq.
                                                    Michael E. Elsner, Esq.
                                                    Robert  T. Haefele, Esq.
                                                    Elizabeth S. Smith, Esq.
                                                    John M. Eubanks, Esq.
                                                    Vincent I. Parrett, Esq.
                                                    28 Bridgeside Blvd.
                                                    P.O. Box 1792
                                                    Mount Pleasant, SC 29465
                                                    Phone: (843) 216-9000
                                                    Fax: (843) 216-9450
                                                    jflowers@motleyrice.com

                                                    *Class Counsel for all Plaintiffs*

Of Counsel:

Jason McCue, Esq.
H20 LAW
40-43 Chancery Lane
London WC2A 1JQ
United Kingdom

Lord Dan Brennan
Matrix Chambers

Gray's Inn
London WC1R 5LN
United Kingdom

*Attorneys for Plaintiffs*