**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARK MCDONALD, *et al.*,           :
                                    :
    Plaintiffs,                    :
                                    :
  v.                                : Civil Action No. 06-0729 (JR)
                                    :
THE SOCIALIST PEOPLE'S LIBYAN       :
ARAB JAMAHIRIYA, *et al.*,         :
                                    :
    Defendants.                    :

**MEMORANDUM**

When plaintiffs filed their amended complaint, this suit involved claims by United States and foreign nationals against Libya, its security forces, and its leaders for their material support of the campaign of bombings carried out by the Irish Republican Army between 1972 and 1996. See, e.g., Am. Compl. [#34] ¶¶ 203-294.  Their pleading sought to sidestep what would otherwise be a dispositive foreign sovereign immunity defense by invoking the exception for state sponsors of terrorism, 28 U.S.C. § 1605A, and the exception for commercial activity with a direct effect in the United States, id. § 1605(a)(2).  Subsequently, the political branches undertook to normalize diplomatic relations with Libya and, through legislative and executive action, settled all pending suits against Libya, its agencies, instrumentalities, officials, employees, and agents arising from terrorist acts occurring prior to June 30, 2006.  See Libyan Claims Resolution Act ("LCRA"), Pub. L. No. 110-301, 122 Stat. 2999 (2008); Claims Settlement

Agreement [#62, Attach. 1].  Seeking to participate in the settlement fund established by the Claims Settlement Agreement, the U.S.-national plaintiffs in this suit sought dismissal of their claims with prejudice, [#46], which was granted, [#47].  They appear to have encountered difficulty accessing the fund, however, because of the remaining claims by foreign nationals that were still pending in this case.  See, [#48 at 3].  They accordingly moved for declaratory relief "defin[ing] the scope of those with standing to participate in the humanitarian [settlement] fund," and "advis[ing] the parties of which claims remain in light of the LCRA, specifically whether the foreign claims survive."  Id. at 21.

    For their part, the Libyan defendants have moved to dismiss, [#36], a motion that is now supported by the United States, [#62].  Among the many issues identified by the United States in its statement of interest is the standing of the remaining foreign-national plaintiffs to seek declaratory relief on behalf of the now-dismissed U.S.-national plaintiffs against the non-party United States in its capacity as administrator of the settlement fund.  Although the United States' suggestion (that the foreign-national plaintiffs do not have standing) appears manifestly correct, it need not be reached.  Instead, the case will be dismissed in its entirety.

We may begin with a matter beyond dispute: plaintiffs can no longer rely on the exception to foreign sovereign immunity for state sponsors of terrorism, see 28 U.S.C. § 1605A.  The LCRA provides:

> Notwithstanding any other provision of law, upon submission of a certification described in paragraph (2), Libya, an agency or instrumentality of Libya, and the property of Libya or an agency or instrumentality of Libya, shall not be subject to the exceptions to immunity from jurisdiction, liens, attachment, and execution contained in section 1605A, 1605(a)(7), or 1610 . . . of title 28, United States Code.

LCRA, Pub. L. No. 110-303, § 5(a)(1)(A).  The "certification" referred to is a certification by the Secretary of State that she has received funds sufficient to ensure fair compensation of claims by U.S. nationals.  Id. § 5(a)(2).  The Act is limited to "any conduct or event occurring before June 30, 2006."  Id. § 5(b).  The Secretary has made the necessary certification, see [#62, Attach. 2], and the events alleged in the complaint took place no later than 1996, see Am. Compl. [#34] ¶¶ 254-294.  Thus, no plaintiff may rely on the state sponsor of terrorism exception to foreign sovereign immunity in order to sue Libya in an American court, and the plaintiffs themselves appear to concede this.  See [#48] at 8-9.

Plaintiffs argue instead that they may maintain this action under the so-called commercial activity exception to foreign sovereign immunity, see 28 U.S.C. § 1605(a)(2).  They recognize that an executive order by the President purported to

- 3 -

settle and dispose of claims by U.S. <u>and foreign</u> nationals, [#48] at 9, but they argue that the President had no authority to dispose of these claims without direct authority from Congress, and they assert their belief that Congress has not provided such authority, regardless of the LCRA.  <u>Id.</u> at 14.

This argument fails.  Libya's alleged conduct is not commercial activity as it is understood by 28 U.S.C. § 1605(a)(2).  According to Supreme Court and circuit precedent, the "key inquiry in determining whether particular conduct constitutes commercial activity . . . [is] whether it is 'the sort of action by which private parties can engage in commerce.'" <u>Mwani v. Bin Laden</u>, 417 F.3d 1, 17 (D.C. Cir. 2005) (citing <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 362 (1993)).  In <u>Mwani</u>, the D.C. Circuit rejected the claim that Afghanistan's provision of land for terrorist training camps could be considered commercial.  <u>Id.</u>  Here, the allegations are that Libya received an IRA "envoy in Tripoli, Libya, who obtained quasi-ambassadorial status," Am. Compl. [#34] ¶ 212, that Libya provided both arms and financial support to the IRA, <u>e.g.</u>, <u>id.</u> ¶¶ 210-211, and that Libya trained IRA terrorists, <u>id.</u> ¶ 236.  There is no way to characterize such activities as "commercial."  Libya supported the IRA with both arms <u>and</u> funds –- sponsoring terrorists, not trading with them.

Moreover, even if the allegations of the amended complaint fell within the commercial activity exception, it would

require a very cramped reading of the LCRA to exclude this case from those that Congress plainly intended to foreclose as part of the effort to normalize relations with Libya.  The LCRA provides that "any other private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law shall not apply with respect to claims against Libya, or any of its agencies, instrumentalities, officials, employees, or agents in any action in a Federal or State court."  LCRA, Pub. L. No. 110-303, § 5(a)(1)(B).  Plaintiffs' invocation of the commercial activity exception does not change the fact that the complaint in this case asserts "a private right of action <u>relating to</u> acts by a state sponsor of terrorism."  <u>Id.</u> § 5(a)(1)(B) (emphasis added).  Plaintiff's claim, by any other name, is about Libya's sponsorship of IRA terrorists, <u>see</u> Am. Compl. [#34] ¶ 203 ("Beginning in 1972, Defendant Libya established contacts with the PIRA which, in the subsequent twenty-five (25) years, grew into a material support apparatus provided by Libya to the PIRA."); <u>id.</u> ¶ 204 ("Between 1972 and 1997, Libya provided material support to the PIRA in the form of finances, a base in Tripoli, military and explosives training, arms, explosives, including but not limited to Semtex, explosive components, public support, and encouragement.").  The text of the LCRA makes clear that Congress intended to end precisely such

cases so as to normalize relations with Libya, and the law will be given that effect.


                              JAMES ROBERTSON
                       United States District Judge